

Select Language ⌄

Powered by **Google** Translate

# Civil Court Case Information – Case History

## Case Information

| | | | |
|---|---|---|---|
| Case Number: | CV2021-009395 | Judge: | Cooper, Katherine |
| File Date: | 6/10/2021 | Location: | Downtown |
| Case Type: | Civil | | |

## Party Information

| Party Name | Relationship | Sex | Attorney |
|---|---|---|---|
| Jenny Angela Brandemuehl | Plaintiff | Female | Dane Wood |
| Wesley Augustus Brandemuehl | Plaintiff | Male | Dane Wood |
| Adrian David Brandemuehl | Plaintiff | Male | Dane Wood |
| Endurance American Insurance Company | Plaintiff | | Kenneth Moskow |
| Mooney International Corporation | Defendant | | Lori Zirkle |
| Continental Aerospace Technologies Inc | Defendant | | C Fischer |
| Continental Motors Inc | Defendant | | C Fischer |
| C & M Aviation L L C | Defendant | | Dillon Steadman |
| Morningstar Aviation Inc | Defendant | | Pro Per |

## Case Documents

| Filing Date | Description | Docket Date | Filing Party |
|---|---|---|---|
| 6/7/2022 | ODI - Order Of Dismissal | 6/7/2022 | |
| **NOTE:** ORDER OF DISMISSAL OF ALL REMAINING CLAIMS BY PLAINTIFF ENDURANCE AMERICAN INSURANCE COMPANY -- ONLY -- WITH PREJUDICE | | | |
| 6/6/2022 | SFD - Stipulation For Dismissal | 6/6/2022 | |
| **NOTE:** STIPULATION TO DISMISS ALL REMAINING CLAIMS BY PLAINTIFF ENDURANCE AMERICAN INSURANCE COMPANY -- ONLY -- WITH PREJUDICE | | | |
| 5/19/2022 | NDI - Notice Of Dismissal | 5/20/2022 | |
| **NOTE:** Notice of Voluntary Dismissal of Defendant Morningstar Aviation, Inc. | | | |
| 5/16/2022 | ANS - Answer | 5/18/2022 | |
| **NOTE:** Answer to Plaintiffs' Complaint by Defendant Mooney International Corporation | | | |
| 5/16/2022 | ANS - Answer | 5/18/2022 | |
| **NOTE:** DEF CONTINENTAL AEROSPACE TECHNOLGIES, INC'S ANSWER TO PLAINTIFFS' COMPLAINT AND JURY TRIAL DEMANDED | | | |
| 5/16/2022 | CCA - Cert Compulsory Arbitration | 5/18/2022 | |
| **NOTE:** Defendant Mooney International Corporation's Certificate re Compulsory Arbitration | | | |
| 5/16/2022 | NJT - Not Demand For Jury Trials | 5/18/2022 | |
| **NOTE:** Defendant Mooney International Corporation's Demand for Jury Trial | | | |
| 5/16/2022 | CCA - Cert Compulsory Arbitration | 5/18/2022 | |
| **NOTE:** DEF CONTINENTAL AEROSPACE TECHNOLGIES, INC'S CERTIFICATE REGARDING COMPULSORY ARBITRATION | | | |
| 5/2/2022 | 926 - ME: Under Advisement Ruling | 5/2/2022 | |
| 4/7/2022 | 020 - ME: Matter Under Advisement | 4/7/2022 | |
| 3/30/2022 | ANS - Answer | 4/5/2022 | |
| **NOTE:** Defendant C & M Aviation, LLC's Answer / EFILE BILLING $245.00 | | | |
| 3/30/2022 | CCA - Cert Compulsory Arbitration | 4/5/2022 | |
| **NOTE:** DEFENDANT C & M AVIATION, LLC'S CERTIFICATE REGARDING COMPULSORY ARBITRATION | | | |
| 3/29/2022 | STA - Statement | 4/2/2022 | |
| **NOTE:** CONDENSED SUMMARY OF MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION BY SPECIALLY APPEARING DEFENDANT MOONEY INTERNATIONAL CORPORATION | | | |
| 3/29/2022 | REP - Report | 4/3/2022 | |
| **NOTE:** PLAINTIFFS' SUMMARY BRIEF REGARDING THIS COURT'S JURISDICTION OVER DEFENDANTS | | | |
| 3/29/2022 | REL - Reply | 4/3/2022 | |

**NOTE:** SPECIALLY APPEARING DEFENDANT CONTINENTAL AEROSPACE TECHNOLOGIES, INC.'S SUMMARY OF BRIEFING RELATED TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

| | | |
|---|---|---|
| 3/17/2022 | 094 - ME: Oral Argument Set | 3/17/2022 |
| 3/17/2022 | NOT - Notice | 3/23/2022 |

**NOTE:** Notice of Association of Counsel for Plaintiffs

| | | |
|---|---|---|
| 3/4/2022 | 023 - ME: Order Entered By Court | 3/4/2022 |
| 2/28/2022 | REL - Reply | 3/1/2022 |

**NOTE:** Plaintiffs' Reply in Support of Motion In the Alternative for Jurisdictional Discovery

| | | |
|---|---|---|
| 2/23/2022 | 023 - ME: Order Entered By Court | 2/23/2022 |
| 2/23/2022 | REL - Reply | 2/25/2022 |

**NOTE:** PLAINTIFFS' COMBINED SUR-REPLY ON THE MOONEY AND CONTINENTAL DEFENDANTS' MOTIONS TO DISMISS

| | | |
|---|---|---|
| 2/23/2022 | MFR - Motion For Reconsideration | 2/25/2022 |

**NOTE:** Plaintiffs' Motion for Reconsideration Regarding Motions to Dismiss

| | | |
|---|---|---|
| 2/23/2022 | MFR - Motion For Reconsideration | 2/25/2022 |

**NOTE:** Plaintiffs' Motion for Reconsideration Regarding Motions to Dismiss

| | | |
|---|---|---|
| 2/16/2022 | ORD - Order | 2/16/2022 |

**NOTE:** ORDER GRANTING PLAINTIFFS' MOTION TO CONTINUE ON DISMISSAL CALENDAR

| | | |
|---|---|---|
| 2/9/2022 | ORD - Order | 2/9/2022 |

**NOTE:** ORDER GRANTING STIPULATION TO EXTEND DEADLINE FOR PLAINTIFFS TO FILE REPLY IN SUPPORT OF MOTION FOR JURISDICTIONAL DISCOVERY AND REQUEST FOR LEAVE OF COURT FOR PLAINTIFFS TO FILE SUR-REPLY TO MOTIONS TO DISMISS FILED BY DEFENDANTS MOONEY AND CONTINENTAL

| | | |
|---|---|---|
| 2/8/2022 | CAN - Credit Memo Appearance Fee Paid | 2/14/2022 |

**NOTE:** Credit Memo/Appearance Fee Paid

| | | |
|---|---|---|
| 2/7/2022 | MCC - Mot/Cont On Inactive Calendar | 2/11/2022 |

**NOTE:** Plaintiffs' Motion to Continue on Dismissal Calendar

| | | |
|---|---|---|
| 2/1/2022 | RES - Response | 2/5/2022 |

**NOTE:** Mooney's Response in Opposition to Plaintiffs' Alternative Motion for Jurisdictional Discovery

| | | |
|---|---|---|
| 2/1/2022 | REL - Reply | 2/5/2022 |

**NOTE:** REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION BY DEFENDANT MOONEY INTERNATIONAL CORPORATION

| | | |
|---|---|---|
| 2/1/2022 | STP - Stipulation | 2/5/2022 |

**NOTE:** STIPULATION TO EXTEND DEADLINE FOR PLAINTIFFS TO FILE REPLY IN SUPPORT OF MOTION FOR JURISDICTIONAL DISCOVERY AND REQUEST FOR LEAVE OF COURT FOR PLAINTIFFS TO FILE SUR-REPLY TO MOTIONS TO DISMISS FILED BY DEFENDANTS MOONEY AND CONTINENTAL

| | | |
|---|---|---|
| 1/26/2022 | PHO - Pro Hac Vice Order | 1/26/2022 |

**NOTE:** ORDER RE: SPECIALLY APPEARING DEFENDANT MOONEY INTERNATIONAL CORPORATION'S MOTION TO ASSOCIATE COUNSEL PRO HAC VICE

| | | |
|---|---|---|
| 1/21/2022 | RES - Response | 1/26/2022 |

**NOTE:** SPECIALLY APPEARING DEFENDANT CONTINENTAL AEROSPACE TECHNOLOGIES, INC.'S RESPONSE TO PLAINTIFFS MOTION IN THE ALTERNATIVE FOR JURISDICTIONAL DISCOVERY

| | | |
|---|---|---|
| 1/21/2022 | REL - Reply | 1/26/2022 |

**NOTE:** SPECIALLY APPEARING DEF CONTINENTAL'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JUR

| | | |
|---|---|---|
| 1/19/2022 | PHA - Pro Hac Vice Application | 1/24/2022 |

**NOTE:** SPECIALLY APPEARING DEFENDANT MOONEY INTERNATIONAL CORPORATION'S MOTION TO ASSOCIATE COUNSEL PRO HAC VICE

| | | |
|---|---|---|
| 1/12/2022 | ORD - Order | 1/12/2022 |

**NOTE:** IT IS HEREBY ORDERED extending the deadlines for the following to January 21, 2022: (1) Continentals Reply in Support of Motion to Dismiss for Lack of Personal Jurisdiction; (2) Mooneys Reply in Support of Motion to Dismiss for Lack of Personal Jurisdiction; (3) Continentals Response to Plaintiffs Motion in the Alternative for Jurisdictional Discovery, filed December 17, 2021; and (4) Mooneys Response to Plaintiffs Motion in the Alternative for Jurisdictional Discovery, filed December 17, 2021.

| | | |
|---|---|---|
| 1/12/2022 | NPD - Notice Case on Dismissal Calendar | 1/12/2022 |
| 1/5/2022 | STP - Stipulation | 1/6/2022 |

**NOTE:** STIPULATION TO EXTEND DEADLINE FOR DEFENDANTS' REPLY IN SUPPORT OF MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND RESPONSES TO PLAINTIFFS' MOTION IN THE ALTERNATIVE TO CONDUCT JURISDICTIONAL DISCOVERY

| | | |
|---|---|---|
| 12/20/2021 | CAN - Credit Memo Appearance Fee Paid | 12/20/2021 |

**NOTE:** Credit Memo/Appearance Fee Paid

| | | |
|---|---|---|
| 12/17/2021 | RES - Response | 12/19/2021 |

**NOTE:** Plaintiffs' Combined Response to The Mooney and Continental Defendants' Motions to Dismiss

| | | |
|---|---|---|
| 12/17/2021 | MOT - Motion | 12/19/2021 |

**NOTE:** Plaintiffs' Motion in the Alternative for Jurisdictional Discovery

| | | |
|---|---|---|
| 12/15/2021 | PHO - Pro Hac Vice Order | 12/15/2021 |

**NOTE:** ORDER RE: MOTION TO ASSOCIATE COUNSEL PRO HAC VICE

| 12/15/2021 | PHO - Pro Hac Vice Order | 12/15/2021 |

**NOTE:** ORDER RE: MOTION TO ASSOCIATE COUNSEL PRO HAC VICE

| 12/10/2021 | NOT - Notice | 12/14/2021 |

**NOTE:** NOTICE OF SECOND EXTENSION OF TIME TO BRIEFING SCHEDULE ORDER RE: MOTIONS TO DISMISS FILED BY DEFENDANTS MOONEY AND CONTINENTAL

| 12/9/2021 | PHA - Pro Hac Vice Application | 12/13/2021 |

**NOTE:** MOTION TO ASSOCIATE COUNSEL PRO HAC VICE

| 12/9/2021 | PHA - Pro Hac Vice Application | 12/13/2021 |

**NOTE:** MOTION TO ASSOCIATE COUNSEL PRO HAC VICE

| 11/12/2021 | ORD - Order | 11/12/2021 |

**NOTE:** ORDER MODIFYING THE BRIEFING SCHEDULE RE: MOTIONS TO DISMISS FILED BY MOONEY AND CONTINENTAL

| 11/5/2021 | REQ - Request | 11/9/2021 |

**NOTE:** STIPULATED REQUEST TO MODIFY BRIEFING SCHEDULE RE: MOTIONS TO DISMISS FILED BY MOONEY AND CONTINENTAL

| 10/20/2021 | MDJ - Motion to Dismiss for Lack of Jurisdiction | 10/22/2021 |

**NOTE:** Motion to Dismiss Complaint for Lack of Personal Jurisdiction by Defendant Mooney International Corporation

| 10/20/2021 | MDJ - Motion to Dismiss for Lack of Jurisdiction | 10/22/2021 |

**NOTE:** SPECIALLY APPEARING DEFENDANT CONTINENTAL AEROSPACE TECHNOLOGIES, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO ARIZONA RULE OF CIVIL PROCEDURE 12(b)(2)

| 9/22/2021 | NDI - Notice Of Dismissal | 9/26/2021 |

**NOTE:** NOTICE OF VOLUNTARY DISMISSAL OF C & M AVIATION, LLC RELEVANT TO PLAINTIFF ENDURANCE AMERICAN INSURANCE COMPANY'S CLAIMS ONLY

| 9/1/2021 | AFS - Affidavit Of Service | 9/7/2021 |

**NOTE:** CONTINENTAL AEROSPACE TECHNOLOGIES INC

| 9/1/2021 | AFS - Affidavit Of Service | 9/23/2021 |

**NOTE:** C&M AVIATION LLC

| 8/31/2021 | AFS - Affidavit Of Service | 9/7/2021 |

**NOTE:** MORNINGSTAR AVIATION INC

| 8/30/2021 | AFS - Affidavit Of Service | 9/2/2021 |

**NOTE:** MOONEY INTERNATIONAL CORPORATION

| 8/30/2021 | AFS - Affidavit Of Service | 9/2/2021 |

**NOTE:** CONTINENTAL AEROSPACE TECHNOLOGIES INC

| 8/18/2021 | 322 - ME: Notice Of Intent To Dismiss | 8/18/2021 |
| 6/10/2021 | COM - Complaint | 6/10/2021 |

**NOTE:** Complaint

| 6/10/2021 | CSH - Coversheet | 6/10/2021 |

**NOTE:** Civil Cover Sheet

| 6/10/2021 | CCN - Cert Arbitration - Not Subject | 6/10/2021 |

**NOTE:** Certificate Of Compulsory Arbitration - Is Not Subject To

| 6/10/2021 | SUM - Summons | 6/10/2021 |

**NOTE:** Summons

| 6/10/2021 | SUM - Summons | 6/10/2021 |

**NOTE:** Summons

| 6/10/2021 | SUM - Summons | 6/10/2021 |

**NOTE:** Summons

| 6/10/2021 | SUM - Summons | 6/10/2021 |

**NOTE:** Summons

| 6/10/2021 | SUM - Summons | 6/10/2021 |

**NOTE:** Summons

## Case Calendar

| Date | Time | Event |
| --- | --- | --- |
| 4/1/2022 | 10:30 | Oral Argument |

## Judgments

**There are no judgments on file**

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
6/10/2021 1:09:24 PM
Filing ID 12997796

**BREWERWOOD, P.L.L.C.**
2398 East Camelback Road, Suite 540
Phoenix, Arizona 85016
(602) 254-9813; Fax: (602) 254-5511 Facsimile
John B. Brewer, #018207, John@brewerwood.com
Dane L. Wood, #016098, Dane@brewerwood.com
*Attorneys for Plaintiffs*

Ryan J. McCarthy, Bar #020571
Kenneth L. Moskow, Bar #029839
**JONES, SKELTON & HOCHULI, P.L.C.**
40 North Central Avenue, Suite 2700
Phoenix, Arizona  85004
Telephone: (602) 263-1789
Fax: (602) 200-7878
rmccarthy@jshfirm.com
kmoskow@jshfirm.com
minuteentries@jshfirm.com
*Attorneys for Plaintiff Endurance American Insurance Company*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| JENNY ANGELA BRANDEMUEHL, a widow, on behalf of all surviving statutory beneficiaries of Mark Wesley Brandemuehl, deceased, including: JENNY ANGELA BRANDEMUEHL, surviving wife; WESLEY AUGUSTUS BRANDEMUEHL, surviving adult son; ADRIAN DAVID BRANDEMUEHL, surviving adult son; JENNY ANGELA BRANDEMUEHL, Special Administrator for and on behalf of the ESTATE OF MARK WESLEY BRANDEMUEHL; and ENDURANCE AMERICAN INSURANCE COMPANY, a Delaware corporation, | **Case No.** _CV2021-009395_ <br><br> **C O M P L A I N T** <br><br> (Tort—Non-Motor Vehicle; Strict Product Liability; Negligence; Express Warranty; Implied Warranty) <br><br> **(TIER 3)** |
| Plaintiffs, | |
| v. | |

**1**

9483997.1

MOONEY INTERNATIONAL
CORPORATION, a Delaware corporation;
CONTINENTAL AEROSPACE
TECHNOLOGIES, INC., a Delaware
corporation; CONTINENTAL MOTORS,
INC., a Delaware corporation; C & M
AVIATION, LLC., an Idaho limited liability
company d/b/a Delta Aviation, Inc.;
MORNINGSTAR AVIATION, INC., a
Colorado corporation d/b/a Delta Aviation,
Inc.; DOES I through X; ABC
PARTNERSHIPS I through X, and; BLACK
CORPORATIONS I through X,

Defendants.

Plaintiffs, by and through their respective undersigned counsel and for their claims against Defendants, allege as follows:

**SECTION 1**
**(Identification of Plaintiffs)**

1.      At or about 2:51 p.m. (Mountain Standard Time – Arizona) in the afternoon of Tuesday, June 11, 2019, Mark Wesley Brandemuehl (hereinafter "**Mr. Brandemuehl**"), deceased, while piloting a newly-purchased Mooney fixed-wing airplane (model year: 2019) model M20V Acclaim Ultra (FAA registration no. N576CM), suffered horrific disfiguring burn injuries when mechanical failure occurred during mid-air flight shortly after departure from Scottsdale Airport, forcing an attempted emergency landing on Deer Valley Road in Phoenix, Arizona that ended in a fire-engulfed crash.  Mr. Brandemuehl, was immediately hospitalized on June 11, 2019 for many months in the Arizona Burn Center (presently known as Arizona Burn Center Valleywise Health) until succumbing to his injuries on October 20, 2019 when he passed away.

**2**

2.      Mr. Brandemuehl is survived by a loving wife and two adult sons, namely: Plaintiff JENNY ANGELA BRANDEMUEHL, widow, a citizen and resident of the State of California; Plaintiff WESLEY AUGUSTUS BRANDEMUEHL, biological son, a citizen and resident of the State of California, and; Plaintiff ADRIAN DAVID BRANDEMUEHL, biological son, a citizen and resident of the State of California.  Collectively, Mr. Brandemuehl's surviving wife and sons will be described hereafter as "**Plaintiffs Brandemuehl.**"

3.      Plaintiff JENNY ANGELA BRANDEMUEHL brings this action under the *Arizona Wrongful Death Act*, A.R.S. § 12-611, *et seq.*, in an individual and representative capacity for and on behalf of herself and all surviving statutory beneficiaries of Mr. Brandemuehl, deceased, including the above-named Plaintiffs Brandemuehl.  Furthermore, to the extent permitted by law, Plaintiffs Brandemuehl, and each of them, bring this action in their individual capacities.

4.      In addition, Plaintiff JENNY ANGELA BRANDEMUEHL brings this action in her capacity as the duly-appointed Special Administrator for the ESTATE OF MARK WESLEY BRANDEMUEHL.  On June 2, 2021, Plaintiff JENNY ANGELA BRANDEMUEHL was duly-appointed by the Superior Court, State of Arizona in Maricopa County, as the Special Administrator for the ESTATE OF MARK WESLEY BRANDEMUEHL, for the specific purpose of bringing a personal injury action on behalf of the Estate.  Pursuant to A.R.S. § 14-3626, a Special Administrator has the power of a personal representative.  Under Arizona law, a personal injury action survives the death of decedent and can be brought on behalf of the Estate pursuant to A.R.S. § 14-3110, commonly known as the "Survival Statute."  As further described below, Mr. Brandemuehl sustained catastrophic injuries, and as a result, he incurred reasonable, necessary, and causally-related medical expenses of approximately $14,597,504.65 from the Arizona Burn

**3**

9483997.1

Center (presently known as Arizona Burn Center Valleywise Health), and additional expenses from physicians and other medical professionals, to be supplemented, from the time of the accident (June 11, 2019) until the time of his death (October 20, 2019).  Thus, the ESTATE OF MARK WESLEY BRANDEMUEHL, by and through its Special Administrator JENNY ANGELA BRANDEMUEHL, hereby brings a claim for all reasonable, necessary, and causal-related medical expenses incurred by Mr. Brandemuehl from the time of the accident until the time of his death.  Hereafter, throughout this Complaint, Special Administrator JENNY ANGELA BRANDEMUEHL for and on behalf of the ESTATE OF MARK WESLEY BRANDEMUEHL will be referred to as **"Brandemuehl Estate."**

5.     Plaintiff ENDURANCE AMERICAN INSURANCE CO. is a Delaware Corporation and a citizen of Delaware with its principal place of business in Purchase, New York.  Throughout this Complaint, Plaintiff ENDURANCE AMERICAN INSURANCE CO. will be referred to as "**Endurance."**

**SECTION 2**
**(Identification of Defendants)**

6.     Plaintiffs re-allege and incorporate by reference all prior and subsequent allegations as though fully set forth in this pleading.

7.     Defendant MOONEY INTERNATIONAL CORPORATION is a corporation formed and organized under the laws of the State of Delaware and a citizen of Delaware, with its principal place of business in the State of Texas.  Throughout this Complaint, Defendant MOONEY INTERNATIONAL CORPORATION will be referred to as **"MOONEY."**

**4**

8.     Defendant CONTINENTAL AEROSPACE TECHNOLOGIES, INC. is a corporation formed and organized under the laws of the State of Delaware and a citizen of Delaware, with its principal place of business in the State of Alabama.     Defendant CONTINENTAL MOTORS, INC. is a corporation formed and organized under the laws of the State of Delaware and a citizen of Delaware, with its principal place of business in the State of Alabama.  Upon information and belief, on or about January 1, 2020, Defendant CONTINENTAL MOTORS, INC. changed its name to CONTINENTAL AEROSPACE TECHNOLOGIES, INC. Thus, Defendant CONTINENTAL MOTORS, INC. is named herein out of abundance of caution. Throughout this Complaint, Defendants CONTINENTAL AEROSPACE TECHNOLOGIES, INC. and CONTINENTAL MOTORS, INC. will be collectively referred to as **"CONTINENTAL."**

9.     Defendant C & M AVIATION, LLC. is a limited liability company formed and organized under the laws of the State of Idaho with its principal place of business in the State of Colorado.  Upon information and belief, Defendant C & M AVIATION, LLC. operates under the business and trade name of "Delta Aviation, Inc." for the purpose of selling new and used aircraft in the States of Colorado, Arizona, Idaho, California, and Texas.  Upon information and belief, Defendants C & M AVIATION, LLC. and Defendant MORNINGSTAR AVIATION, INC. are affiliated entities with interlocking owners, management, and employees.     Defendant MORNINGSTAR AVIATION, INC. is a corporation formed and organized under the laws of the State of Colorado with its principal place of business in the State of Colorado.  Upon information and belief, Defendant MORNINGSTAR AVIATION, INC. also operates under the business and trade name of "Delta Aviation, Inc." for the purpose of selling new and used aircraft in the States

**5**

of Colorado, Arizona, Idaho, California, and Texas. Throughout this Complaint, Defendants C & M AVIATION, LLC. and Defendant MORNINGSTAR AVIATION, INC. will be collectively referred to as **"C & M AVIATION/MORNINGSTAR."**

10.     Defendants DOES I through X, ABC PARTNERSHIPS I through X, and BLACK CORPORATIONS I through X, inclusive, are individuals, corporations, partnerships and/or business entities which caused the events complained of to occur in the State of Arizona. Plaintiffs do not know the true identities of these Defendants and, therefore, sue them by fictitious names.  Plaintiffs will amend this pleading when the names of these Defendants become known.

**SECTION 3**
**(General Allegations Common to All Defendants)**

11.     Plaintiffs re-allege and incorporate by reference all prior and subsequent allegations as though fully set forth in this pleading.

12.     All Defendants were either joint tortfeasors with each other and are jointly and severally liable for the acts and omissions described in this pleading, or are otherwise secondarily liable for such acts and omissions, or were the agents, servants, and employees of their remaining co-defendants, and each was at all times acting within the scope of that agency, service, and employment.

13.     All of the acts, conduct and nonfeasance described in this pleading and carried out by each and every employee or agent of each and every corporate or business defendant was authorized, ordered and directed by the respective Defendants' corporate or business employers, officers, directors and/or managing agents; that in addition thereto, those corporate or business employers, officers, directors and/or managing agents had advance knowledge of, authorized and

**6**

participated in the acts, conduct and nonfeasance of their employees, agents and each of them, as described in this pleading; and that in addition thereto, upon the completion of these acts, conduct and nonfeasance of the employees and agents, these corporate and business employers, officers, directors and/or managing agents respectively, ratified, accepted the benefits of, condoned and approved of each and all of these acts, conduct or nonfeasance of their co-employees, employees, and agents.  In addition, at all times relevant to this pleading, each Defendant, whether named in this pleading or designated as a Doe, was a principal, master, employer and joint-venturer of every other Defendant, and every Defendant was acting within the course and scope of the agency, authority, employment and joint venture.

## SECTION 4
### (The Accident Events)

14.     Plaintiffs re-allege and incorporate by reference all prior and subsequent allegations as though fully set forth in this pleading.

15.     At or about 2:51 p.m. (Mountain Standard Time – Arizona) on Tuesday, June 11, 2019, Mr. Brandemuehl was piloting a Mooney fixed-wing airplane (model year: 2019) model M20V Acclaim Ultra (FAA registration no. N576CM) bearing serial number 33-0015 (hereinafter the **"Subject Aircraft"**).

16.     The Subject Aircraft was equipped with Continental Motors engine TSIO-550-G (hereinafter the **"Subject Aircraft Engine"**).

17.     The Subject Aircraft had an insured value of $875,000 and other indemnification benefits under an Endurance insurance policy.

**7**

18.     Shortly before 2:51 p.m. (Mountain Standard Time – Arizona) on Tuesday, June 11, 2019, Mr. Brandemuehl departed Scottsdale Airport piloting the Subject Aircraft.   Upon information and belief from the Preliminary NTSB Report[1], about seven minutes after departure at an altitude of 9,100 feet heading northwest, Mr. Brandemuehl reported "a rough running engine" and subsequently declared an emergency.   Upon information and belief, the Subject Aircraft sustained total engine/mechanical failure during mid-air flight.   As a consequence, Mr. Brandemuehl, facing an emergency condition, exercised his best piloting skills to attempt a life-saving emergency landing.   Miraculously, Mr. Brandemuehl guided the Subject Aircraft in an eastbound direction to a landing on Deer Valley Road, in Phoenix, Arizona west of 32nd Avenue while avoiding vehicular traffic and power lines.   After landing on the roadway, the Subject Aircraft continued in an eastbound direction Deer Valley Road when the right "wet" wing filled with fuel, detached from the aircraft after striking a light pole located on the south side of the roadway.   The Subject Aircraft then flipped upside down and proceeded with momentum until it struck a jersey barrier on the south side of the roadway near 32nd Avenue where the Subject Aircraft came to rest and engulfed in flames.   Mr. Brandemuehl, found inside the cockpit wearing his seatbelt that was partially burned away, was rescued and dragged from the fire-engulfed cockpit by good samaritans who rushed in to assist with heroic, life-saving efforts moments before a subsequent explosion.   Hereinafter, the details set forth in this paragraph will be hereinafter referred to as the **"Subject Accident."**

---

[1] At the time of filing this Complaint, the final NTSB Report was not published or made available to Plaintiffs or Plaintiffs' counsel.   Furthermore, at the time of filing this Complaint, the NTSB has not released the aircraft wreckage.   As a consequence, Plaintiffs and their representatives have not been afforded an opportunity to inspect, photograph, or even view the aircraft.

**8**

19.     At all times before and during the Subject Accident events, Mr. Brandemuehl acted with reasonable care during pre-flight procedures, piloting, and attempted emergency landing of the Subject Aircraft.  Moreover, on May 6, 2019 when Mr. Brandemuehl received delivery of the Subject Aircraft at the Mooney factory in Kerrville, Texas, he completed Mooney flight training on May 6 - 9, 2019 in Kerrville.

20.     As a result of the Subject Accident, caused by the fault of Defendants, and each of them, as described below, Mr. Brandemuehl sustained horrific 3rd degree burn injuries to the majority of his body surface.  His injuries necessitated immediate hospitalization at the Arizona Burn Center located in Phoenix, Arizona.   The Arizona Burn Center is nationally and internationally recognized as one of the top burn-treatment hospitals.  Highly trained physicians and staff provided surgical procedures, treatment, and care to Mr. Brandemuehl for many months following his injuries.  Despite heroic efforts of the Arizona Burn Center, Mr. Brandemuehl finally succumbed to his injuries and perished on October 20, 2019.  Mr. Brandemuehl incurred in excess of $14.5 million dollars in medical expenses, which are sought herein by his Estate.  Furthermore, as a direct result of the death of Mr. Brandemuehl, caused by the fault of Defendants, and each of them, his surviving wife and sons have sustained wrongful death damages, outlined below.

21.     As a result of the Subject Accident, caused by the fault of Defendants, and each of them, as described below, Plaintiff Endurance indemnified the total loss of the Subject Aircraft and associated expenses, which included $874,500 in insurance proceeds for the total loss of the Subject Aircraft less the $500 deductible, $3,408 in storage fees for the post-accident Subject Aircraft, and $5,000 in medical/other expense payments.

**9**

22.     As a result of providing insurance benefits to it insured and to the extent of the insurance benefits provided, Plaintiff Endurance is subrogated to the right of its insured against those responsible for the Subject Accident and associated damages.

23.     Pursuant to Arizona law, equity, and the applicable insurance policy(ies), Plaintiff Endurance is subrogated to the rights of its insured against Defendants and each of them.

24.     The damages sought in this action exceed $300,000.00, qualifying this action for assignment of **"Tier 3" procedures** as specified by Rule 26.1(c)(3)(C), Arizona Rules of Civil Procedure, enclosing amounts sought, if applicable, for punitive damages, interest, attorneys' fees and costs.

25.     The amount in controversary exceeds the minimum jurisdictional limits of this Court.

26.     Plaintiffs hereby demand a trial by jury of all issues pursuant to Rule 38, Arizona Rules of Civil Procedure.

## SECTION 5
### (Jurisdiction and Venue)

27.     Plaintiffs re-allege and incorporate by reference all prior and subsequent allegations as though fully set forth in this pleading.

28.     Defendants, and each of them, caused the complained-of events to occur in the State of Arizona.  Defendants, and each of them, purposefully directed their activities to the State of Arizona. Furthermore, Defendants, and each of them, are duly authorized to do business in the State of Arizona and have conducted business throughout the State of Arizona on a deliberate, systematic, and continuous basis.

**10**

9483997.1

29.     Venue is proper in this Court because the flight departure and landing, mid-air aircraft mechanical failure, emergency landing attempt, crash, fire, explosion, injuries, and other tortious events giving rise to this pleading occurred within Maricopa County, Arizona. *See* A.R.S. § 12-401(10).   Furthermore, the hospitalization of Mr. Brandemuehl for more than four (4) months occurred at the Arizona Burn Center which is located at the Maricopa County Hospital. Substantial resources of Maricopa County were used for Mr. Brandemuehl's care, resulting in medical expenses in excess of $14.5 million dollars.  Also, Jenny Brandemuehl has been duly-appointed in this County as the Special Administrator for the Estate of Mr. Brandemuehl. Additionally, the most important piece of evidence in this case – the damaged aircraft – has been stored in Maricopa County since inception and it remains stored in this County.  There are also numerous witnesses with knowledge of the events before, during, and after the accident including airport personnel, eyewitnesses, rescue personnel, first-responders (police and fire), physicians, nurses, etc.

30.     The manufacturer of the Subject Aircraft that caused the Subject Accident, is Defendant MOONEY which is a Texas-based manufacturer that, for many decades, has systematically and deliberately sold aircrafts that were purchased by Arizona residents, destined for Arizona, principally hangered in Arizona, serviced, maintained and repaired in Arizona, and principally flown in Arizona.

31.     At all times material to this pleading, Defendant MOONEY is, was, and continues to be engaged in all aspects of the business of designing, configuring, engineering, fabricating, assembling, building, manufacturing, producing, labeling, testing, marketing, promoting, advertising, importing, distributing, and/or selling fixed-wing airplanes, including the Subject

**11**

Aircraft.   Defendant MOONEY portrays itself to the public as an industry-leading business enterprise having superior knowledge and expertise in the industry of aircraft manufacturing and sales.

32.   The manufacturer of the Subject Aircraft Engine that caused the Subject Accident, is Defendant CONTINENTAL which is an Alabama-based manufacturer that, for many decades, has systematically and deliberately sold aircraft engines for a number of different aircraft manufacturers selling aircrafts that were purchased by Arizona residents, destined for Arizona, principally hangered in Arizona, serviced, maintained and repaired in Arizona, and principally flown in Arizona.

33.   At all times material to this pleading, Defendant CONTINENTAL is, was, and continues to be engaged in all aspects of the business of designing, configuring, engineering, fabricating, assembling, building, manufacturing, producing, labeling, testing, marketing, promoting, advertising, importing, distributing, and/or selling aircraft engines, including the Subject Aircraft Engine, and jet engines, avionics, and interiors.   Defendant CONTINENTAL portrays itself to the public as a global-leading business enterprise having superior knowledge and expertise in the industry of aircraft manufacturing and sales.

34.   Defendant C & M AVIATION/MORNINGSTAR is a Colorado-based dealership that specializes in the sales of new and used aircraft, including Mooney airplanes.  Said Defendant advertises that it sells aircraft in Arizona, in addition to the States of Colorado, Idaho, California, and Texas.  Upon information and belief, Defendant C & M AVIATION/MORNINGSTAR has a sales representative living and working in Arizona, presently and in the past.  Furthermore, when Defendant C & M AVIATION/MORNINGSTAR purchased the Subject Aircraft from Defendant

9483997.1

MOONEY, Defendant C & M AVIATION/MORNINGSTAR used an Arizona lender which had a provision stating that Arizona law applied to the transaction.

35.     The Legislators of the State of Arizona have long expressed a direct interest in deciding crimes, torts, and other wrongs associated with flights that occur within Arizona.  A.R.S. § 28-2808 specifies that "Any crime, tort or other wrong that is committed by or against an aeronaut or passenger while in flight over this state is governed by the law of this state."  Here, the torts of strict liability and negligence, and other theories, are alleged to have been committed "against an aeronaut" "while in flight over this state."

36.     Defendants, and each of them, have substantial contacts with the State of Arizona such that maintenance of a lawsuit is reasonable and does not offend traditional notions of fair play and substantial justice.  Defendants have purposefully availed themselves of conducting activities in the State of Arizona.  Defendants have fostered numerous relationships in Arizona so that Arizona residents will continue to buy aircrafts (and engines) that are kept, service, and flown primarily in Arizona.

37.     Defendants further enjoy the benefits of numerous aircraft owners in Arizona that need ongoing maintenance, service, repair, safety notices, safety bulletins, airworthiness directives, etc. that necessarily involve and benefit Defendants.  Aircrafts are expensive to purchase and maintain.  Defendants enjoy the benefits provided by Arizona residents.

38.     According to the FAA registry, Defendant MOONEY presently has at least 207 aircrafts registered to owners in the State of Arizona.  Thus, Defendant MOONEY has substantial ongoing contacts with the State of Arizona.

9483997.1

39.     According to NTSB records, Mooney aircrafts have been involved in more than one-hundred accidents/incidents in the State of Arizona since at least the 1960's.  Thus, Defendant MOONEY has substantial ongoing contacts with the State of Arizona.

40.     Continental AVGas burning engines are equipped as standard equipment in more than just Mooney aircraft.  Defendant CONTINENTAL AVGas burning engines are found in airplanes manufactured by at least the following manufacturers:  Cessna (152/C170/C172/C182/C206/C207/TTX/Columbia 300-400 Series); Piper (Malibu/PA-28/Arrow Turbo/Seneca); Beechcraft (Bonanza/Baron); Cirrus (SR20/SR22/SR22T), and; Mooney.  Upon information and belief, and subject to further discovery, there are hundreds (if not thousands) of aircrafts registered in the State of Arizona equipped with Continental engines.  Moreover, upon information and belief, and subject to further discovery, there are hundreds (if not thousands) of accidents/incidents, involving aircraft equipped with Continental engines, that have occurred over the decades in Arizona.  Thus, Defendant CONTINENTAL has substantial ongoing contacts with the State of Arizona.

41.     The aerospace manufacturing business is a major industry in the State of Arizona.  Plaintiffs allege, upon information and belief, and upon further discovery, that Defendants MOONEY and CONTINENTAL source parts, supplies, equipment, harnesses, and raw materials from the State of Arizona that are used for the manufacture of the Subject Aircraft and Subject Aircraft Engine.

42.     Trucking/transportation is a major industry in the State of Arizona.  Plaintiffs allege, upon information and belief, and upon further discovery, that Defendants MOONEY and CONTINENTAL systematically and routinely use Arizona highways and even Arizona trucking

**14**

companies for transportation of its goods from suppliers, to dealers, to vendors, and to customers.

43.     There is no inherent unfairness in having Defendants litigate in the State of Arizona. For example, in Maricopa County alone, Defendant CONTINENTAL (its predecessor company Teledyne) has defended a dozen or more lawsuits, including very protracted, lengthy cases that went to trial and even appeal.  Defendant CONTINENTAL has longstanding counsel in the State of Arizona.  Defendants can reasonably be expected to be haled into Arizona courts because of similar incidents and injuries involving their products.

44.     Defendants, and each of them, have done business in Arizona with the deliberate and specific intent to penetrate the Arizona market and obtain the sale and distribution of aircrafts and aircraft engines into every American state, including into Arizona.

45.     There has been a regular and systematic flow of Defendants' aircrafts and engines into the State of Arizona.

46.     There was a regular, deliberate, and systematic course of sales of Defendants' aircrafts and engines into the State of Arizona.

47.     Upon information and belief, Defendants utilize express agents, apparent agents, and/or ostensible agents on behalf of their behalf throughout the United States and State of Arizona.

48.     Defendants knew that sellers, brokers, and dealerships sold, were selling, and would continue to sell a regular volume of their aircraft and engines to be used in Arizona.

49.     Defendants did not exclude sales or distribution of its product into Arizona and did not limit its American sales to any specific state. By intent and direction rather than by chance, Defendants used established distribution channels to sell their aircraft and engines in the United

**15**

States, and into Arizona.

50.     The selling and distribution arrangements between Defendants and their sellers, brokers, and dealerships for sales in Arizona were not an isolated transaction but were part of an ongoing, systematic, intentional, and substantial business relationship.

51.     The aircrafts and engines manufactured by Defendants reached Arizona systematically and deliberately, not fortuitously, as part of an intentional, systematic, continuing stream of commerce carefully designed and directed for use in Arizona.

52.     Defendants clearly intended to serve the market with their aircraft and engines throughout America, including in Arizona.

53.     The distribution and sale of Subject Aircraft and Subject Aircraft Engine that caused the Subject Accident was not simply an isolated occurrence, but arose from the intentional and deliberate efforts of Defendants and its sellers, brokers, and dealerships to serve, directly or indirectly, the market for its product in Arizona and the Southwest.

54.     The exact number of aircraft and engines manufactured by Defendants that were destined for Arizona over the past several decades, that have entered Arizona through established, systematic, and deliberate distribution channels is, on information and belief, substantial. Disclosure and discovery will reveal the exact figures of that deliberate, widespread, and systematic sales to Arizona citizens and pilots flying in Arizona.

**SECTION 6**
**Count One – Strict Product Liability**
**(All Defendants)**

55.     Plaintiffs re-allege and incorporate by reference all prior and subsequent allegations as though fully set forth in this pleading.

**16**

56.     The Subject Aircraft equipped with the Subject Aircraft Engine was purchased by decedent and his spouse brand new from the Mooney factory on or about May 6, 2019.  Upon information and belief, Defendant MOONEY originally built the Subject Aircraft intending to sell it to buyer living in China.  The Subject Aircraft was to be shipped to China.  Upon information and belief, Defendant MOONEY built the aircraft to meet Chinese regulations and standards, which were less stringent than the U.S. market.  However, when Mr. Brandemuehl came along, Defendant MOONEY saw an opportunity for a quick sale and instead sold this Chinese-specified aircraft to Mr. Brandemuehl without informing him that the aircraft was built for the China market.

57.     The Subject Aircraft was designed, configured, engineered, fabricated, assembled, built, manufactured, produced, labeled, tested, inspected by Defendant MOONEY and then marketed, promoted, advertised, distributed, delivered, and sold by Defendant MOONEY to an authorized Mooney aircraft dealership owned and operated by Defendant C & M AVIATION/MORNINGSTAR, for the foreseeable use and operation throughout the United States, including the State of Arizona.  Defendant C & M AVIATION/MORNINGSTAR in turn sold the Subject Aircraft to decedent and his spouse.

58.     The Subject Aircraft Engine was designed, configured, engineered, fabricated, assembled, built, manufactured, produced, labeled, tested, inspected by Defendant CONTINENTAL and then marketed, promoted, advertised, distributed, delivered, and sold by Defendant CONTINENTAL to Defendant MOONEY, to be equipped in Mooney aircraft models, for the foreseeable use and operation throughout the United States, including the State of Arizona.

**17**

59.     Defendant MOONEY, in coordination with Defendant CONTINENTAL, designed the Subject Aircraft model with the intent that it be known as the fastest piston-driven single engine aircraft model in the world.  Defendants emphasized speed over safety motivated by the desire to maximize sales and profits.  In the process, Defendants cut corners and deviated from usual safety protocols.  Defendant MOONEY was facing severe financial distress for many years and needed a way to generate publicity and boost sales.  Moreover, to make the aircraft lighter for purposes of maximizing speed, Defendant MOONEY debuted a new composite skin shell for the Subject Aircraft model in lieu of the time-tested, but heavier, aluminum skin with steel roll cage. Upon information and belief, Defendants knew that the new composite skin shell was not crashworthy.  Moreover, upon information and belief, Defendants knew that the routing of the fuel lines was such that it caused the aircraft to be prone to mid-air failure and fuel starvation under foreseeable conditions.  Defendants further designed the aircraft to have "wet" wings without any safety features that would prevent the leakage of fuel during foreseeable crashes.

60.     As a result of the acts of Defendants, and each of them, the Subject Aircraft and Subject Aircraft Engine were in a defective condition unreasonably dangerous to foreseeable users under foreseeable conditions.  A direct and proximate cause of the Subject Accident, the injuries and damages sustained by Mr. Brandemuehl and Plaintiffs Brandemuehl were the unsafe, defective, and unreasonably dangerous conditions of the Subject Aircraft and Subject Aircraft Engine in design, manufacturing, and warning that were below the expectations of a reasonable consumer and below industry standards.

61.     The Subject Aircraft and Subject Aircraft Engine were in a defective condition unreasonably dangerous to consumers in that during ordinary operation under foreseeable

**18**

conditions, the aircraft and engine had the propensity to fail during mid-air flight.  Furthermore, the Subject Aircraft lacked safe and crashworthy design and prevention against post-crash fires. Fuel was permitted leak and pour into the cockpit due to flawed design and manufacture.

62.    In addition, the Subject Aircraft and Subject Aircraft Engine were defective and unreasonably dangerous because they failed to contain, among other things, suitable and available fail-safe design features and fail-safe devices, all of which were absolutely essential and necessary to prevent injuries to foreseeable persons during foreseeable uses.  The defective and unreasonably dangerous conditions existed due to faulty, flawed, and unsafe design, inferior and inadequate materials and parts, slipshod workmanship and manufacturing processes, a design that was below the state-of-the-art, lack of warnings, and lack of fail-safe devices and mechanisms.

63.    Defendants MOONEY and CONTINENTAL defectively designed, configured, engineered, fabricated, assembled, built, manufactured, produced, labeled, tested, marketed, promoted, advertised, imported, distributed, delivered, and sold the Subject Aircraft and Subject Aircraft Engine, thereby placing it in the stream of commerce in a defective, unsafe, and unreasonably dangerous condition through its authorized sellers, including Defendant C & M AVIATION/MORNINGSTAR.

64.    The defects in the Subject Aircraft and Subject Aircraft Engine were beyond the contemplation and expectations of a reasonable person.  The defective and unreasonably dangerous conditions were not observable by Plaintiffs or Mr. Brandemuehl who, lacking the technical knowledge and skill required to disassemble and examine the Subject Aircraft and Subject Aircraft Engine, relied upon the duty of Defendants, and each of them, to produce a safe product.  Furthermore, the dangers far outweighed the purported utility in the design of the

**19**

products. Defendants failed to design, configure, engineer, fabricate, assemble, build, manufacture, produce, label, test, market, promote, advertise, import, distribute, deliver, and sell the Subject Aircraft and Subject Aircraft Engine in a reasonably safe condition which conformed to and was in compliance with industry and other safety standards.

65.    Before the Subject Aircraft and Subject Aircraft Engine's failure and their manufacture, Plaintiffs and Mr. Brandemuehl were totally unaware that these products were in a defective condition unreasonably dangerous to consumers.  Defendants, and each of them, failed to warn Plaintiffs and Mr. Brandemuehl about the propensity of the products to fail and further to cause violent explosions and fire, the defects and hazards in the products, and the serious risk of the products causing serious injury and even death.

66.    Due to the Subject Aircraft and Subject Aircraft Engine's defective and unreasonably dangerous design, manufacture, and lack of warning, the products were extremely dangerous to Plaintiffs, and Mr. Brandemuehl, who were totally unaware of the dangers, hazards, and perils of the products.  Defendants, and each of them, owed a non-delegable duty and obligation for the integrity and safety of the product.  Defendants, and each of them, breached their duty and obligation.

67.    At the time the Subject Aircraft and Subject Aircraft Engine were produced, there were reasonable alternative designs, systems, manufacturing processes, labels, and warnings that would have eliminated the risk of injury and death.  Alternatives were feasible and cost effective in terms of the products' manufacturing, longevity, assembly, maintenance, aesthetics, and range of consumer choice among products.  The magnitude and probability of foreseeable risks of harm were far too great and serious for Defendants to disregard the use of alternatives. Furthermore, the

failure to use alternatives violated consumer expectations about the advertising and public image that Defendants portray about their reputation for quality and safety. Moreover, given that consumers nationwide were able to purchase these products, alternatives should have been used. The omission of alternative designs, manufacturing processes, and warnings rendered the Subject Aircraft and Subject Aircraft Engine's into products that were not reasonably safe.

68. As a direct and proximate result of the Defendants' unreasonably dangerous and defective products containing at a minimum, design, manufacturing, and/or warning defects, the Subject Aircraft and Subject Aircraft Engine failed during mid-air flight, did not perform safely, and did not provide reasonably adequate protection and crashworthiness from injury and death as an ordinary consumer would expect when using these products in a reasonably foreseeable manner. The lack of safe design, manufacture, and warning of the Subject Aircraft and Subject Aircraft Engine caused Mr. Brandemuehl's horrific injuries, and eventually his death, because these products were defective and unreasonably dangerous when used in a reasonably foreseeable manner and because Defendants failed to warn, instruct, or protect against the dangers or hazards in the use of those instrumentalities and failed to provide proper instructions and warnings for the use of those instrumentalities.

69. On the date of the Subject Accident, the Subject Aircraft and Subject Aircraft Engine were being used in a reasonably foreseeable manner as such products would be used. Moreover, the Subject Aircraft and Subject Aircraft Engine were in the substantially same condition at the time of the Subject Accident as they were at the time of Defendants' manufacture, assembly, construction, testing, distribution, marketing, advertising, and sale.

**21**

70.     Defendants are strictly liable to Plaintiffs for personal injury, wrongful death, and subrogation damages caused by the defective and unreasonably dangerous condition of the Subject Aircraft and Subject Aircraft Engine, which lacked safe and protective designs and devices, lacked safe and protective warnings, lacked crashworthy design, and also failed to provide reasonably safe operation under foreseeable conditions.

71.     As a direct and proximate result of the defective and unreasonably dangerous products manufactured, distributed, and sold by Defendants, Mr. Brandemuehl was horrendously burned and injured, and eventually perished due to those injuries.  Plaintiffs Brandemuehl sustained wrongful death injuries and damages described below, and Plaintiff Brandemuehl Estate incurred medical expenses due to the injuries sustained by Mr. Brandemuehl.  Plaintiff Endurance sustained damages in the form of insurance payments associated with the subject accident. Plaintiffs, and each of them, sustained and will incur damages as set forth below, and that each item of damages set forth therein is equally applicable to this claim. Furthermore, all allegations for punitive and exemplary damages are equally applicable to this claim.

**SECTION 7**
**Count Two – Negligence**
**(All Defendants)**

72.     Plaintiffs re-allege and incorporate by reference all prior and subsequent allegations as though fully set forth in this pleading.

73.     Defendants, and each of them, were negligent in designing, configuring, engineering, fabricating, assembling, building, manufacturing, producing, labeling, testing, marketing, promoting, advertising, importing, distributing, and selling the Subject Aircraft and Subject Aircraft Engine.  Further, Defendants were negligent in failing to provide sound and

**22**

safely designed products to reasonably foreseeable users.  Defendants knew, or in the exercise of reasonable care, should have known that the Subject Aircraft and Subject Aircraft Engine, including the parts thereof, would not and could not effectively protect and provide safe operation under foreseeable operating conditions and circumstances. Further, Defendants, and each of them, failed to warn users. As a direct and proximate cause of the negligence of Defendants, and each of them, Plaintiffs sustained injuries and damages described herein.

74.     The negligence of Defendants, and each of them, included but was not limited to the following acts or omissions:

(a)     Negligently failing to develop and incorporate a proper design in the construction, assembly, and manufacture of the Subject Aircraft and Subject Aircraft Engine.

(b)     Negligently using improper materials which were inferior, unsafe, and unsuitable, and which were mechanically, physically, and structurally defective.

(c)     Negligently failing to properly inspect and test the Subject Aircraft and Subject Aircraft Engine for defects.

(d)     Negligently failing to design, assemble, construct, and incorporate reasonably safe and appropriate safety features, mechanisms, and devices to prevent injuries and death caused by the propensity of the products to fail during mid-air flight, crash, and leak fuel under normal usage.

(e)     Negligently failing to provide safe, reliable, and dependable features, mechanisms, and devices to provide the protection from serious injury and death which an ordinary user would reasonably expect.

23

9483997.1

(f)   Negligently failing to produce an aircraft and engine which complied with national safety standards and industry custom and practices.

(g)   Negligently failing to retrofit and recall the Subject Aircraft and Subject Aircraft Engine, modify their design, and failing to provide post-sale warnings and safety bulletins to product owners, distributors, sellers, and foreseeable users.

(h)   Negligently failing to properly label the Subject Aircraft and Subject Aircraft Engine for danger and failing to place adequate warnings on the products.

(i)   Negligently failing to design an aircraft with a safe and crashworthy design that protects the occupants during foreseeable crashes.

(j)   Negligently failing to design an aircraft with systems and devices to prevent fuel leakage, explosion, and fire during foreseeable crashes.

(k)   Negligently failing to produce an aircraft and engine that were free of slipshod workmanship, design, and manufacturing processes.

(l)   Negligently failing to produce products that were free of mismatch in materials and parts that had the capacity and likelihood to cause serious injury and death.

(m)   Negligently failing to produce an aircraft and engine that were of safe design and conformed to the state-of-the-art.

(n)   Negligently failing to produce an aircraft and engine with safe and proper assembly.

(o)   Negligently placing the Subject Aircraft and Subject Aircraft Engine, in a defective and unreasonably dangerous condition, into the stream of commerce.

75.   As a direct and proximate result of the reckless, negligent, callous, and outrageous acts and omissions of Defendants, and each of them, Mr. Brandemuehl was horrendously burned

24

9483997.1

and injured, and eventually perished due to those injuries.  Plaintiffs Brandemuehl sustained wrongful death injuries and damages described below, Plaintiff Brandemuehl Estate incurred medical expenses due to the injuries sustained by Mr. Brandemuehl, and Plaintiff Endurance sustained damages, described *supra*.  Plaintiffs, and each of them, sustained and will incur damages as set forth below, and that each item of damages set forth therein is equally applicable to this claim. Furthermore, all allegations for punitive and exemplary damages are equally applicable to this claim.

## SECTION 8
### Count Three – Breach of Express Warranty
### (All Defendants)

76.    Plaintiffs re-allege and incorporate by reference all previous and subsequent allegations as though fully set forth herein.

77.    Defendants, and each of them, are and were at all relevant times herein a merchant as defined by the Uniform Commercial Code ("UCC").

78.    Upon information and belief, Defendants warranted that the Subject Aircraft and Subject Aircraft Engine sold to Plaintiffs in 2019 to be free of defects in material and workmanship, and Defendants agreed to repair or replace any defective conditions or defective components during the warranty period.

79.    In addition, upon information and belief, Defendants, and each of them, affirmatively represented and promised that the Subject Aircraft and Subject Aircraft Engine sold to Plaintiffs in 2019 would be fully operational, safe, and reliable.  Plaintiffs are further informed and believe that these warranties were also made in advertisements and by representatives of Defendants.  The representations and promises were express warranties, and were part of the basis

**25**

of the bargain between the parties.

80.    These express warranties were breached because the Subject Aircraft and Subject Aircraft Engine sold to Plaintiffs in 2019 were not free of defects and were not fully operational, safe, or reliable.  Defendants sold the Subject Aircraft and Subject Aircraft Engine to Plaintiffs in a defective and unreasonably dangerous condition, and failed to make repairs and implement reasonable safety recalls necessary to eliminate the defects and make the products safe for their intended and reasonably foreseeable use and operation.

81.    As a direct and proximate result of Defendants' breaches of express warranty, Mr. Brandemuehl was horrendously burned and injured, and eventually perished due to those injuries. Plaintiffs Brandemuehl sustained wrongful death injuries and damages described below, and Plaintiff Brandemuehl Estate incurred medical expenses due to the injuries sustained by Mr. Brandemuehl.    Plaintiff Endurance sustained damages in the form of insurance payments associated with the subject accident described *supra*.  Plaintiffs, and each of them, sustained and will incur damages as set forth below, and that each item of damages set forth therein is equally applicable to this claim.  Furthermore, all allegations for punitive and exemplary damages are equally applicable to this claim.

### SECTION 9
### Count Four – Breach of Implied Warranty
### (All Defendants)

82.    Plaintiffs re-allege and incorporate by reference all previous and subsequent allegations as though fully set forth herein.

83.    The implied warranties of merchantability arose from the sale of the Subject Aircraft and Subject Aircraft Engine to Plaintiffs in 2019, and were not properly excluded or

**26**

modified.

84.     The Subject Aircraft and Subject Aircraft Engine sold to Plaintiffs in 2019 violated the implied warranties of merchantability and fitness for a particular purpose, because the aircraft and its engine were not safe or fit for their intended and reasonably foreseeable use and contained defects that caused the horrific burn injuries to Mr. Brandemuehl, and eventually his death.

85.     Plaintiffs and Mr. Brandemuehl were unaware of the defects in the Subject Aircraft and Subject Aircraft Engine and could not reasonably have discovered them when they purchased the products.

86.     As a direct and proximate result of Defendants' breaches of the implied warranties of merchantability and fitness for a particular purpose, Mr. Brandemuehl was horrendously burned and injured, and eventually perished due to those injuries.   Plaintiffs Brandemuehl sustained wrongful death injuries and damages described below, and Plaintiff Brandemuehl Estate incurred medical expenses due to the injuries sustained by Mr. Brandemuehl.  Plaintiff Endurance sustained damages in the form of insurance payments associated with the subject accident as described *supra*.   Plaintiffs, and each of them, sustained and will incur damages as set forth below, and that each item of damages set forth therein is equally applicable to this claim. Furthermore, all allegations for punitive and exemplary damages are equally applicable to this claim.

**SECTION 10**
**(Punitive & Exemplary Damages)**

87.     Plaintiffs re-allege and incorporate by reference all prior and subsequent allegations as though fully set forth in this pleading.

27

88.     Plaintiffs allege that Defendants' acts were carried out with an "evil mind" in that Defendants actually knew that their dangerously defective products and outrageous conduct created a substantial risk of serious harm. Defendants' egregious, willful, and outrageous conduct constitutes serious and conscious disregard for the life and limb of Mr. Brandemuehl and Plaintiffs in that Defendants knew of the probable consequences of their reckless acts and dangerously defective products.

89.     Upon information and belief, Defendant MOONEY originally built the Subject Aircraft intending to sell it to buyer living in China.  The Subject Aircraft was to be shipped to China.  Upon information and belief, Defendant MOONEY built the aircraft to meet Chinese regulations and standards, which were less stringent than the U.S. market.  However, when Mr. Brandemuehl came along, Defendant MOONEY saw an opportunity for a "cash buyer" and quick sale and instead sold this Chinese-specified aircraft to Mr. Brandemuehl without informing him that the aircraft was built for the China market.

90.     Furthermore, Defendant MOONEY, in coordination with Defendant CONTINENTAL, designed the Subject Aircraft model with the intent that it be known as the fastest piston-driven single engine aircraft model in the world.  Defendants emphasized speed over safety motivated by the desire to maximize sales and profits.  In the process, Defendants cut corners and deviated from usual safety protocols.  Defendant MOONEY was facing severe financial distress for many years and needed a way to generate publicity and boost sales. Moreover, to make the aircraft lighter for purposes of maximizing speed, Defendant MOONEY debuted a new composite skin shell for the Subject Aircraft model in lieu of the time-tested, but heavier, aluminum skin with steel roll cage.  Upon information and belief, Defendants knew that

**28**

the new composite skin shell was not crashworthy.   Moreover, upon information and belief, Defendants knew that the routing of the fuel lines was such that it caused the aircraft to be prone to mid-air failure and fuel starvation under foreseeable conditions.   Defendants further designed the aircraft to have "wet" wings without any safety features that would prevent the leakage of fuel during foreseeable crashes.

91.    Additionally, Defendants acted to serve their own interests, having reason to know and consciously disregarding a substantial risk that their outrageous conduct and dangerously defective products would cause significant harm and even death to others. Further, Defendants consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others. Defendants' tortious misconduct was clearly and convincingly outrageous, oppressive, and committed with "evil mind" such that these Defendants deserve to be punished in a substantial, meaningful way in order to deter these Defendants from committing future misconduct, deter other companies from committing similar misconduct, to make an example out of these Defendants, and to send a message to these Defendants and the industry as a whole expressing society's detestation and condemnation of such reprehensible misconduct. Accordingly, Plaintiffs are entitled to and demand exemplary and punitive damages against Defendants, and each of them, in a sum that is reasonable and just in the premises.

### SECTION 11
### (Compensatory Damages)

92.    Plaintiffs re-allege and incorporate by reference all prior and subsequent allegations as though fully set forth in this pleading.

**29**

93.     As a direct and proximate result of the Subject Accident caused by the fault of Defendants, and each of them, Mr. Brandemuehl was horrendously burned and injured, and eventually perished due to those injuries.  Mr. Brandemuehl sustained horrific 3rd degree burn injuries to the majority of his body surface.  His injuries necessitated immediate hospitalization at the Arizona Burn Center located in Phoenix, Arizona.

94.     The Arizona Burn Center is nationally and internationally recognized as one of the top burn-treatment hospitals.  Highly trained physicians and staff provided surgical procedures, treatment, and care to Mr. Brandemuehl for many months following his injuries.   Mr. Brandemuehl was hospitalized at the Arizona Burn Center (presently known as Arizona Burn Center Valleywise Health) for his injuries from the date of the accident (June 11, 2019) through October 20, 2019 when he passed away.

95.     The hospitalization expenses incurred by Mr. Brandemuehl at the Arizona Burn Center incurred are approximately $14,597,504.65.  In addition, upon information and belief, Mr. Brandemuehl incurred additional expenses for services of physicians and other medical professionals while hospitalized at the Arizona Burn Center.  Plaintiffs allege that the medical expenses incurred by Mr. Brandemuehl were reasonable, necessary, and caused by the Subject Accident.

96.     Under Arizona law, a personal injury action survives the death of decedent and can be brought on behalf of the Estate pursuant to A.R.S. § 14-3110, commonly known as the "Survival Statute."  Plaintiff JENNY ANGELA BRANDEMUEHL has been duly appointed as the Special Administrator for the ESTATE OF MARK WESLEY BRANDEMUEHL with the power and authority to bring the present claim for the medical expenses incurred by Mr.

**30**

Brandemuehl from the date of the accident (June 11, 2019) through October 20, 2019 when he passed away.

97.     As a further direct and proximate result of the Subject Accident caused by the fault of Defendants, and each of them, Mr. Brandemuehl died as a result of the injuries he sustained on June 11, 2019.   Consequently, Plaintiffs Brandemuehl have sustained the loss of Mr. Brandemuehl, a loving husband and father.   The deceased, Mr. Brandemuehl, was a diligent, industrious, loving person who cared deeply for his family, was devoted to a career, and who greatly enjoyed life to its fullest extent.

98.     Due to the death of Mr. Brandemuehl, Plaintiffs Brandemuehl are grief-stricken and will continue to suffer the loss of decedent.

99.     Plaintiffs Brandemuehl have been deprived of the love, affection, companionship, care, protection, and guidance of Mr. Brandemuehl since his tragic death, and these losses are expected to continue forever.

100.    Further, Plaintiffs Brandemuehl have experienced tremendous pain, grief, sorrow, anguish, stress, shock, and mental suffering since the tragic death of Mr. Brandemuehl, and these devastating injuries are expected to continue forever.

101.    Further, Plaintiffs Brandemuehl have sustained loss of income and services since the tragic death of Mr. Brandemuehl, and future economic losses are reasonably expected.

102.    Additionally, Plaintiffs Brandemuehl have incurred reasonable funeral, burial, and medical expenses.  Plaintiffs Brandemuehl further assert that they are entitled to any and all other damages allowed by law, including but not limited to the aggravating circumstances attending the wrongful acts committed by Defendants, and each of them.

**31**

9483997.1

103.   As a further direct and proximate result of the Subject Accident caused by the fault of Defendants, and each of them, Plaintiff Endurance sustained damages in the form of insurance payments in the amounts of $874,500 in insurance proceeds for the total loss of the Subject Aircraft; $3,408 in storage fees for the post-accident Subject Aircraft, and $5,000 in medical/other expense payments.

**SECTION 12**
**(Prayer for Relief)**

104.   Plaintiffs re-allege and incorporate by reference all prior and subsequent allegations as though fully set forth in this pleading.

105.   **WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

A.   For general compensatory damages in a just and reasonable amount;

B.   On behalf of Plaintiff Brandemuehl Estate, For the reasonable value of the special damages incurred by Mr. Brandemuehl and his Estate for the necessary medical attention and care sustained by Mr. Brandemuehl from June 11, 2019 through October 20, 2019;

C.   On behalf of Plaintiffs Brandemuehl, for a sum that is reasonable and just as and for Plaintiffs Brandemuehl's damages incurred under the Arizona Wrongful Death Act, A.R.S. § 12-611 *et seq*.;

D.   On behalf of Plaintiffs Brandemuehl, for the reasonable value of the special damages incurred to date, including the loss of earnings, funeral expenses, burial expenses, and for future loss of earnings;

32

E.      On behalf of Plaintiff Endurance, the special damages incurred by Endurance for the payments made in accordance with its insurance policy relevant to the Subject Aircraft.

F.      Plaintiff Endurance further seeks recovery of prejudgment interests to the extent permitted under Arizona law, including under A.R.S. § 44-1201.

G.      For a reasonable award of punitive and exemplary damages against Defendants;

H.      For Plaintiffs' costs incurred in this matter.

I.      For reasonable attorney's fees on the Express and Implied Warranty claims.

J.      For such other and further relief as the Court and jury may deem just and proper in the premises.

**DATED** this 10th day of June, 2021.

**BREWERWOOD, P.L.L.C.**

By    /s/ Dane L. Wood
     John B. Brewer
     Dane L. Wood
     2398 East Camelback Road, Suite 540
     Phoenix, AZ 85016
     *Attorneys for Plaintiffs*

**JONES, SKELTON & HOCHULI, P.L.C.**

By    /s/ Kenneth L. Moskow
     Ryan J. McCarthy
     Kenneth L. Moskow
     40 North Central Avenue, Suite 2700
     Phoenix, Arizona 85004
     *Attorneys for Plaintiff Endurance American Insurance Co.*

**33**

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
6/10/2021 1:09:24 PM
Filing ID 12997798

Person/Attorney Filing: Dane L Wood
Mailing Address: 2398 E. Camelback Rd. Ste. 540
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (602)254-9813
E-Mail Address: marci@brewerwood.com
[ ☐ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 016098, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

Jenny Angela Brandemuehl, et al.
Plaintiff(s),
v.
Mooney International Corporation a
Delaware Corporation, et al.
Defendant(s).

Case No.  **CV2021-009395**

**CERTIFICATE OF
COMPULSORY ARBITRATION**

I certify that I am aware of the dollar limits and any other limitations set forth by the
Local Rules of Practice for the Maricopa County Superior Court, and I further certify that
this case IS NOT subject to compulsory arbitration, as provided by Rules 72 through 77 of
the Arizona Rules of Civil Procedure.

RESPECTFULLY SUBMITTED this

By: Dane L Wood /s/
    Plaintiff/Attorney for Plaintiff

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
6/10/2021 1:09:24 PM
Filing ID 12997797

# In the Superior Court of the State of Arizona
# In and For the County of Maricopa

**Plaintiff's Attorneys:**

Dane L Wood - Primary Attorney
Bar Number: 016098, issuing State: AZ
Law Firm: BrewerWood, PLLC
2398 E. Camelback Rd. Ste. 540
Phoenix, AZ 85014
Telephone Number: (602)254-9813
Email address: marci@brewerwood.com

John B Brewer
Bar Number: 018207, issuing State: AZ
Law Firm: BrewerWood, PLLC
Telephone Number: (602)254-9813

Ryan J McCarthy
Bar Number: 020571, issuing State: AZ
Law Firm: Jones, Skelton & Hochuli, PLC
Telephone Number: (600)263-1789

Kenneth L Moskow
Bar Number: 029839, issuing State: AZ
Law Firm: Jones, Skelton & Hochuli, PLC
Telephone Number: (602)263-1789

**CV2021-009395**

**Plaintiffs:**

Jenny Angela Brandemuehl

Wesley Agustus Brandemuehl

Adrian David Brandemuehl

Estate of Mark Wesley Brandemuehl

Endurance American Insurance Company

**Defendants:**

Mooney International Corporation a Delaware Corporation

Continental Aerospace Technologies, Inc. a Delaware Corporation

Continental Motors, Inc. a Delaware corporation

C&M Aviation, LLC an Idaho limited liability company, DBA Delta Aviation, Inc.


Morningstar Aviation, Inc. a Colorado corporation, DBA Delta Aviation, Inc.

Discovery Tier t3

Case Category: Tort Non-Motor Vehicle
Case Subcategory: Negligence

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
6/10/2021 1:09:24 PM
Filing ID 12997802

Person/Attorney Filing: Dane L Wood
Mailing Address: 2398 E. Camelback Rd. Ste. 540
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (602)254-9813
E-Mail Address: marci@brewerwood.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 016098, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Jenny Angela Brandemuehl, et al.
Plaintiff(s),
v.
Mooney International Corporation a
Delaware Corporation, et al.
Defendant(s).

Case No.  **CV2021-009395**

**SUMMONS**

To: C&M Aviation, LLC an Idaho limited liability company, DBA Delta
    Aviation, Inc.

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT
AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO
NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were
    served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an
    Answer in writing with the Court, and you must pay the required filing fee. To file your
    Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson,
    Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's
    approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
    Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top
    of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents
    in this case.

3.  If this Summons and the other court papers were served on you within the State of
    Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the
    date of service, not counting the day of service. If this Summons and the other court papers
    were served on you outside the State of Arizona, your Answer must be filed within
    THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of
    service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *June 10, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #5791456

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
6/10/2021 1:09:24 PM
Filing ID 12997800

Person/Attorney Filing: Dane L Wood
Mailing Address: 2398 E. Camelback Rd. Ste. 540
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (602)254-9813
E-Mail Address: marci@brewerwood.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 016098, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Jenny Angela Brandemuehl, et al.
Plaintiff(s),
v.
Mooney International Corporation a
Delaware Corporation, et al.
Defendant(s).

Case No.  **CV2021-009395**

**SUMMONS**

To: Continental Aerospace Technologies, Inc. a Delaware Corporation

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT
AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO
NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were
    served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an
    Answer in writing with the Court, and you must pay the required filing fee. To file your
    Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson,
    Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's
    approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
    Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top
    of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents
    in this case.

3.  If this Summons and the other court papers were served on you within the State of
    Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the
    date of service, not counting the day of service. If this Summons and the other court papers
    were served on you outside the State of Arizona, your Answer must be filed within
    THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of
    service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *June 10, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #5791456

2

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
6/10/2021 1:09:24 PM
Filing ID 12997801

Person/Attorney Filing: Dane L Wood
Mailing Address: 2398 E. Camelback Rd. Ste. 540
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (602)254-9813
E-Mail Address: marci@brewerwood.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 016098, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Jenny Angela Brandemuehl, et al.
Plaintiff(s),
v.
Mooney International Corporation a
Delaware Corporation, et al.
Defendant(s).

Case No.  **CV2021-009395**

**SUMMONS**

To: Continental Motors, Inc. a Delaware corporation

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT
AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO
NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were
    served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an
    Answer in writing with the Court, and you must pay the required filing fee. To file your
    Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson,
    Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's
    approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
    Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top
    of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents
    in this case.

3.  If this Summons and the other court papers were served on you within the State of
    Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the
    date of service, not counting the day of service. If this Summons and the other court papers
    were served on you outside the State of Arizona, your Answer must be filed within
    THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of
    service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *June 10, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #5791456

2

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
6/10/2021 1:09:24 PM
Filing ID 12997799

Person/Attorney Filing: Dane L Wood
Mailing Address: 2398 E. Camelback Rd. Ste. 540
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (602)254-9813
E-Mail Address: marci@brewerwood.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 016098, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Jenny Angela Brandemuehl, et al.
Plaintiff(s),
v.
Mooney International Corporation a
Delaware Corporation, et al.
Defendant(s).

Case No. **CV2021-009395**

**SUMMONS**

To: Mooney International Corporation a Delaware Corporation

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS. READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *June 10, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #5791456

Clerk of the Superior Court
*** Electronically Filed ***
L. Overton, Deputy
6/10/2021 1:09:24 PM
Filing ID 12997803

Person/Attorney Filing: Dane L Wood
Mailing Address: 2398 E. Camelback Rd. Ste. 540
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (602)254-9813
E-Mail Address: marci@brewerwood.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 016098, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

Jenny Angela Brandemuehl, et al.
Plaintiff(s),
v.
Mooney International Corporation a
Delaware Corporation, et al.
Defendant(s).

Case No.  **CV2021-009395**

**SUMMONS**

To: Morningstar Aviation, Inc. a Colorado corporation, DBA Delta Aviation, Inc.

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to <u>Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.</u>
    Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents in this case.

3.  If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *June 10, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *LAMAAR OVERTON*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #5791456

| Office Distribution | **SUPERIOR COURT OF ARIZONA**<br>**MARICOPA COUNTY** | **\*\*FILED\*\***<br>08/18/2021<br>by Superior Court Admin<br>on behalf of Clerk of the<br>Superior Court |
|---|---|---|

08/14/2021                                    COURT ADMINISTRATION                                    Ct. Admin
                                                                                                        Deputy

**Case Number:** CV2021-009395

**Jenny Angela Brandemuehl**

**V.**

**Mooney International Corporation**

---

The Judge assigned to this action is the Honorable Katherine Cooper

### NOTICE OF INTENT TO DISMISS FOR LACK OF SERVICE

You are hereby notified that the complaint filed on 06/10/2021 is subject to dismissal pursuant to Rule 4 (i) of the Arizona Rules of Civil Procedure. The deadline for completing service is 09/08/2021. If the time for completing service has not been extended by the court and no defendants have been served by this date, the case will be dismissed without prejudice.

All documents required to be filed with the court should be electronically filed through Arizona Turbo Court at www.azturbocourt.gov.

# Superior Court of Maricopa County - integrated Court Information System
## Endorsee Party Listing
Case Number: CV2021-009395

| Party Name | Attorney Name | |
|---|---|---|
| Adrian David Brandemuehl | Dane L Wood | Bar ID: 016098 |
| Jenny Angela Brandemuehl | Dane L Wood | Bar ID: 016098 |
| Wesley Augustus Brandemuehl | Dane L Wood | Bar ID: 016098 |
| Endurance American Insurance Company | Kenneth L Moskow | Bar ID: 029839 |

# Liddy Legal Support Services

PO Box 2007, Phoenix, AZ 85001
63 E. Pennington St., #102, Tucson, AZ 85702
2700 Woodlands Village Blvd., #300-420, Flagstaff, AZ 86001
Phoenix 602-297-0676, Tucson 520-628-2824, Flagstaff 928-225-7737

CLERK OF THE
SUPERIOR COURT
FILED
C. ATKINS, DEP

2021 AUG 30 PM 2: 46

Client Matter    Brandemuehl v. Mooney
Account    # 0313
Invoice    # _____
Liddy    # 377881-2

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JENNY ANGELA BRANDEMUEHL; et. al.,

|  |  |
|---|---|
| **Plaintiff(s) / Petitioner(s),** | **CERTIFICATE OF SERVICE**<br>**BY PRIVATE PROCESS SERVER**<br>**Case No. CV2021-009395** |
| vs | |
| MOONEY INTERNATIONAL CORPORATION; et. al., | |
| **Defendant(s) / Respondent(s).** | ORIGINAL |

**ENTITY/PERSON TO BE SERVED:** Continental Motors, Inc. c/o The Prentice-Hall Corporation System, Inc., R.A.

**PLACE OF SERVICE:**    251 Little Falls Dr., Wilmington, DE 19808

**DATE OF SERVICE:** On the ___20___ day of ___August___, _2021_ at __2:55__ PM    County _New Castle_

| | PERSONAL SERVICE | ☒ | Left a copy with a person authorized to accept service. | | | At this usual place of abode, I left a copy with a person of suitable age and discretion residing therein. |

**Name of Person Served and Relationship/Title**    Served by leaving the documents with Lynanne Gares, Litigation Management

Services Leader, authorized to accept/receive service.

on ___8/19/2021___ we received the following documents for service:

Summons, Complaint and Certificate of Compulsory Arbitration

**Received from BREWERWOOD, PLLC, ( DANE L. WOOD #016098 )**

PROCESS SERVER: Danielle Stevens

The undersigned states: That I am a private process server in the county of New Castle, State of Delaware.

SIGNATURE OF PROCESS SERVER: _Danielle St_    Date: _8/23/2021_

**Tax ID#** 90-0533870
I declare under penalty of perjury that the foregoing is true
and correct and was executed on this date.

# Liddy Legal Support Services

PO Box 2007, Phoenix, AZ 85001
63 E. Pennington St., #102, Tucson, AZ 85702
2700 Woodlands Village Blvd., #300-420, Flagstaff, AZ 86001
Phoenix 602-297-0676, Tucson 520-628-2824, Flagstaff 928-225-7737

CLERK OF THE
SUPERIOR COURT
FILED
C. ATKINS, DEP

2021 AUG 30 PM 2: 46

Client Matter   Brandemuehl v. Mooney
Account     # 0313
Invoice      # ----------
Liddy       # 377881-1

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JENNY ANGELA BRANDEMUEHL; et. al.,

                       **Plaintiff(s) / Petitioner(s),**

vs

MOONEY INTERNATIONAL CORPORATION; et. al.,

               **Defendant(s) / Respondent(s).**

**CERTIFICATE OF SERVICE
BY PRIVATE PROCESS SERVER
Case No. CV2021-009395**

ORIGINAL

**ENTITY/PERSON TO BE SERVED:** Mooney International Corporation c/o The Corporation Trust Company, R.A.

**PLACE OF SERVICE:**       1209 Orange St., Wilmington, DE 19801

**DATE OF SERVICE:** On the ___20___ day of ___August___, ___2021___ at ___2:25___ PM    County ___New Castle___

☐ PERSONAL SERVICE  ☒ Left a copy with a person authorized to accept service.    ☐ At this usual place of abode, I left a copy with a person of suitable age and discretion residing therein.

**Name of Person Served and Relationship/Title**   Served by leaving the documents with Phoebe Omolo, Intake Specialist,

authorized to accept/receive service.

on ___8/19/2021___ we received the following documents for service:

Summons, Complaint and Certificate of Compulsory Arbitration

**Received from BREWERWOOD, PLLC, ( DANE L. WOOD #016098 )**

PROCESS SERVER: ___Danielle Stevens___

The undersigned states: That I am a private process server in the county of New Castle, State of Delaware.

SIGNATURE OF PROCESS SERVER: _Danielle St_____     Date: _8/23/2021_

**Tax ID#** 90-0533870
I declare under penalty of perjury that the foregoing is true and correct and was executed on this date.

# Liddy Legal Support Services

PO Box 2007, Phoenix, AZ 85001
63 E. Pennington St., #102, Tucson, AZ 85702
2700 Woodlands Village Blvd., #300-420, Flagstaff, AZ 86001
Phoenix 602-297-0676, Tucson 520-628-2824, Flagstaff 928-225-7737

Client Matter    Brandemuehl v. Mooney
Account        # 0313
Invoice        # _____
Liddy          # 377881-5

CLERK OF THE
SUPERIOR COURT
FILED
R. MERINO, DEP

2021 AUG 31  AM 9: 45

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JENNY ANGELA BRANDEMUEHL; et. al.,

**Plaintiff(s) / Petitioner(s),**

vs

MOONEY INTERNATIONAL CORPORATION; et. al.,

**Defendant(s) / Respondent(s).**

**CERTIFICATE OF SERVICE
BY PRIVATE PROCESS SERVER**
Case No. CV2021-009395

**ENTITY/PERSON TO BE SERVED:** Morningstar Aviation, Inc. d/b/a Delta Aviation, Inc. c/o Susan J. Reisman

**PLACE OF SERVICE:**    60844 Hillsdale Dr., Montrose, CO 81401

**DATE OF SERVICE:** On the ___23rd___ day of ___August___, ___2021___ at ___10:00___ AM    County ___Montrose___

| | PERSONAL SERVICE | ☒ | Left a copy with a person authorized to accept service. | | At this usual place of abode, I left a copy with a person of suitable age and discretion residing therein. |

**Name of Person Served and Relationship/Title**    Served by leaving the documents with Susan J. Reisman, Statutory Agent,

authorized to accept/receive service.

on ___8/19/2021___ we received the following documents for service:

Summons, Complaint and Certificate of Compulsory Arbitration

**Received from BREWER WOOD, PLLC, ( DANE L. WOOD #016098 )**

PROCESS SERVER: David Mills

The undersigned states: That I am a private process server in the county of Montrose, State of Colorado.

SIGNATURE OF PROCESS SERVER: _____    Date: 8/24/21

**Tax ID#** 90-0533870
I declare under penalty of perjury that the foregoing is true
and correct and was executed on this date.

# Liddy Legal Support Services

PO Box 2007, Phoenix, AZ 85001
63 E. Pennington St., #102, Tucson, AZ 85702
2700 Woodlands Village Blvd., #300-420, Flagstaff, AZ 86001
Phoenix 602-297-0676, Tucson 520-628-2824, Flagstaff 928-225-7737

| | | |
|---|---|---|
| Client Matter | Brandemuehl v. Mooney | |
| Account | # 0313 | |
| Invoice | # ----------- | |
| Liddy | # 377881-4 | |

CLERK OF THE
SUPERIOR COURT
RECEIVED NE LOBBY
DOCUMENT DEPOSITORY

21 SEP -1 PM 2: 58

FILED BY: _____ C. Francis

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

JENNY ANGELA BRANDEMUEHL; et. al.,

           **Plaintiff(s) / Petitioner(s),**

vs

MOONEY INTERNATIONAL CORPORATION; et. al.,

           **Defendant(s) / Respondent(s).**

**CERTIFICATE OF SERVICE
BY PRIVATE PROCESS SERVER
Case No. CV2021-009395**

ⅅ ORIGINAL

**ENTITY/PERSON TO BE SERVED:** C&M Aviation, LLC, d/b/a Delta Aviation, Inc. c/o Mark Andrew Woods

**PLACE OF SERVICE:** 1258 Seven Gold, Eagle, ID 83616

**DATE OF SERVICE:** On the __26th__ day of __August__, __2021__ at __12:03__ PM   County __Ada__

| [ ] PERSONAL SERVICE | [X] Left a copy with a person authorized to accept service. | [ ] At this usual place of abode, I left a copy with a person of suitable age and discretion residing therein. |
|---|---|---|

**Name of Person Served and Relationship/Title**   Served by leaving the documents with Mark Woods, Registered Agent,

authorized to accept/receive service.

on __8/20/2021__ we received the following documents for service:

Summons, Complaint and Certificate of Compulsory Arbitration

**Received from BREWERWOOD, PLLC, ( DANE L. WOOD #016098 )**

PROCESS SERVER: Christie Harsh

The undersigned states: That I am a private process server in the county of Ada, State of Idaho.

SIGNATURE OF PROCESS SERVER: _Christie Harsh_   Date: 8/27/2021

**Tax ID#** 90-0533870
I declare under penalty of perjury that the foregoing is true
and correct and was executed on this date.

# Liddy Legal Support Services

PO Box 2007, Phoenix, AZ 85001
63 E. Pennington St., #102, Tucson, AZ 85702
2700 Woodlands Village Blvd., #300-420, Flagstaff, AZ 86001
Phoenix 602-297-0676, Tucson 520-628-2824, Flagstaff 928-225-7737

Client Matter   Brandemuehl v. Mooney
Account          # 0313
Invoice          # -----------
Liddy            # 377881-3

CLERK OF THE
SUPERIOR COURT
RECEIVED HE LOBBY
DOCUMENT DEPOSITORY

21 SEP -1  PM 2: 58

FILED BY: __C. Francis__

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
**IN AND FOR THE COUNTY OF MARICOPA**

JENNY ANGELA BRANDEMUEHL; et. al.,

                    **Plaintiff(s) / Petitioner(s),**
vs

MOONEY INTERNATIONAL CORPORATION; et. al.,

                    **Defendant(s) / Respondent(s).**

**CERTIFICATE OF SERVICE**
**BY PRIVATE PROCESS SERVER**
Case No. CV2021-009395

ORIGINAL

**ENTITY/PERSON TO BE SERVED:** Continental Aerospace Technologies, Inc. c/o Cogency Global, Inc., Registered Agent

**PLACE OF SERVICE:** 850 New Burton Rd., Ste. 201, Dover, DE 19904

**DATE OF SERVICE:** On the __24th__ day of __August__, __2021__ at __3:05__ __PM__ County __Kent__

| | PERSONAL SERVICE | ☒ | Left a copy with a person authorized to accept service. | | At this usual place of abode, I left a copy with a person of suitable age and discretion residing therein. |

**Name of Person Served and Relationship/Title**    Served by leaving the documents with Sidney Torrey, Managing Agent,

authorized to accept/receive service on behalf of Cogency Global, Inc.,

Registered Agent.

on __8/19/2021__ we received the following documents for service:

Summons, Complaint and Certificate of Compulsory Arbitration

Received from BREWERWOOD, PLLC, ( DANE L. WOOD #016098 )

PROCESS SERVER: Sharlene Brooks

The undersigned states: That I am a private process server in the county of Kent, State of Delaware.

SIGNATURE OF PROCESS SERVER: _Sharlene Brooks_            Date: _8/25/2021_

Tax ID# 90-0533870
I declare under penalty of perjury that the foregoing is true
and correct and was executed on this date.

Clerk of the Superior Court
*** Electronically Filed ***
T. Hays, Deputy
9/22/2021 11:54:06 AM
Filing ID 13406142

1  Ryan J. McCarthy, Bar #020571
   Kenneth L. Moskow, Bar #029839
2  JONES, SKELTON & HOCHULI P.L.C.
   40 N. Central Avenue, Suite 2700
3  Phoenix, Arizona 85004
   Telephone: (602) 263-1722
4  Fax: (602) 200-7833
   rmccarthy@jshfirm.com
5  kmoskow@jshfirm.com
   minuteentries@jshfirm.com
6
   Attorneys for Plaintiff Endurance American
7  Insurance Company

8              **SUPERIOR COURT OF THE STATE OF ARIZONA**

9                        **COUNTY OF MARICOPA**

10
   JENNY ANGELA BRANDEMUEHL, a          NO. CV2021-009395
11 widow, on behalf of all surviving statutory
   beneficiaries of Mark Wesley Brandemuehl,  **NOTICE OF VOLUNTARY DISMISSAL OF**
12 deceased, including: JENNY ANGELA          **C & M AVIATION, LLC RELEVANT TO**
   BRANDEMUEHL, surviving wife; WESLEY         **PLAINTIFF ENDURANCE AMERICAN**
13 AUGUSTUS BRANDEMUEHL, surviving             **INSURANCE COMPANY'S CLAIMS ONLY**
   adult son; ADRIAN DAVID
14 BRANDEMUEHL, surviving adult son;          (Assigned to the Honorable Katherine Cooper)
   JENNY ANGELA BRANDEMUEHL, Special
15 Administrator for and on behalf of the
   ESTATE OF MARK WESLEY
16 BRANDEMUEHL; and ENDURANCE
   AMERICAN INSURANCE COMPANY, a
17 Delaware corporation,

18                          Plaintiffs,

19        v.

20 MOONEY INTERNATIONAL
   CORPORATION, a Delaware corporation;
21 CONTINENTAL AEROSPACE
   TECHNOLOGIES, INC., a Delaware
22 corporation; CONTINENTAL MOTORS,
   INC., a Delaware corporation; C & M
23 AVIATION, LLC., an Idaho limited liability
   company d/b/a Delta Aviation, Inc.;
24 MORNINGSTAR AVIATION, INC., a
   Colorado corporation d/b/a Delta Aviation,
25 Inc.; DOES I through X; ABC

9765617.1

PARTNERSHIPS I through X, and; BLACK
CORPORATIONS I through X,

                                    Defendants.

---

Plaintiff Endurance American Insurance Company, through undersigned counsel and pursuant to Arizona Rule of Civil Procedure 41(a)(1)(A)(i), hereby provides notice that it voluntarily dismisses its claims against Defendant C & M Aviation, LLC.

This dismissal applies ***only*** to Plaintiff Endurance American Insurance Company's claims against C & M Aviation, LLC.  This dismissal does not apply to Plaintiff Endurance American Insurance Company's claims against any Defendant other than C & M Aviation, LLC. Further, this dismissal does not apply to Co-Plaintiff Jenny Angela Brandemuehl's claims -- whether as statutory Plaintiff or as Special Administrator for and on behalf of the Estate of Mark Wesley Brandemuehl -- against ***any*** Defendant.

DATED this 22nd day of September, 2021.

                        JONES, SKELTON & HOCHULI P.L.C.


                        By  /s/ Kenneth L. Moskow
                            Ryan J. McCarthy
                            Kenneth L. Moskow
                            40 N. Central Avenue, Suite 2700
                            Phoenix, Arizona 85004
                            Attorneys for Plaintiff Endurance American
                            Insurance Company

9765617.1

ORIGINAL of the foregoing electronically filed
this 22nd day of September, 2021.

COPY of the foregoing mailed/e-mailed
this 22nd day of September, 2021, to:

John B. Brewer
Dane L. Wood
BREWERWOOD, P.L.L.C.
2398 East Camelback Road, Suite 540
Phoenix, Arizona 85016
Attorneys for Plaintiff Jenny Angela Brandemuehl


 /s/ Pam Pullem

Clerk of the Superior Court
*** Electronically Filed ***
M. De La Cruz, Deputy
10/20/2021 3:37:09 PM
Filing ID 13514855

1   C. Megan Fischer (SBN 019828)
    Briana C. Campbell (SBN 034225)
2   **KLEIN THOMAS & LEE**
    340 East Palm Lane, Suite A310
3   Phoenix, Arizona 85004
    Tel: (602) 935-8300
4   megan.fischer@kleinthomaslaw.com
    briana.campbell@kleinthomaslaw.com
5
6   Will S. Skinner (*Pro Hac Vice to be filed*)
    Erik D. Slechta (*Pro Hac Vice to be filed*)
7   **SKINNER LAW GROUP**
    21600 Oxnard Street, Suite 1760
8   Woodland Hills, CA 91367
    Tel: (818) 710-7700
9   skinner@skinnerlawgroup.com
10  slechta@skinnerlawgroup.com

11  Attorneys for Defendant
    Continental Aerospace Technologies fka Continental Motors, Inc.
12

13              **SUPERIOR COURT OF ARIZONA**

14                **COUNTY OF MARICOPA**

15  JENNY ANGELA BRANDEMUEHL, a
    widow, on behalf of all surviving statutory        Case No. CV2021-009395
16  beneficiaries of Mark Wesley Brandemuehl,
    deceased, including: JENNY ANGELA            **SPECIALLY APPEARING DEFENDANT**
17  BRANDEMUEHL, surviving wife;               **CONTINENTAL AEROSPACE**
    WESLEY AUGUSTUS BRANDEMUEHL,              **TECHNOLOGIES, INC.'S MOTION TO**
18  surviving adult son; ADRIAN DAVID          **DISMISS FOR LACK OF PERSONAL**
    BRANDEMUEHL, surviving adult son;          **JURISDICTION PURSUANT TO ARIZONA**
19  JENNY ANGELA BRANDEMUEHL,                  **RULE OF CIVIL PROCEDURE 12(b)(2)**
    Special Administrator for and on behalf of
20  the ESTATE OF MARK WESLEY                  **[*ORAL ARGUMENT REQUESTED*]**
    BRANDEMUEHL; and ENDURANCE
21  AMERICA INSURANCE COMPANY, a
    Delaware corporation,                       (TIER 3)
22
            Plaintiffs,                          (Assigned to Hon. Katherine Cooper)
23
24  v.

25  MOONEY INTERNATIONAL
    CORPORATION, a Delaware corporation;
26  CONTINENTAL AEROSPACE
    TECHNOLOGIES, INC., a Delaware
27  corporation; CONTINENTAL MOTORS,
    INC., a Delaware corporation; C & M
28  AVIATION, LLC., an Idaho limited liability
    company d/b/a Delta Aviation, Inc.;
    MORNINGSTAR AVIATION, INC., a

1  Colorado corporation d/b/a Delta Aviation,
   Inc.; DOES I through X; ABC
2  PARTNERSHIPS I through X, and;
   BLACK CORPORATIONS I through X,

3          Defendants.

4

5          Specially appearing Defendant Continental Aerospace Technologies, Inc. (f/k/a Continental

6  Motors, Inc., and hereinafter "Continental") makes this limited appearance to move to dismiss

7  Plaintiffs' Complaint against Continental pursuant to Rule 12(b)(2) of the Arizona Rules of Civil

8  Procedure for lack of personal jurisdiction.

9  **I.       BACKGROUND**

10  **A. Incident And Claims**

11          This action involves an aviation accident involving a Mooney M20V Acclaim Ultra general

12  aviation aircraft with Federal Aviation Administration ("FAA") registration number N576CM

13  ("Subject Aircraft").  Mark Brandemuehl, the aircraft's pilot, is alleged to have suffered serious

14  injuries when the Subject Aircraft collided with ground obstacles during a forced landing near Deer

15  Valley Airport in Phoenix and a post-accident fire on June 11, 2019.  According to the Complaint,

16  Mr. Brandemuehl perished from his injuries on October 20, 2019.  The Subject Aircraft departed

17  Scottsdale, Arizona at approximately 2:37 pm and was destined for Carson Airport located in

18  Carson City, Nevada.

19          Mr. Brandemuehl's surviving spouse, Jenny Brandemuehl and their adult sons, Wesley

20  Brandemuehl and Adrian Brandemuehl (collectively "Plaintiffs"), filed suit against Continental,

21  *inter alia*, on June 10, 2021.  Plaintiffs contend that Continental is strictly liable for an allegedly

22  defectively designed and manufactured TSIO-550-G series engine (serial number 1035763) that

23  was in the Subject Aircraft at the time of the accident ("Subject Engine").  Plaintiffs also assert that

24  Continental negligently designed and manufactured the Subject Engine and breached express and

25  implied warranties.

26  **B. Continental**

27          Continental is a corporation organized and existing under the laws of the State of Delaware

28  with its principal place of business and headquarters in Mobile, Alabama.  Declaration of Michael

Ward in Support of Continental's Motion to Dismiss ("Ward Decl."), para. 4.  Continental is a designer and manufacturer of piston engines and engine components for general aviation aircraft. All aviation engines manufactured and sold by Continental are designed, manufactured, assembled and tested by Continental in Alabama.  Ward Decl., para. 5

Continental is not licensed, authorized, or registered to do business in Arizona and has no registered agent in Arizona.  Ward Decl., para. 7.  Continental has no distributors located in Arizona and has not had any Arizona distributors from at least 2018 to the present.  Id. at para. 8.  Continental does not regularly do or solicit business in Arizona, did not create a marketing strategy directed to Arizona or to residents of Arizona, does conduct any regular or ongoing advertising, solicitation, marketing, or other sales promotions directed toward residents of Arizona, does not regularly send its employees to Arizona, and its employees do not regularly attend any trade shows, conferences, or marketing events in Arizona.  Ward Decl., para. 9.

Continental does not engage in any persistent course of conduct in Arizona, does not maintain any offices in Arizona, does not maintain any employees in Arizona, does not own or lease any property in Arizona, does not maintain any bank accounts or other assets in Arizona, does not maintain a telephone or facsimile listing in Arizona, is not obligated to, and does not, pay any income taxes in Arizona, and no officers, directors, or employees of Continental reside in Arizona. Ward Decl., para. 10.

## C.  Subject Engine

Continental completed the assembly of the Subject Engine on April 18, 2018, and then sold and shipped it to Mooney International Corporation at 165 Al Mooney Road, Kerrville, Texas 78028 on April 19, 2018.  Ward Decl., para. 11.  After Continental shipped the Subject Engine to Mooney in 2018, Continental had no knowledge or information where the Subject Engine would end up.  Id.  Continental has no record of any contact with, or warranty claims regarding, the Subject Engine after it was shipped to Texas in 2018 up until the accident.  Id. at 12.

## D.  Subject Aircraft

According to the Complaint, the Subject Aircraft was manufactured in 2019 by Defendant Mooney allegedly for sale to a buyer living outside the United States.  Complaint, para. 56.

According to FAA records, on February 22, 2019, Mooney sold the aircraft to Defendant C&M Aviation, LLC ("C&M") located in Idaho.    Declaration of Will S. Skinner in Support of Continental's Motion to Dismiss ("Skinner Decl."), para. 5, Exhibit B.    On April 26, 2019, the FAA records show that C&M had the Subject Engine in the Subject Aircraft modified to increase the engine horsepower from 280 to 310.  Skinner Decl., para. 6, Exhibit C.  The modification was performed by Don Maxwell Aviation Services, Inc. in Longview, Texas.  Id.  On May 6, 2019, C&M sold the Subject Aircraft to AirAway, LLC.  Skinner Decl., para. 7, Exhibit D.  AirAway, LLC registered the Subject Aircraft to an address in Incline Village, Nevada. Id.  According to lien documents filed with the FAA (as part of financing the purchase of the Subject Aircraft), the "Home Airport" of the Subject Aircraft was Carson City Airport (CXP) located in Carson City, Nevada. Skinner Decl., para. 8, Exhibit E.  Mr. Brandemuehl and Plaintiff Jenny Brandemuehl signed for the purchase of the Subject Aircraft as managers for AirAway, LLC.  Id.  According to the Complaint, Mr. Brandemuehl took delivery of the Subject Aircraft in Kerrville, Texas.  Complaint, para. 19.    According to the NTSB, the Subject Aircraft departed Scottsdale, Arizona at approximately 2:37 pm and was destined for Carson Airport located in Carson City, Nevada. Skinner Decl., para. 9, Exhibit F.  Accordingly, the Subject Aircraft was heading to its home base when the accident occurred. Id.; Complaint, para. 19.

**E. Plaintiffs**

Mr. Brandemuehl and Plaintiffs are all citizens and residents of the State of California. Complaint, paras. 2-5.   At the time of the accident, the Subject Aircraft was owned by AirAway, LLC in Incline Village, Nevada.  Skinner Decl., para. 8.  At the time of the accident, Mark Brandemuehl and Plaintiff Jenny Brandemuehl were the managers of Nevada-based AirAway, LLC.  Skinner Decl., para. 8, Exhibit E (Page 5, Aircraft Security Agreement).

Plaintiff Endurance American Insurance Company ("Endurance") is alleged to have provided insurance for the Subject Aircraft.  According to the Complaint, Endurance "indemnified the total loss of the Subject Aircraft" and is subrogated to the right of its insured.[1]  Complaint,

---

[1] As an alleged insurer of the Subject Aircraft and subrogor, Endurance steps into the shoes of the insured for the purposes of its subrogation claims.  Weitz Co. LLC v. Heth, 235 Ariz. 405 (2014).

paras. 21-23.

## II.     LAW AND ARGUMENT

The ability of an Arizona court to exercise its coercive powers over a foreign defendant are limited by Arizona's long arm statute and the due process clause of the federal constitution. Gatecliff v. Great Republic Life Ins. Co., 154 Ariz. 502, 507, 744 P.2d 29, 34 (Ariz. App. 1987). Arizona's long arm statute is intended to exert personal jurisdiction to the maximum extent permissible under the federal constitution.  Ariz. R. Civ. P. 4.2(a); Planning Group of Scottsdale, v. Lake Mathews Mineral Props., Ltd., 226 Ariz. 262, 266, 246 P.3d 343, 346 (2011).  Thus, the analysis of whether the exercise of personal jurisdiction is permissible under Arizona's long arm statute and the federal constitution are the same.  Id.

It is well-established that the Due Process Clause of the Fourteenth Amendment limits the personal jurisdiction of the courts.  Bristol-Myers Squibb Co., v. Superior Court of California, San Francisco County, 137 S.Ct. 1773, 1779 (2017); Walden v. Fiore, 134 S.Ct. 1115, 1122 (2014).  Personal jurisdiction may be exercised if a court has either general personal jurisdiction or specific personal jurisdiction over the defendant.  Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984).  This Court lacks both general personal jurisdiction and specific personal jurisdiction over Continental in this case.

### A. The Court Should Grant Continental's Motion To Dismiss Because The Court Lacks General Personal Jurisdiction Over Continental

The U.S. Supreme Court has provided relatively recent guidance as to the extent that a State may exercise general personal jurisdiction within the bounds of the due process clause.  It is no longer the law that continuous and systematic contacts with the forum are sufficient to subject a defendant to general jurisdiction.  Daimler AG, 134 S.Ct. at 760; BNSF Ry. v. Tyrrell, 137 S.Ct.

---

As such, Endurance asserts the same claims against Continental as the Brandemuehl Plaintiffs and the personal jurisdiction analysis applies equally to Endurance's claims.  Endurance and the alleged insurance policy for the Subject Aircraft (based in Nevada) had nothing to do with Arizona.

1   1549.  Rather, absent exceptional circumstances, courts must now look to the defendant's place of

2   incorporation and principal place of business to determine general jurisdiction.  Id.

3        A court that has general jurisdiction "may hear any claim against that defendant, even if all

4   the incidents underlying the claim occurred in a different state."  Bristol-Meyers, 137 S.Ct. at 1780.

5   Daimler clarified the principle that general jurisdiction is properly asserted over a corporation **only**

6   **at its place of incorporation or principal place of business**, or in extremely limited circumstances

7   in which a foreign corporation's "affiliations with the State are so 'continuous and systematic' as

8   to render them essentially at home in the forum State."  Id. at 754.  See, e.g., Perkins v. Benguet

9   Consolidated Mining Co., 342 U.S. 437 (1952) (Philippine corporation that relocated to Ohio

10  during World War II could be sued in Ohio because Ohio was the corporation's principal, if

11  temporary, place of business).  Even a foreign corporation that "engages in a substantial,

12  continuous, and systematic" course of business with the forum State is not subject to general

13  jurisdiction in the forum State.  Daimler, 134 S.Ct. at 760.

14       In the instant case, Continental is not organized under the laws of the State of Arizona does

15  not have its principal place of business in the State of Arizona.  Ward Decl., para. 4.  Continental

16  is organized under the laws of the State of Delaware and its principal place of business is in

17  Alabama.  Id.  Accordingly, there is no basis to assert general personal jurisdiction over Continental

18  in Arizona.

19      **B. The Court Should Grant Continental's Motion To Dismiss Because The Court**

20          **Lacks Specific Personal Jurisdiction Over Continental**

21       Specific jurisdiction exists when there is an affiliation between the forum and the underlying

22  controversy, i.e., some activity or occurrence "that takes place in the forum State and is therefore

23  subject to the State's regulation."  Bristol-Myers Squibb Co., 137 S.Ct. at 1780.  See also Walden,

24  134 S.Ct. at 1115.  Specific jurisdiction is confined to the adjudication of issues deriving from, or

25  connected with, the very controversy that establishes jurisdiction.  Bristol-Myers Squibb, 137 S.Ct.

26  at 1780.  As the U.S. Supreme Court has explained, when there is no such connection, specific

27  jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.

28  Bristol-Myers Squibb, 137 S.Ct. at 1781.  What is needed is a connection between the forum and

the specific claims at issue.  Bristol-Myers Squibb, 137 S.Ct. at 1780.  The mere fact that this conduct affects a plaintiff residing in the forum state does not suffice to authorize jurisdiction. Walden, 134 S.Ct. at 1125.  The plaintiff cannot be the only link between the defendant and the forum.  Walden, 134 S.Ct. at 1122.  Moreover, the mere sales of products into the forum does not suffice to create specific jurisdiction.  Bristol-Myers Squibb, 137 S.Ct. at 1780-81 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales.").  Placing goods in the stream of commerce is not an act of the defendant purposefully directed to the forum State which would warrant the assertion of specific jurisdiction.  Walden, 134 S.Ct. at 1122.

In Walden, the U.S. Supreme Court analyzed the "minimum contacts" necessary for the assertion of specific jurisdiction over a foreign defendant stating as follows:

> The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum and the litigation.'"  Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977).  ***For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State.***

Walden, 134 S.Ct. at 1121 (emphasis added).

The Walden court went on to explain that the relationship of the foreign defendant to the forum State has "[t]wo related aspects":

> First, the relationship must arise out of contacts that the ***"defendant himself" creates with the forum State.***"  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).  Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant – not the convenience of plaintiffs or third parties.  See World-Wide Volkswagen Corp., supra, at 291-292.  We have consistently rejected attempts to satisfy the defendant-focused "minimum contacts" inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.  See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 417 (1984).

Walden, 134 S.Ct. at 1122 (emphasis added).

The second aspect of the defendant's relationship with the forum State identified in *Walden* is that:

> ***our "minimum contacts" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.***  See, *e.g.*, International Shoe, *supra*, at 319 (Due process 'does not contemplate that

a state may make a binding a judgment *in personam* against an individual . . . with which the state has no contacts, ties, or relations"); Hanson, *supra* at 251 ("However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with the State that are a prerequisite to its exercise of power over him").

Id. (citing International Shoe Co. v. Washington, 326 U.S. 310, 319 (1945) (emphasis added)).

Arizona courts apply a three-prong test for specific jurisdiction: (1) the defendant purposefully avails himself of the privilege of conducting business in the forum; (2) the claim arises out of or relates to the defendant's contacts or activities with the forum; and (3) the exercise of jurisdiction in reasonable. Williams v. Lakeview Co., 299 Ariz. 1 (2000). Specific personal jurisdiction does not arise from the plaintiff's or a third party's unilateral activity. Batton v. Tennessee Farmers Mut. Ins. Co., 153 Ariz. 268 (1987). Plaintiff has the burden to establish the first two prongs when a defendant challenges personal jurisdiction and a plaintiff cannot rest on bare allegations in the complaint. In re Consol. Zicam Prod. Liab. Cases, 212 Ariz. 85 (App. 2006).

1. *First Prong: The Court Should Grant Continental's Motion Because It Did Not Purposefully Avail Itself Or Direct Its Activities To Arizona*

In order to establish the first prong of the specific personal jurisdiction test, Plaintiffs are required to prove that Continental committed an intentional act, expressly aimed at Arizona, causing harm **that Continental knows is likely to be suffered in the forum state.** Learjet, Inc. v. Onoek, Inc. (In Re W. States Wholesale Natural Gas Antitrust Litig.), 715 F.3d 716, 743 (9th Cir. 2013). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Scott v. Kemp, 248 Ariz. 380, 386 (App. 2020) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

Continental did not direct any marketing or advertising specifically to Arizona, nor did Continental have any personnel located in Arizona during the relevant period. Continental has not sold any piston engines, engine components (or any other product) to any customer located in Arizona from 2018 to the present. Ward Decl., para. 13. Continental has had no revenue from any sales of any piston engines, engine components (or any other product) to any customer located in

8

Arizona from 2018 to the present.  Id. at 14.  Continental had a total of four transactions with Arizona customers to provide services.  Id. at 15.  None of services provided were performed in Arizona or had anything to do with the Subject Engine.  Id.

The purposeful direction "requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity' of another party or a third person."  Planning Group of Scottsdale v. Lake Mathews Mineral Props., Ltd., 226 Ariz. 262, 267 (2011); Burger King v. Rudzewicz, 471 U.S. 462, 472 (1985). Continental sold the Subject Engine to a Texas customer, Mooney Aircraft, and Continental had no knowledge of who would purchase the Subject Aircraft or where it would ultimately end up or operate.  Plaintiffs admit in their Complaint that the Subject Aircraft was originally intended to be exported to a foreign country, thus, Continental certainly could not have had any knowledge that the Subject Aircraft would be sold to the Brandemuehls' company or that the Brandemuehls would operate it in Arizona.  Complaint, para. 56.  Continental took no other action related to the Subject Engine beside selling it to Mooney in Texas, and certainly took absolutely no action directed to Arizona related to the Subject Engine.  The contact with Arizona here is the exact type of "random" and "fortuitous" contact that the U.S. Supreme Court has held is not sufficient to subject a defendant such as Continental to specific jurisdiction.  Burger King, 471 U.S at 472.  Plaintiffs cannot establish the first prong of the test and thus, the Court should grant Continental's Motion.

*2.  Second Prong: The Court Should Grant Continental's Motion Because Plaintiffs' Claims Do Not Arise Out Of Continental's Activities In Arizona*

"[C]asual or accidental contacts by a defendant with the forum state, particularly those not directly related to the asserted cause of action, cannot sustain the exercise of specific jurisdiction.  Nor can the requisite contacts be established through the unilateral activities of the plaintiff; they must instead arise from the defendant's purposeful conduct."  Planning Group of Scottsdale, 226 Ariz. at 266 (internal citations and quotation marks omitted). "[T]he relationship among the defendant, the forum and the litigation" is the critical factor to determine whether the "arise out of or relate to" prong is satisfied, and assertion of specific personal jurisdiction is proper.  Ford, 141 S. Ct. at 1021.

9

Plaintiffs' decedent's operation of the Subject Aircraft on a flight through Arizona is the exact type of unilateral activity that the Arizona Supreme Court has determined cannot establish the requisite contacts to establish personal jurisdiction.  <u>Planning Group of Scottsdale</u>, 226 Ariz. at 266.  In addition, the fact that the Subject Engine just happened to be on the Subject Aircraft on a flight in Arizona when it crashed – at no direction of Continental – is the type of casual or accidental conduct that is insufficient to establish personal jurisdiction.  <u>Id</u>.

In <u>Ford</u>, the U.S. Supreme Court emphasized, *inter alia*, that because Ford (1) had multiple dealerships in the forum jurisdictions, (2) conducted an extensive and ubiquitous advertising campaign, and (3) ". . . works hard to foster ongoing connections to its cars' owners" Ford's contacts were sufficient to meet the "arises out of or related to" prong.  <u>Ford</u>, 141 S. Ct. at 1028.  The fact that Ford encouraged forum residents to become "lifelong Ford drivers" was relevant to the Court's determination that there were sufficient contacts to assert specific personal jurisdiction.  <u>Id</u>.  Clearly Continental is not Ford and Continental has a scintilla of the number, quality and extent of contacts with Arizona when compared with Ford in the U.S. Supreme Court's most recent decision.

*(a) Continental Did Not Have "Fair Warning" Or "Clear Notice" That It Would Be Subject To Specific Personal Jurisdiction In Arizona*

A manufacturer has "fair warning" that it may be subject to jurisdiction in a forum only where the manufacturer's own forum-directed acts could predictably result in forum-based harm.  For example, in <u>Ford</u>, Ford's admitted "truckload" of contacts with the relevant forum states were sufficient to provide Ford with "clear notice" that it would be subject to personal jurisdiction there.  The <u>Ford</u> Court reasoned that when a manufacturer's reach into the forum state is so prolific that it is reasonable to assume that its product-related activities influence and direct consumer behavior in ways that benefit the manufacturer in the forum state, then the manufacturer has "clear notice" that it "will be subject to jurisdiction in the state's courts" when the same types of products malfunction there.  <u>Id</u>. at 1031.

An analysis of the evidence before this Court supports only one conclusion: Continental is not "like Ford," and far from having "clear notice," there is no indication that Continental had

notice that it could be subject to suit in Arizona for Plaintiffs' or Endurance's alleged harm. Without directed advertising, dealerships, sales lots or any property in Arizona, Continental cannot be said to pervasively "serve" the Arizona market by *any* significant means let alone "by every means imaginable." Id. at 1029.  And without Continental so reaching into Arizona, Arizona residents seeking to purchase an aircraft with a Continental engine, must reach out to an aircraft dealer that sells an aircraft with a Continental engine.  There is no Arizona-based neighborhood superstore, no door-to-door salesperson and no ability for an Arizona purchaser to walk into a Continental-owned and operated building in Arizona and buy an engine.  Nor could Plaintiffs argue that the name "Continental Aerospace Technologies", "Continental Motors, Inc.", or its logos, slogans or related branding materials are so pervasively assimilated in the American daily lifestyle as to become part of popular culture in Arizona.  In fact, quite the opposite is true: only those with specialized knowledge of the general aviation industry for reciprocating engines even know of Continental's existence.

It cannot be disputed that all acts or omissions from which Plaintiffs' claims arise occurred in Alabama and to a lesser extent perhaps Texas, but clearly not Arizona.  More importantly, Continental engage in absolutely no activities related to the Subject Engine in Arizona.  There is simply no basis to assert that Plaintiffs' claims arise from Continental's Arizona activities when Continental engaged in no Arizona activities related to the Subject Engine or any element of this matter.

     *(b) The Subject Aircraft Was Based In Nevada And Plaintiffs Are California Residents*

The U.S. Supreme Court has made it clear that the personal jurisdictional analysis is based on the contacts that the "***defendant himself*** creates with the forum State." Burger King Corp., 471 U.S. at 475.  However, the fact that the Subject Aircraft's "home base" was in Carson City, Nevada and all Plaintiffs are California residents (as was Mr. Brandemuehl at the time of the accident) makes "the relationship among the defendant, the forum and the litigation" even more tenuous here. Walden, 134 S.Ct. at 1121.  In Bristol-Myers Squibb Co., the U.S. Supreme Court rejected a finding of personal jurisdiction in part because the plaintiffs asserting personal jurisdiction in that matter

were not residents of the forum state and the non-resident plaintiffs did not purchase the product in the forum state.  137 S.Ct. at 1781.  Here, there is no connection between Continental and Arizona – the only connection with Arizona is that the Subject Aircraft was taking off heading to its home base in Nevada when the accident occurred.  Continental did not initiate and had no part in the Subject Aircraft's accident flight in Arizona.  Thus, Plaintiffs' claims cannot possibly arise out of or relate to Continental's activities in Arizona because Continental has no activities in Arizona related to this matter.  Plaintiff cannot establish the second prong of the test and the Court should grant Continental's Motion.

   3.   *Third Prong: The Court Should Grant Continental's Motion Because The Exercise Of Personal Jurisdiction Over Continental Is Not Reasonable In This Matter*

   The facts in the record overwhelmingly show that Continental cannot be subject to personal jurisdiction in Arizona because it has no contacts whatsoever related to the claims in this action. The evidence before the Court establishes that the totality of circumstances here is such that Continental did not initiate and has no contacts with Arizona related to this matter.  In addition, Continental's officers, books, records and all relevant facts related to the design and manufacture of the Subject Engine are physically in Alabama.  As such it is unreasonable and creates an unreasonable burden on Continental to litigate this matter in Arizona.

**III.   CONCLUSION**

   Continental is not subject to general personal jurisdiction in Arizona.  Plaintiffs have the burden to establish that the Court has specific personal jurisdiction over Continental by proving both that Continental purposefully availed itself or directed its activities to Arizona and that Plaintiffs' claims arise from Continental's activities in Arizona.  As the foregoing demonstrates, Plaintiffs cannot establish either required element.  Thus, the Court should grant Continental's motion to dismiss.

   Dated this <u>20th</u> day of October, 2021.

   KLEIN THOMAS & LEE

   By: */s/ C. Megan Fischer*
       C. Megan Fischer
       Briana L. Campbell

1

2

Attorneys for Defendant
Continental Aerospace Technologies fka Continental Motors, Inc.

3

**COPY** of the foregoing emailed this 20th day of October, 2021, to:

4

John B. Brewer
Dane L. Wood

5

Brewerwood, PLLC
2398 East Camelback Road, Suite 540

6

Phoenix, AZ  85016
john@brewerwood.com

7

dane@brewerwood.com
Attorneys for Plaintiffs

8

Ryan J. McCarthy

9

Kenneth L. Moskow
Jones, Skelton & Hochuli, PLC

10

40 North Central Avenue, Suite 2700
Phoenix, AZ  85004

11

rmccarthy@jshfirm.com
kmoskow@jshfirm.com

12

Attorneys for Plaintiff Endurance American Insurance Company

13

/s/ Nicole Dehart

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| 1 | C. Megan Fischer (SBN 019828) |
| | Briana C. Campbell (SBN 034225) |
| 2 | **KLEIN THOMAS & LEE** |
| | 340 East Palm Lane, Suite A310 |
| 3 | Phoenix, Arizona  85004 |
| | Tel:  (602) 935-8300 |
| 4 | megan.fischer@kleinthomaslaw.com |
| | briana.campbell@kleinthomaslaw.com |
| 5 | |
| | Will S. Skinner (*Pro Hac Vice to be filed*) |
| 6 | Erik D. Slechta (*Pro Hac Vice to be filed*) |
| | **SKINNER LAW GROUP** |
| 7 | 21600 Oxnard Street, Suite 1760 |
| | Woodland Hills, CA 91367 |
| 8 | Tel: (818) 710-7700 |
| | skinner@skinnerlawgroup.com |
| 9 | slechta@skinnerlawgroup.com |
| 10 | Attorneys for Defendant |
| | Continental Aerospace Technologies fka Continental Motors, Inc. |
| 11 | |

<div align="center">

**SUPERIOR COURT OF ARIZONA**

**COUNTY OF MARICOPA**

</div>

| | | |
|---|---|---|
| 14 | JENNY ANGELA BRANDEMUEHL, a widow, on behalf of all surviving statutory beneficiaries of Mark Wesley Brandemuehl, deceased, including: JENNY ANGELA BRANDEMUEHL, surviving wife; WESLEY AUGUSTUS BRANDEMUEHL, surviving adult son; ADRIAN DAVID BRANDEMUEHL, surviving adult son; JENNY ANGELA BRANDEMUEHL, Special Administrator for and on behalf of the ESTATE OF MARK WESLEY BRANDEMUEHL; and ENDURANCE AMERICA INSURANCE COMPANY, a Delaware corporation, | Case No. CV2021-009395 |
| 15 | | **MICHAEL WARD'S DECLARATION IN SUPPORT OF SPECIALLY APPEARING DEFENDANT CONTINENTAL AEROSPACE TECHNOLOGIES, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO ARIZONA RULE OF CIVIL PROCEDURE 12(b)(2)** |
| 21 | | |
| | Plaintiffs, | (TIER 3) |
| 22 | | |
| | v. | (Assigned to Hon. Katherine Cooper) |
| 23 | | |
| 24 | MOONEY INTERNATIONAL CORPORATION, a Delaware corporation; CONTINENTAL AEROSPACE TECHNOLOGIES, INC., a Delaware corporation; CONTINENTAL MOTORS, INC., a Delaware corporation; C & M AVIATION, LLC., an Idaho limited liability company d/b/a Delta Aviation, Inc.; MORNINGSTAR AVIATION, INC., a Colorado corporation d/b/a Delta Aviation, Inc.; DOES I through X; ABC | |

PARTNERSHIPS I through X, and;
BLACK CORPORATIONS I through X,

        Defendants.

I , Michael Ward, state as follows:

1.  I am over eighteen years old, am competent to testify, and have personal knowledge of the facts set forth below.

2.  I am the Quality Assurance Leader at Continental Aerospace Technologies, Inc. (formerly known as Continental Motors, Inc. and referred to herein as "Continental") and have held this position since 2020.  Prior to that time, I was Director of Certification and Airworthiness and held that position since 2012.

3.  I do not consent to the exercise of jurisdiction over Continental and make this declaration only as a special appearance in support of Continental's Motion to Dismiss without waiving any such defenses.

4.  Continental is a corporation organized and existing under the laws of the State of Delaware and Continental's principal place of business and headquarters are in Mobile, Alabama.  Continental has never been incorporated or had its principal place of business in Arizona.   In January 2020, Continental changed its name from Continental Motors, Inc. to Continental Aerospace Technologies, Inc.

5.  Continental is a manufacturer of piston engines and engine components for general aviation aircraft, and beginning in September 2018 Continental performed maintenance, repair, and overhaul services on aviation piston engines.  Continental currently manufactures its products at its manufacturing facilities in Mobile and Fairhope, Alabama.  All aviation engines and components manufactured and sold by Continental are designed, manufactured, assembled and tested by Continental in Mobile and Fairhope, Alabama.  All maintenance, repair, and overhaul services on aviation piston engines are and were performed at Continental's facilities in Fairhope, Alabama.

6.  With regard to the services provided by Continental's Fairhope facility, the general process works as follows:

a. a customer must reach out to Continental (typically by telephone) to request quote for the specific service (*e.g.*, engine overhauls, prop strike inspections, repairs, etc.);

b. Continental provides a quote in response to the customer's request with specific terms and conditions that must be accepted, including requiring the customer to ship the engine to Fairhope, Alabama (*See* Continental's applicable Terms and Conditions, a true and correct copy is attached hereto as **Exhibit A**); and

c. if the customer accepts the quote, Continental creates a work order, the customer ships the engine to Fairhope, Continental completes all work in Alabama, and then when completed and payment is received, Continental ships the engine back to the customer.

7.  Continental is not licensed, authorized or registered to do business in Arizona and has no registered agent in Arizona.

8.  Continental has no distributors located in Arizona and has not had any Arizona distributors from at least 2018 to the present.

9.  Continental does not regularly do or solicit business in Arizona:

a. Continental did not create a marketing strategy directed to Arizona or to residents of Arizona;

b. Continental does not conduct any regular or ongoing advertising, solicitation, marketing, or other sales promotions directed toward residents of Arizona;

c. Continental does not regularly send its employees to Arizona;

d. From 2018 to the present, one Continental employee visited aviation facilities located in Arizona for purposes of general product support a few times during this time period; and

e. Continental employees do not regularly attend any trade shows, conferences, or marketing events in Arizona.

10. Continental does not engage in any persistent course of conduct in Arizona:

a. Continental does not maintain any offices in Arizona;

b. Continental does not maintain any employees in Arizona;

c.  No officers, directors, or employees of Continental reside in Arizona;

d.  Continental does not own or lease any property in Arizona;

e.  Continental does not maintain any bank accounts or other assets in Arizona;

f.  Continental does not maintain a telephone or facsimile listing in Arizona; and

g.  Continental is not obligated to, and does not, pay any income taxes in Arizona.

11. The engine installed in the accident aircraft at the time of the accident was a Continental TSIO-550 engine (serial number 1035763) ("Subject Engine").  The Subject Engine's assembly was completed on April 18, 2018 and it was shipped to Mooney International Corporation at 165 Al Mooney Road, Kerrville, Texas 78028 on April 19, 2018.  Attached as **Exhibit B** is a true and correct copy of Continental's Engine Serial Data sheet that provides information related to the Subject Engine.  After Continental shipped the Subject Engine to Mooney in 2018, Continental had no knowledge or information where the Subject Engine would be end up.

12. Continental has no record of any contacts with or warranty claims regarding the Subject Engine after it was shipped to Texas in 2018 up until the accident.

13. Continental has not sold any piston engines, engine components (or any other product) to any customer located in Arizona from 2018 to the present.

14. Continental has had no revenue from any sales of any piston engines, engine components (or any other product) to any customer  located in Arizona from 2018 to the present.

15. From 2018 to the present, Continental had a total of four transactions with Arizona customers for services (*e.g.*, engine overhauls, prop strike inspections, repairs, etc. from its Fairhope service facility).  Total sales for these services provided to Arizona customers performed at its Fairhope service facility was approximately $135,000 or 0.40 percent of its total sales for services from that facility over this period.  The process described above in paragraph 6 would apply to these four transactions. None of these four transactions or services provided had anything to do with the Subject Engine.

//

4

1

2   I declare under penalty of perjury that the foregoing is true and correct.

3   Executed this 20th day of October, 2021 at Mobile, Alabama.

4

5

6   Michael Ward

**COPY** of the foregoing emailed this 20th day of October, 2021, to:

John B. Brewer
Dane L. Wood
Brewerwood, PLLC
2398 East Camelback Road, Suite 540
Phoenix, AZ  85016
john@brewerwood.com
dane@brewerwood.com
Attorneys for Plaintiffs

Ryan J. McCarthy
Kenneth L. Moskow
Jones, Skelton & Hochuli, PLC
40 North Central Avenue, Suite 2700
Phoenix, AZ  85004
rmccarthy@jshfirm.com
kmoskow@jshfirm.com
Attorneys for Plaintiff Endurance American Insurance Company

/s/Nicole Dehart

# Exhibits to Declaration of Michael Ward

# Exhibit A

**CONTINENTAL MOTORS SERVICES**

Terms and Conditions of Sale

1. **Applicable Terms and Conditions of Sale**
   **1.1.** These Terms and Conditions of Sale establish the rights, obligations, and remedies of Continental Motors Services ("CMS") and Buyer. They apply to all Purchase Orders received from Buyer for the purchase of CMS's goods or services. By submitting a Purchase Order to CMS, Buyer expressly agrees to these Terms and Conditions of Sale. CMS's acceptance of Buyer's Purchase Order, or the performance of any work requested by Buyer, is made expressly conditional on Buyer's agreement to these Terms and Conditions of Sale. No additional or different terms, or variation in the terms, shall be binding on CMS unless CMS, through an authorized representative, explicitly agrees to such terms in writing. The Continental Motors Services Standard Terms and Conditions of Sale may be modified at any time.

2. **Pricing, Payment and Delivery**

   **2.1.** All prices quoted are subject to change or withdrawal without prior notice to Buyer unless otherwise specified in the quotation. Prices quoted are nonbinding until CMS accepts Buyer's Purchase Order or begins work, and may be subject to CMS's approval of Buyer's credit.

   **2.2.** All prices are in U.S. dollars and exclude V.A.T, and any other applicable tax, duty customs charge, or fee associated with the import or export of the goods through local customs, or any other charge of any nature imposed by any governmental authority. Buyer shall reimburse CMS in the event CMS is required to pay any such tax, charge, or fee.

   **2.3.** Alabama sales tax will be added to any work delivered in the state of Alabama.

   **2.4.** Payment is required prior to delivery, except as noted by terms included with credit approval.

   **2.5.** Payment must be made within 30 days of final invoice.
      2.5.1. Delivery must be scheduled within 10 days of final payment.
      2.5.2. A $20/day storage fee will be assessed to each work order that remains on site 30 days after the final invoice is submitted.
      2.5.3. CMS will assess a $2,000 re-preservation fee for any engine that remains on site beyond the recommended re-preservation interval.
      2.5.4. Engine cores must be returned within 90 days, or the applicable cost of the engine core will be invoiced.

   **2.6.** CMS reserves the right to require full or partial payment in advance.
      **2.6.1.** CMS requires a deposit to begin each job; if a deposit is not made, the customer agrees to use their engine or component as collateral for the job.

   **2.7.** CMS accepts payment by check, cashier's check, wire, or credit card.
      **2.7.1.** Credit cards are subject to a 3% fee
      **2.7.2.** All checks must clear prior to release of finished work

**3.** Production Processes

**3.1.** Customer agrees to the initial budgetary cost estimate to begin disassembly and inspection processes as applicable; the initial quote will be followed up with a secondary request for approval if additional cost is to be incurred.

**3.2.** The buyer agrees to pay 40% of the initial budgetary cost estimate or surrender ownership of their engine should the buyer elect not to proceed with repairs following the secondary request for approval.

**3.3.** Quoted turn times do not include delays caused by outside services, part shortages outside the scope of work, or elapsed time during approval.

**3.4.** The buyer agrees to the use of replacement parts including Continental, Prime, and Titan as well as other OEM and PMA parts as Applicable.

**3.5.** The buyer agrees to the use of serviceable stock and rotable inventory as needed.

**3.6.** The buyer agrees to comply with all service instructions and letters, including all Service Bulletins and Airworthiness Directives as applicable to their engine, aircraft, or component.

**3.7.** CMS will provide all standard FAA required documentation; all customs, export, and foreign registered airworthiness documents will be the sole responsibility of the buyer.

**4.** **Cancellations**

**4.1.** If Buyer becomes insolvent, or if the financial condition of Buyer does not, in the judgment of CMS, justify continuance of the work to be performed by CMS, Buyer agrees that CMS shall be entitled at any time to cancel Buyer's Purchase Order.  In connection with CMS's cancellation of Buyer's Purchase Order, CMS shall be entitled to a reasonable cancellation fee, including but not limited to the cost of purchased materials and labor.  Buyer's Purchase Order may be canceled, either in whole or in part, only with CMS's written consent, and only on Buyer's agreement to pay CMS's incurred costs, including but not limited to the cost of purchased materials and labor.

**5.** **Delivery, Risk of Loss and Acceptance of Goods**

**5.1.** Delivery shall be F.O.B. CMS's plant, the site of the work to be performed.  Goods will be packed in standard packaging unless CMS has agreed in writing to Buyer-specific packaging or labeling.  Transportation will be arranged at Buyer's request and expense.  CMS shall not be liable for any losses, damages or penalties if estimated shipping or delivery dates are not met.  CMS reserves the right without penalty to make delivery prior to Buyer's requested delivery date.

**5.2.** Risk of loss shall pass to Buyer F.O.B. CMS's plant upon CMS's delivery to a common carrier.

**5.3.** Buyer shall inspect products immediately upon receipt, notify CMS in writing of any claims for shortages, defects or damages and hold the damaged or defective products for CMS's written instructions concerning disposition.  If Buyer fails to so notify CMS within 10 days after the goods have been received by Buyer, the goods shall conclusively be deemed to be conforming

and to have been accepted by Buyer.  Goods may be returned at the expense of CMS only after inspection by CMS and upon receipt by the Buyer of definite shipping instructions from CMS.  Goods returned prior to receiving shipping instructions from CMS or which do not conform to such instructions are at Buyer's sole risk and expense.  Buyer shall pay all transportation charges covering any goods returned to CMS that are not defective.  CMS shall have the right to cure the tender of damaged or defective goods by substituting a conforming tender within a reasonable time.

**6. Force Majeure**

**6.1.** CMS shall not be responsible for delays or failures in performance and shall have no liability to Buyer resulting from causes beyond its reasonable control.  Causes beyond CMS's reasonable control include but shall not be limited to acts of God, epidemics, earthquakes, unusually severe weather, floods or other natural disasters, war, riot, fire, accident, explosion, strikes or other labor trouble, government acts or omissions, delay or default by subcontractors or suppliers of materials or services, transportation difficulty or shortages in labor, fuel, materials, supplies or power at current prices (the "Force Majeure Event").

**6.2.** If a Force Majeure Event impairing CMS's performance should last more than 30 days, CMS may elect, at its option, to terminate buyer's Purchase Order.

**6.3.** If CMS is unable because of a Force Majeure Event to supply the total quantity of goods specified in Buyer's order, CMS may allocate its available supply among any or all of its buyers on such basis as CMS may deem commercially fair and practical, without liability for any failure of performance which may result therefrom.

**7. Changes**

**7.1.** Buyer may make a written request for changes in its Purchase Order, but acceptance of any requested change shall be at CMS's sole discretion, must be in writing and shall be upon such terms and conditions as CMS may require.   If any such change causes an increase or decrease in the cost of or in the time required for performance, an equitable adjustment shall be made.

**8. Warranty Disclaimer and Limitation of Liability**

**8.1.** CMS warrants the goods it sells with respect to defects and otherwise only under the terms of its published written warranty applicable to such goods.  The provisions of CMS's warranty are hereby incorporated by reference into these Terms and Conditions of Sale.

**8.2.** THE SOLE AND EXCLUSIVE REMEDY UNDER CMS'S WRITTEN WARRANTY IS LIMITED TO REPAIR OR REPLACEMENT OF GOODS. THERE ARE NO OTHER WARRANTIES, EXPRESS OR IMPLIED, APPLICABLE TO THE GOODS SOLD BY CMS TO BUYER.   SPECIFICALLY, BUT WITHOUT LIMITATION, THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.  BUYER AGREES THAT CMS WILL NOT BE RESPONSIBLE FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF ANY DEFECT OR FAILURE IN ANY GOODS IT SELLS,  OR ARISING OUT OF ANY BREACH OF CMS'S WRITTEN WARRANTY.  IN NO EVENT, REGARDLESS OF THE FORM OF THE CLAIM OR CAUSE OF ACTION SHALL CMS'S LIABILITY EXCEED THE PRICE AGREED TO FOR CMS'S GOODS AND SERVICES.

**8.3.** No person is authorized to give any other warranty or to assume any additional obligation or liability on behalf of CMS except in writing signed by a duly authorized representative of CMS.

**9.   Entire Agreement**

**9.1.** These Terms and Conditions of Sale constitute the entire, complete, and exclusive agreement between CMS and Buyer. There are no understandings, agreements, representations, or warranties, either oral or written, relative to the goods or services sold by CMS, including statements made in or conduct implied from past dealings, that are not fully expressed or incorporated herein. No statement, recommendation, or assistance made or offered by CMS through its representatives in connection with the use of any goods sold shall be or constitute a waiver by CMS of any of the provisions in these Terms and Conditions of Sale. The provisions of this document supersede and cancel any previous understanding or agreement between the parties with respect to the subject matter hereof, and, except for clerical errors, this document shall express the complete and final understanding of the parties.

**10.   Waiver and Severability**

**10.1.** No rights or obligations shall be waived, and no breach excused under these Terms and Conditions of Sale unless the waiver or breach excused is in writing and signed by a duly authorized representative of the parties. In the event that any provision of these Terms and Conditions of Sale shall be held unenforceable or legally invalid, the remaining provisions shall continue to be effective.

**11.   Assignment**

**11.1.** Buyer shall not assign any of its rights or obligations under these Terms and Conditions of Sale without prior written consent of CMS, which consent will not be unreasonably withheld.

**12.   Choice of Law and Forum**

**12.1.** These Terms and Conditions of Sale are governed by the laws of the State of Alabama, excepting its conflicts of laws rules. All disputes concerning these terms shall be brought in the courts of the State of Alabama.

# Exhibit B



LOGOUT (/LOGOUT/)     MANAGE ACCOUNT (/ACCOUNT/MANAGE.ASPX)

ENGINES ▾   PARTS ▾   MRO ▾   SERVICES ▾   SUPPORT ▾   NEWS & EVENTS ▾   COMPANY ▾          Q

# Engine Serial Data

Engine Serial Number

1035763

[ Click Here to Print Engine Components ]

| | | | |
|---|---|---|---|
| Serial Number: | 1035763 | Assembled: | 04/18/18 |
| Spec: | TSIO550G5B | Shipped: | 04/19/18 |
| Engine: | ENGINE - NEW | | |
| Customer Name: | MOONEY INTERNATIONAL CORP | | |
| Ship to Address: | 165 AL MOONEY ROAD NORTH | | |

| Component | Serial Number |
| --- | --- |
| CRANKSHAFT | N18BA085 |
| CRANKCASE | R18CA299 |
| L MAGNETO | D18CA154 |
| R MAGNETO | D18CA157 |
| FUEL PUMP | B18DA002 |
| MANIFOLD VALVE | C18DA002 |
| METERING UNIT | A18DA005 |
| ALTERNATOR | H-S012784 |
| STARTER | H-S011802 |
| L. TURBO | H-VBL00155 |
| R. TURBO | H-VBL00159 |
| CONTROLLER | H-TGN00125 |
| WASTEGATE | H-TDN00096 |
| OIL COOLER | B18-14781-110 |
| CAMSHAFT | 385947 |
| CONNROD | AE18CA405 |
| CONNROD | AE18CA412 |
| CONNROD | AE18CA424 |
| CONNROD | AE18CA427 |
| CONNROD | AE18CA440 |
| CONNROD | AE18CA417 |
| CYLINDER-1 | AC18BA127 |
| CYLINDER - 2 | AC18AC543 |
| CYLINDER - 3 | AC18BA225 |
| CYLINDER - 4 | AC18AC673 |
| CYLINDER - 5 | AC16HA686 |
| CYLINDER - 6 | AC18BA113 |
| NOZZLE - 1 | 1515 |
| NOZZLE - 2 | 2531 |
| NOZZLE - 3 | 3531 |

All of the information provided herein is subject to verification by the user. Continental Motors, Inc. makes no representation or warranty concerning the accuracy or completeness of the information and assumes no responsibility with respect thereto.

http://www.continentalmotors.aero/account/engine-serial-data.aspx          7/17/2019

1  C. Megan Fischer (SBN 019828)
   Briana C. Campbell (SBN 034225)
2  **KLEIN THOMAS & LEE**
   340 East Palm Lane, Suite A310
3  Phoenix, Arizona  85004
   Tel:  (602) 935-8300
4  megan.fischer@kleinthomaslaw.com
   briana.campbell@kleinthomaslaw.com
5
   Will S. Skinner (*Pro Hac Vice to be filed*)
6  Erik D. Slechta (*Pro Hac Vice to be filed*)
7  **SKINNER LAW GROUP**
   21600 Oxnard Street, Suite 1760
8  Woodland Hills, CA 91367
   Tel: (818) 710-7700
9  skinner@skinnerlawgroup.com
10 slechta@skinnerlawgroup.com

11 Attorneys for Defendant Continental Aerospace Technologies fka Continental Motors, Inc.

12                    **SUPERIOR COURT OF ARIZONA**

13                       **COUNTY OF MARICOPA**

14
15 JENNY ANGELA BRANDEMUEHL, a        Case No. CV2021-009395
   widow, on behalf of all surviving statutory
   beneficiaries of Mark Wesley Brandemuehl,  **WILL S. SKINNER'S DECLARATION IN**
16 deceased, including: JENNY ANGELA   **SUPPORT OF SPECIALLY APPEARING**
   BRANDEMUEHL, surviving wife;       **DEFENDANT CONTINENTAL**
17 WESLEY AUGUSTUS BRANDEMUEHL,       **AEROSPACE TECHNOLOGIES, INC.'S**
   surviving adult son; ADRIAN DAVID   **MOTION TO DISMISS FOR LACK OF**
18 BRANDEMUEHL, surviving adult son;   **PERSONAL JURISDICTION PURSUANT**
   JENNY ANGELA BRANDEMUEHL,          **TO ARIZONA RULE OF CIVIL**
19 Special Administrator for and on behalf of  **PROCEDURE 12(b)(2)**
   the ESTATE OF MARK WESLEY
20 BRANDEMUEHL; and ENDURANCE
   AMERICA INSURANCE COMPANY, a
21 Delaware corporation,

22          Plaintiffs,                (TIER 3)

23 v.                                  (Assigned to Hon. Katherine Cooper)

24 MOONEY INTERNATIONAL
   CORPORATION, a Delaware corporation;
25 CONTINENTAL AEROSPACE
   TECHNOLOGIES, INC., a Delaware
26 corporation; CONTINENTAL MOTORS,
   INC., a Delaware corporation; C & M
27 AVIATION, LLC., an Idaho limited liability
   company d/b/a Delta Aviation, Inc.;
28 MORNINGSTAR AVIATION, INC., a
   Colorado corporation d/b/a Delta Aviation,

1
2
3

Inc.; DOES I through X; ABC
PARTNERSHIPS I through X, and;
BLACK CORPORATIONS I through X,

    Defendants.

4
5

    I , Will S. Skinner, state as follows:

6
7

    1.  I am over eighteen years old, am competent to testify, and have personal knowledge of the facts set forth below.

8
9

    2.  I am the principal of Skinner Law Group and represent Continental Aerospace Technologies, Inc. ("Continental") in the above-captioned matter.

10
11
12

    3.  I do not consent to the exercise of jurisdiction over Continental and make this declaration only as a special appearance in support of Continental's Motion to Dismiss without waiving any such defenses.

13
14
15
16
17
18
19
20

    4.  On or about January 6, 2020, I had my office submit a request to the Federal Aviation Administration ("FAA") requesting all registration records for the Mooney M20V Ultra, serial number 33-0015, registration number N576CM ("Subject Aircraft").  On or about January 17, 2020, in response to our request, my office received a CD Rom containing a true copy of the records in the aircraft file as of January 9, 2020, pertaining to the Subject Aircraft on file in the Aircraft Registration Branch, Federal Aviation Administration.     Attached hereto as **Exhibit A**, is a true and correct copy of the FAA Blue Ribbon Seal and Certification from the FAA Legal Custodian that accompanied the CD-Rom on which **Exhibits B-E** referenced below were recorded.

21
22
23

    5.   Attached hereto as **Exhibit B**, is a true and correct copy of the Subject Aircraft's Bill of Sale that showing it was sold by Mooney International Corporation ("Mooney") to C&M Aviation, LLC ("C&M") on or about February 22, 2019.

24
25
26

    6.  Attached hereto as **Exhibit C**, is a true and correct copy of the FAA Major Alteration documentation for the Subject Aircraft performed by Don Maxwell Aviation Services, Inc. according to FAA records.

27
28

    7.  Attached hereto as **Exhibit D**, is a true and correct copy of the Subject Aircraft's Bill of Sale from C&M to AirAway, LLC according to FAA records.

8.  Attached hereto as **Exhibit E**, is a true and correct copy of lien documents for the Subject Aircraft designating Incline Village, Nevada as the Subject Aircraft "home base" according to FAA records.

9.  Attached hereto as **Exhibit F**, is a true and correct copy of the National Transportation Safety Board's preliminary accident report indicating that Subject Aircraft took off on the accident flight in Arizona for a planned destination of the aircraft's home base in Nevada.

The foregoing statement is made under penalty of perjury.

Signed at Woodland Hills, California, this 20th day of October 2021.

By: _____
        Will S. Skinner

1

2

**COPY** of the foregoing emailed this 20th day of October, 2021, to:

3
John B. Brewer
Dane L. Wood

4
Brewerwood, PLLC
2398 East Camelback Road, Suite 540

5
Phoenix, AZ  85016
john@brewerwood.com

6
dane@brewerwood.com
Attorneys for Plaintiffs

7
Ryan J. McCarthy

8
Kenneth L. Moskow
Jones, Skelton & Hochuli, PLC

9
40 North Central Avenue, Suite 2700
Phoenix, AZ  85004

10
rmccarthy@jshfirm.com
kmoskow@jshfirm.com

11
Attorneys for Plaintiff Endurance American Insurance Company

12
    /s/ Nicole Dehart

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibits to Declaration of Will S. Skinner

# Exhibit A

DEPARTMENT OF TRANSPORTATION

# CERTIFICATE OF TRUE COPY

**I HEREBY CERTIFY** that the attached CD Rom contains a true copy of the records in the aircraft file as of January 9, 2020, pertaining to Mooney International Corp M20V, serial number 33-0015, registration N576CM, on file in the Aircraft Registration Branch, Federal Aviation Administration, and that I am the legal custodian thereof.

Signed and dated at Oklahoma City, Oklahoma

this 9th day of January 2020

by Autumn Langford
Acting Supervisory Legal Instruments Examiner

*************************************************************************

**I HEREBY CERTIFY** that Autumn Langford who signed the foregoing certificate is now, and was at the time of signing Acting Supervisory Legal Instruments Examiner, Aircraft Registration Branch, and the legal custodian of the aforesaid records, and that full faith and credit should be given this certificate as such.

IN WITNESS WHEREOF, I have hereunto

subscribed my name and caused the seal of the

Department of Transportation to be affixed

this 9th day of January 2020

at Oklahoma City, Oklahoma

Ken W. Thompson
Manager,
Aircraft Registration Branch

REGAR-COPY-2 (04/19)

# Exhibit B

SD018164 Conveyance Recorded Nov/19/2019 10:34 AM FAA

U.S. DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION

OMB Control No. 2120-0043
Expires 12/31/2018

# NOTICE OF RECORDATION – AIRCRAFT SECURITY CONVEYANCE

### PART I - CONVEYANCE RECORDATION NOTICE

This section acknowledges the recording of a security conveyance covering the collateral shown.

NAME (last name first) OF DEBTOR

AIRAWAY LLC

NAME and ADDRESS OF SECURED PARTY/ASSIGNEE

SALEM FIVE CENTS SAVINGS BANK
210 ESSEX ST
SALEM, MA  01970

NAME OF SECURED PARTY'S ASSIGNOR (if assigned)

THE FOLLOWING COLLATERAL IS COVERED BY THE CONVEYANCE:
N576CM 33-0015        MOONEY INTERNATIONAL CO M20V
N
N
N

| THE SECURITY CONVEYANCE  DATED | 5/6/2019 | COVERING THE ABOVE COLLATERAL WAS RECORDED BY | |
|---|---|---|---|
| THE CIVIL AVIATION REGISTRY ON | Jun 06, 2019 | AS CONVEYANCE NUMBER | MD004206 |

*Matthew Duea* (signature)

MATTHEW DUEA, LEGAL INSTRUMENTS EXAMINER

### PART II – RELEASE

Use of this section of the form by the security holder is optional.  This section is only a suggested form of release that meets the recording requirements of the Federal Aviation Act of 1958, as amended, and the regulations issued thereunder.  In addition to those requirements, the form used by the security holder should be drafted in accordance with the pertinent provisions of local statutes and other applicable federal statutes.  This form may be reproduced.  There is no fee for recording a release.
Send to: Aircraft Registration Branch, PO Box 25504, Oklahoma City, Oklahoma 73125.

The undersigned hereby certifies that they are the true and lawful holder of the note or other evidence of indebtedness secured by the conveyance referred to herein on the above described collateral and that the same collateral is hereby released from the terms of the  conveyance.  Provided that no express warranty is given nor implied by reason of execution or delivery of the release, any title retained in the collateral by the conveyance is hereby sold, granted, transferred and assigned to the party that executed the conveyance or to the assignee of said party if the conveyance was assigned.

| | |
|---|---|
| DATE OF RELEASE: 9-24-19 | ACKNOWLEDGMENT (If Required By Applicable Local Law): |
| SECURITY HOLDER: Salem Five Cents Savings Bank | |
| SIGNATURE (In Ink) | |
| TITLE: Senior Vice President | |

(A person signing for a corporation must be a corporate officer or hold a managerial position and must show title.  A person signing for another should see 14 CFR Parts 47 and 49 of the Federal Aviation Regulations.)

AC Form 8050-41 (07/18)

FILED WITH FAA
AIRCRAFT
REGISTRATION BR

2019 OCT 24 AM 7:51

OKLAHOMA CITY
OKLAHOMA

DOCUMENT LEVEL ANNOTATIONS

SEE RECORDED CONVEYANCE NUMBER MD004206 DOC ID #1711 PG #1

CONT000004

CONT000005

DocuSign Envelope ID: B5BF99F4-1194-4228-8A90-93F4D62919A4

THIS IS TO CERTIFY THAT THIS COPY
HAS BEEN COMPARED WITH THE ORIGINAL
AND IS A TRUE COPY THEREOF
POWELL AIRCRAFT TITLE SERVICE

## AIRCRAFT SECURITY AGREEMENT

MD0042206 Conveyance Recorded Jun/06/2019 08:37 AM FAA

**THIS AIRCRAFT SECURITY AGREEMENT** ("Agreement") dated <u>May 6, 2019</u> is made between the "Borrower" and "Lender", and relates to a security interest granted in certain "Collateral" (as defined below) that includes the "Aircraft", all as indicated below:

| NAME & ADDRESS OF BORROWER:<br>AirAway, LLC<br>123 Juanita Drive #1-17<br>Incline Village, NV 89451-9533 | |
|---|---|
| NAME & ADDRESS OF SECURED PARTY/LENDER:<br>Salem Five Cents Savings Bank<br>210 Essex Street<br>Salem, MA 01970 | ABOVE SPACE<br><br>FOR FAA USE ONLY |

| Year | Aircraft Manufacturer | Model Number | Serial Number | FAA Registration Number |
|---|---|---|---|---|
| 2019 | Mooney International Corp | M20V | 33-0015 | N576CM |
| Engine Make | Model Number | Serial Number(s) | 550+ hp? | Home Airport: |
| | | | ☐ Yes ☒ No | (CXP) Carson City, NV |
| Propeller Make | Model Number | Serial Number(s) | | Commercial Use: |
| | | | | ☐ Permitted ☒ NOT Permitted |

1. **GRANT OF SECURITY INTEREST.** Borrower is receiving a loan from Lender, as evidenced by a certain Promissory Note ("Note") being executed and delivered contemporaneously with this Agreement. To secure repayment of the Note and performance of the other obligations of Borrower under this Agreement, and also to secure all other monetary and non-monetary obligations of Borrower to Lender under any other agreement, whether absolute or contingent, direct or indirect, now existing or hereafter arising (collectively, the "Indebtedness"), Borrower grants to Lender a continuing first-priority perfected security interest in the "Collateral" as defined in the following sentence. "Collateral" means (1) all of Borrower's right, title and interest in and to the Aircraft and Engines noted above, (2) all logs, records and manuals relating to the Aircraft, (3) all present and future attachments, accessories, parts, repairs, additions, accessions, substitutions, exchanges and replacements identified with or relating to the Aircraft, (4) all present and future rights of Borrower relating to the physical condition of the Aircraft, including under any warranties, service, airframe, engine or any other maintenance agreements, storage agreements or insurance policies, (5) all present or future rights of Borrower in connection with the use and/or operation of the Aircraft by any third party under any lease, rental agreement or license, (6) any other assets of Borrower in which Borrower has granted Lender a security interest under any other agreement, (7) all deposit accounts and other property of the Borrower now or hereafter in the possession, custody or control of Lender for any purpose, and (8) proceeds of the Aircraft and any of (1) through (7). Additionally, all associated rights as defined in the Cape Town Convention if applicable.

2. **REPRESENTATIONS, WARRANTIES, AND COVENANTS.** Borrower represents, warrants and covenants to Lender as follows:

a. **Title.** Borrower is the lawful owner of the Collateral and holds good title to the Collateral, free and clear of all encumbrances except the lien of this Agreement. Borrower will maintain a valid US registration as owner of the Aircraft pursuant to a proper registration under the Federal Aviation Act of 1958, as amended.

b. **Authority.** Borrower is **a limited liability company organized in the State of <u>Nevada</u>** and in good standing in all jurisdictions where qualification is necessary.

c. **Taxes.** Unless disclosed to Lender, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full. Borrower will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, or arising by virtue of any aspect of the transaction relating to this Agreement.

d. **Information.** All financial statements, credit applications, and other information Borrower has provided to Lender are, and all financial statements and other information Borrower delivers or provides to Lender in the future also will be, truthful and accurate. Since the date of the most recent financial statements delivered to Lender, there has been no material adverse change in Borrower's or guarantor's financial condition or prospects.

1 of 5



CONT000006

FILED WITH FAA
AIRCRAFT
REGISTRATION BR

2019 MAY -6 PM 2:42

OKLAHOMA CITY
OKLAHOMA

DocuSign Envelope ID: B5BF99F4-1194-4228-8A90-93F4D62919A4

**e.  Location of the Collateral.**  Borrower will hangar or keep the Collateral and complete logs, manuals, books and records concerning the Collateral at the Home Airport noted above and make them available upon request of the secured party.

**f.  Aircraft and Log Books.**  Borrower will keep accurate and complete logs, manuals, books, and records relating to the Collateral, and will provide Lender with copies of such reports and information relating to the Collateral as Lender may reasonably require from time to time.

**g.  Perfection of Security Interest.**  Borrower will take whatever other actions are requested by Lender to perfect and continue Lender's first-priority security interest in the Collateral and shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**h.  Notices to Lender.**  Borrower will notify Lender prior to any (1) change in Borrower's name or address; (2) (if Borrower is a business) change in the ownership of the Borrower or management of the Borrower; (3) merger of Borrower with or into, transfer by Borrower of all or substantially all of its assets to, or acquisition by Borrower of all or substantially all of the assets of, any other entity; or (4) change in any other aspect of Borrower that directly or indirectly relates to any agreements between Borrower and Lender, including any material adverse change in Borrower's financial status.

**i.  Maintenance.**  Borrower, through its active oversight and at its sole expense, shall keep the Collateral in as good condition and repair as it is on the date of this Agreement, ordinary wear and tear excepted, and maintain and keep the Aircraft and Engines in good order and repair and in airworthy condition in accordance with the requirements of the FAA and each of the manufacturers' manuals and mandatory service bulletins.  Any aircraft and/or engine maintenance programs effective as of the date of the Agreement and any date thereafter are a part of this Agreement and shall be maintained for the duration of the Agreement and Note

**j.  Compliance with Governmental Requirements.**  Borrower shall comply promptly with all laws, ordinances and regulations of the FAA and all other governmental authorities applicable to the use, operation, maintenance, overhauling or condition of the Collateral.  Borrower shall cause the Aircraft to be operated at all times only by a currently certified pilot having the minimum total pilot hours and pilot-in-command hours required by FAA rules or regulations and applicable insurance policies.

**k.  Maintenance of Insurance.**  Borrower shall procure and maintain, at all times, the following types of insurance on the Collateral: 1) Aircraft Liability including coverage for claims or allegations of bodily injury and property damage with limits of liability of not less than $1,000,000 per occurrences or such limit as is acceptable to and/or required by Lender and 2) All Risk Physical Damage coverage including without limitation, ground, taxiing and in flight coverage against any loss, destruction, fire, theft or other damage to the Collateral and 3) such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender.  Lender's minimum requirements for insurance, subject to modification at Lender's reasonable discretion, include: (1) Borrower must be either the named insured or additional named insured on the policy; (2) Lender must be named as Additional Insured for liability coverages on the policy as respects their interest in the aircraft (3) the policy must contain a breach of warranty endorsement in favor of Lender; (4) Lender (or its assignee) must be named as lienholder and sole loss payee; (5) the Collateral must be insured against loss and damage for its full insurable value; (6) the policy must include territorial limits for all anticipated areas of operations; (7) if the Aircraft is to be operated for any purpose other than as set forth in Section 91 of the Federal Aviation Regulations and Lender has consented to such use, the policy must include coverage for such use; (8) the policy must provide for thirty (30) days notification to Lender prior to amendment, termination or non-renewal of coverage. **War risk insurance coverage *must be obtained if the Aircraft is to operate outside the United States.  Borrower shall not use or permit the Collateral to be used in any manner contrary to the requirements of any insurance policy, or for any purpose excepted or excluded from the insurance policy.***

**l.  Application of Insurance Proceeds.**  Borrower shall promptly (not to exceed ten (10) days) notify Lender of any loss or damage to the Collateral in excess of two percent (2%) of the principal amount of the Indebtedness. Borrower shall complete a full restoration and repair of the Collateral within 90 days of any partial loss or damage to the Collateral. If an Event of Default has occurred or is continuing, Lender shall be entitled to apply the insurance proceeds to the payment of the Indebtedness at Lender's sole discretion. If no Event of Default has occurred or is continuing, the insurance proceeds shall be disbursed to Borrower if Borrower provides documentation that, in Lender's sole discretion, is satisfactory to evidence the Aircraft is being, or has been, repaired to an acceptable valuation and will be returned to service in airworthy condition. If Lender determines, in its sole discretion, that after making repairs the outstanding Indebtedness will exceed the Aircraft value the Lender in its sole discretion may apply such insurance proceeds to the payment of the Indebtedness.

**m.  Notice of Encumbrances.**  Borrower shall immediately notify Lender upon the Collateral being seized or the filing of any attachment, lien, judicial process, or claim relating to the Collateral.

**n.  Notices of Claims and Litigation.**  Borrower will promptly inform Lender of (1) all material adverse changes in Borrower's financial condition, (2) all existing and all threatened litigation, claims, investigations, administrative proceedings

CONT000008

CONT000009

DocuSign Envelope ID: B5BF99F4-1194-4228-8A90-93F4D62919A4

or similar actions affecting or concerning in any manner the Collateral, or concerning in any manner the Borrower or any Guarantor.

**o.   Inspection.** Borrower shall permit employees or agents of Lender at any reasonable time to inspect any and all Collateral including the aircraft and its logs, books, manuals and any other records comprising or related to the Collateral. Borrower by execution of this Agreement authorizes any third party in possession of these documents to permit Lender free access (either in paper form or on-line via the internet) to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense. Borrower shall not block Lender from access to electronic flight-tracking services relating to the Aircraft's operation.

**p.   Additional Assurances.** Borrower will make, execute and deliver to Lender such instruments, documents and other writings as Lender may reasonably request to evidence and secure the Note and/or the Indebtedness.

**3.   PROHIBITIONS REGARDING COLLATERAL.** Borrower covenants to Lender as follows:

**a.   No Sale, etc. of Collateral.** Without the prior written consent by Lender, (i) Borrower shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral, and (ii) Borrower shall not lease, pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement.

**b.   No Commercial Use.** Borrower shall use the Collateral solely for business or personal purposes. Borrower shall not use the Collateral, or permit the Collateral to be used, in Commercial Operations (i.e., Part 135, 121, Flight Training Part 141 or 61 operations) unless permitted as so indicated above.

**c.   Removal of the Collateral.** Except for routine use, Borrower shall not change the Home Airport or remove the Collateral from the Home Airport without Lender's prior written consent. Borrower shall, whenever requested, advise Lender of the exact location of the Collateral.  Borrower shall not base, or permit the Collateral to be based, outside the continental United States of America.

**d.   No Removal of Parts.** Except as permitted or required in the section of this Agreement titled "Maintenance" Borrower shall not remove or permit the removal of any parts, engines, accessories, avionics or equipment from the Aircraft.

**e.   Modifications.** Borrower shall not, without the prior written consent of Lender, modify the Aircraft in any material way, including but not limited to, the Aircraft's function or operating capability.

**4.   BORROWER'S RIGHT TO POSSESSION.** Until an Event of Default, Borrower shall have the possession and beneficial use of the Collateral and may use it in any lawful manner not inconsistent with this Agreement.

**5.   LENDER'S EXPENDITURES.** Borrower shall pay to Lender, or if requested by Lender, directly to the applicable vendor or other third party, any fees, costs, expenses, penalties or interest incurred by Lender in connection with this Agreement, the Note or any of the Collateral, including without limitation, fees, costs or expense of: (i) filing, registering or recording this Agreement and Lender's interests under this Agreement, or any UCC financing, continuation or termination statement or similar official filings or registrations, (ii) any transfer or stamp taxes, (iii) inspection, appraisal or monitoring of the Collateral as Lender may conduct for itself or obtain from a third party in its discretion, (iv) exercising its rights herein or under applicable law to protect its interest in the Collateral by performing obligations of Borrower in the event Borrower fails to timely perform same, (v) taking possession of, holding, preparing for sale or other disposition and selling or otherwise disposing of the Collateral, and (vi) all attorneys' and other professionals retained by Lender in connection with any of the foregoing, or any exercise of other remedies upon occurrence of a default, whether such fees, costs or expenses are incurred before or after commencement of any bankruptcy case or other insolvency proceeding. All of the foregoing fees, costs or expenses thus incurred or expended by Lender, and any other monies paid by Lender to collect Borrower's obligations under the Note or protect its interests in the Collateral shall, at Lender's option, for each instance of fees, cost or expense so incurred or paid by Lender, either be added to the balance of the Note (and be subject to all of the provisions of this Agreement) or be paid immediately by Borrower upon demand by Lender, with interest accruing on the amount so demanded at the applicable Note interest rate.

**6.   DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**a.   Note Default.** Borrower fails to make any payment when due under this Agreement, the Note, any addendum, schedule or other separate document that, by its terms, is made a part hereof, or under any other agreement between Borrower and Lender;

**b.   Other Debt Default.** Borrower fails to make payment when due or otherwise fails to perform under any agreement for borrowed money, or any obligation of Borrower for borrowed money is declared due and payable before its original maturity date;

**c.   Performance Default.** Borrower or any guarantor fails to perform any obligation under this Agreement, any guaranty or any other agreement with Lender, provided, however, that, to the extent any such obligation, other than a

CONT000010

CONT000011

DocuSign Envelope ID: B5BF99F4-1194-4228-8A90-93F4D62919A4

payment or insurance obligation, can still be performed, such failure continues for more than ten (10) business days after delivery by Lender of a written demand to perform;

**d.   Other Breaches.**  Any representation or warranty made by Borrower or any guarantor in this Agreement in any material respect appears to the Lender to be untrue when made, or subsequently becomes no longer true (except for representations and warranties that become untrue solely due to the passage of time);

**e.   Insolvency.**  Borrower, or any guarantor of Borrower's obligations to Lender, dies, dissolves, merges with another entity, suspends or terminates his/her/its usual business, is unable to pay his/her/its debts as they become due, makes an assignment for the benefit of creditors, applies to any court for the appointment of a trustee or a receiver of all or a substantial part of his/her/its assets or commences any proceeding under any bankruptcy, receivership, insolvency, dissolution or liquidation law of any jurisdiction, or any other individual or entity commences such proceedings against Borrower or any such guarantor and Borrower or such guarantor acquiescence thereto, or denies liability to Lender or seeks to terminate any agreement with Lender;

**f.   Insecurity.**  Lender, in good faith, believes that the prospect of payment and performance hereunder has substantially diminished or that there is a material adverse change in the financial condition or operations of Borrower or any guarantor;

**g.   Change in Control.**  Borrower's principals as of the inception of this Agreement no longer control or operate the business of Borrower;

**h.   Defective Collateralization.**  This Agreement or the Note ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected first position security interest or lien) at any time and for any reason.

**7.   RIGHTS AND REMEDIES ON DEFAULT.**  Upon the occurrence of any of the foregoing Events of Default and at any time thereafter that any Event of Default is continuing, Lender may do any or all of the following, cumulatively: (i) declare all or any part of the remaining unpaid indebtedness of Borrower to Lender to be immediately due and payable, together with all unpaid interest and any other accrued and unpaid monetary obligations of Borrower hereunder; and (ii) exercise all rights and remedies provided in this Agreement, under the Uniform Commercial Code as in effect in all pertinent jurisdictions and under any other applicable law, including without limitation, the right (a) to setoff any property of Borrower in the possession or control of Lender, and (b) in Lender's sole discretion, to undertake payment or other performance of any obligation of Borrower hereunder that Borrower has failed to perform. Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower under this Agreement, after Borrower's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. In connection with any sale or other disposition of the Collateral by Lender, the requirements of reasonable notice shall be met if such notice is given to Borrower and any guarantors at least ten (10) days before the date of any public sale or the date after which any private sale or other disposition of Collateral is to be made.

**8.   INDEMNIFICATION OF LENDER.**  Borrower agrees to indemnify, to defend and to save and hold Lender harmless from any and all claims, suits, obligations, damages, losses, costs and expenses (including, without limitation, Lender's reasonable attorneys' fees), demands, liabilities, penalties, fines and forfeitures of any nature whatsoever that may be asserted against or incurred by Lender, its officers, directors, employees, and agents arising out of, relating to, or in any manner occasioned by this Agreement and the exercise of the rights and remedies granted Lender under this Agreement.

**9.   MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Agreement:

**a.   Amendments.**  This Agreement (which includes the Note and all addenda, schedules or other separate documents that, by their terms, are made a part hereof) constitutes the entire agreement between Borrower and Lender. Lender may by written notice to Borrower correct any error or complete any blank space necessary to cause this Agreement to be accurate and effective. Except to the extent provided otherwise herein, this Agreement can be modified or amended only by a written document signed by both Borrower and Lender. Borrower hereby authorizes and ratifies any prior filing of a financing statement by Lender, and appoints Lender as its attorney-in-fact to affix Borrower's signature to any form relating to the Collateral and to any Uniform Commercial Code financing statement(s), to take any other action Lender deems necessary to perfect and maintain perfection of the security interests provided herein or as may be required hereby and to do all other acts and things necessary to carry out the intent of this Agreement. Borrower further appoints Lender as Borrower's attorney-in-fact for Borrower and in its name, place and stead (i) to endorse the name of Borrower to instruments and documents for purposes of collection or expedition, (ii) in obtaining payment, adjusting, canceling or settling any claims upon or under any insurance policies covering the Collateral, and hereby authorizes Lender to endorse the name of Borrower on any checks, drafts or other instruments received or given in payment or liquidation of any claim under any such insurance policy, and (iii) to perform each and every act Lender deems necessary in connection with this power of attorney. Borrower further authorizes Lender to execute a power-of-attorney form in Borrower's name if and to the extent necessary or convenient to confirm the foregoing grant of authority. The foregoing powers of attorney are coupled with interests in the underlying subject

CONT000012

CONT000013

DocuSign Envelope ID: B5BF99F4-1194-4228-8A90-93F4D62919A4

matter and are therefore irrevocable. Lender may assign this Agreement at any time. Borrower may not assign its rights or delegate its duties under this Agreement without the express prior written consent of Lender.

**b.   Governing Law and Jurisdiction**. This Aircraft Security Agreement has been delivered to Lender and accepted by Lender in the Commonwealth of Massachusetts. The Note, this Aircraft Security Agreement, and all related documents will be governed by, construed and enforced in accordance with federal laws and the laws of the Commonwealth of Massachusetts.   If there is a lawsuit, Borrower consents to the jurisdiction of Massachusetts-located state and federal courts.

**c.   Notices.** Any notice required to be given under the Note, the Related Documents, or this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by fax (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any notice given by Lender to any Borrower is deemed to be notice given to all guarantors and Borrowers.

**d.   Severability.** If any part of this Agreement is determined to be contrary to any law or otherwise defective, then the other provisions of this Agreement shall not be affected thereby, but shall continue in full force and effect.

**e.   No Waiver by Lender.** Borrower's obligation to repay the Note and all other obligations of Borrower hereunder are independent of the obligation of any other individual or entity that has signed this Agreement or other documents as a Borrower or a guarantor ("Signer(s)"). It is not necessary for Lender to exercise its rights and remedies in respect of the Collateral before collecting from a Signer. Lender may extend the time for payment of any installment, reduce the size of monthly payments, release Collateral, release one or more Signers from their obligations, waive any right Lender might have against any Signer, extend, renew or agree to alter this Agreement, all without releasing other Signers from their obligations under this Agreement or any guaranty agreement. Any delay by Lender in exercising any rights or remedies hereunder or under any other instrument executed and delivered by Borrower to Lender in connection herewith shall not operate as a waiver thereof and no single or partial exercise of any right or remedy shall preclude other or further exercise thereof, or the exercise of any other right or remedy. Lender's acceptance of late or partial payments, or waiver of any default, shall not establish a custom or course of conduct and the waiver by Lender of any default shall not constitute a waiver of any subsequent defaults, but shall be restricted to the default so waived.

**f.   Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**g.   Counterparts.** This Agreement may be executed in several counterparts and delivered via electronic means, and all such executed counterparts shall constitute one agreement. Borrower confirms that if it has received copies of documents for execution from Lender via any means of electronic delivery (including email), that it has made no changes to such documents and the documents are identical in content to the version dispatched by Lender to Borrower.

**h.   This** Agreement shall be deemed accepted by Lender in Massachusetts, by the Lender's act of funding the loan made under this Agreement.

**BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS AIRCRAFT SECURITY AGREEMENT AND BORROWER AGREES TO ITS TERMS.**

In witness whereof, the Borrower has executed this Agreement below:

**BORROWER:**
**AirAway, LLC**

DocuSigned by:

*Mark Brandemuehl*

CC03FC6F684F49C...

By:_____
Name: **Mark Brandemuehl**
Title: **Manager**

DocuSigned by:

*JENNY A. BRANDEMUEHL*

ECCBF28A679F4CC...

By:_____
Name: **Jenny A. Brandemuehl**
Title: **Manager**

CONT000014



FILED WITH FAA
AIRCRAFT
REGISTRATION BR

2019 MAY -6 PM 2:42

OKLAHOMA CITY
OKLAHOMA

DOCUMENT LEVEL ANNOTATIONS

Orig # 1710 ret'd to PATS.

CONT000016

CONT000017

DocuSign Envelope ID: E35A2CFF-4BC0-4C3C-825F-4A64954CDE10

Accepted MD Jun/06/2019

# UNITED STATES OF AMERICA – DEPARTMENT OF TRANSPORTATION
## FEDERAL AVIATION ADMINISTRATION – MIKE MONRONEY AERONAUTICAL CENTER

## AIRCRAFT REGISTRATION APPLICATION

| | | |
|---|---|---|
| **UNITED STATES REGISTRATION NUMBER**  N 576CM | **TYPE OF REGISTRATION** <br><br> (Check one box.) | ☐ 1. Individual <br> ☐ 2. Partnership <br> ☐ 3. Corporation <br> ☐ 4. Co-Owner <br> ☐ 5. Government <br> ☒ 7. Limited Liability Company (LLC) <br> ☐ 8. Non-Citizen Corporation <br> ☐ 9. Non-Citizen Corporation Co-Owner |
| **AIRCRAFT MANUFACTURER AND MODEL**  Mooney International Corp M20V | | |
| **AIRCRAFT SERIAL NUMBER**  33-0015 | | |

**NAME(S) OF APPLICANT(S)** [Person(s) shown on evidence of ownership. If individual, give last name, first name and middle initial.]

AirAway, LLC

**TELEPHONE NUMBER:** (503) 409-8876

**MAILING ADDRESS** (Permanent mailing address for first applicant on list.)

**NUMBER AND STREET:** 123 Juanita Dr. Unit 1-17

**RURAL ROUTE:** _____  **P.O. BOX** _____

**CITY:** Incline Village  **STATE:** NV  **ZIP:** 89451

**PHYSICAL ADDRESS/LOCATION** IF P.O. BOX OR RURAL ROUTE BOX USED FOR MAILING ADDRESS

**NUMBER AND STREET:** _____
**DESCRIPTION OF LOCATION:** _____
**CITY:** _____  **STATE:** _____  **ZIP:** _____

☐ CHECK HERE IF YOU ARE <u>ONLY</u> REPORTING A CHANGE OF ADDRESS

## CERTIFICATION

**I/WE CERTIFY:**

(1)  That the above aircraft is owned by the undersigned applicant who is: (**MUST CHECK AND/OR COMPLETE a, b, c, or d**)

    ☒ a. A citizen of the United States as defined by 49 USC 40101(15);

    ☐ b. A resident alien with alien registration (Form I-551) No. _____

    ☐ c. A non-citizen corporation organized and doing business under the laws of (state) _____ and said aircraft is based and primarily used in the United States. Records of flight hours are available for inspection at (**provide complete physical address**): _____

    ☐ d. A corporation using a voting trust to qualify. Enter name of trustee _____

(2)  If box c or d above is checked, I, the below signed, certify that I am authorized, by the applicant shown above, to sign corporate documents and to seek aircraft registration on behalf of the entity and that I will provide the same authorization if requested;

(3)  That the aircraft is not registered under the laws of any foreign country; and

(4)  That legal evidence of ownership is attached or has been filed with the Federal Aviation Administration.

**ANY AND ALL SIGNATORIES OF THIS APPLICATION MUST READ THE FOLLOWING AND UNDERSTAND THAT, BY APPLYING A SIGNATURE TO THIS DOCUMENT, THEY ARE SUBJECT TO THE REFERENCED STATUTES AND ASSOCIATED PENALTIES.**

I hereby certify that the information provided herein and in any attachments to the application for aircraft registration is true, accurate and correct to the best of my knowledge and belief. I understand that the information provided by me will be relied on by the FAA administrator in his/her determination of qualification for aircraft registration. I understand that whoever, in any matter within the jurisdiction of any department or agency of the United States, knowingly and willfully falsifies, conceals or covers up (by any trick, scheme or device) a material fact or who makes any false, misleading or fraudulent statements or representations or entry, may be fined up to $250,000 or imprisoned not more than five (5) years or both (18 U.S.C. Sections 1001 and 3571). I understand that, should I intentionally provide any inaccurate or false information, registration of the subject aircraft may be revoked.

**NOTE: If executed for co-ownership, all applicants must sign. Use next page and add page(s) if necessary.**

| | | | | |
|---|---|---|---|---|
| **1** | **SIGNATURE:** | *Mark Brandemuehl* <br> CC03F3C6F684F49C... | **DATE:** | 5-6-19 |
| | **TYPED/PRINTED NAME:**  Mark Brandemuehl | | **TITLE:** | *Manager* |
| **2** | **SIGNATURE:** | | **DATE:** | |
| | **TYPED/PRINTED NAME:** | | **TITLE:** | |

**NOTE:** <u>Except when the most recent registration of the subject aircraft is expired or cancelled,</u> 14 CFR 47.31(c) provides for an airworthy U.S. aircraft to be operated for up to 90 days within the United States when a copy of the signed application for its registration is carried in the aircraft while awaiting issuance and receipt of the new registration certificate.

AC Form 8050-1 (08/18)

FILED WITH FAA
AIRCRAFT
REGISTRATION BR
2019 MAY -6 PM 2:42
OKLAHOMA CITY
OKLAHOMA

CONT000019

DocuSign Envelope ID: 96B92681-2C27-4B8E-9E75-C3B1FD285BFB

MD004205 Conveyance Recorded Jun/06/2019 08:35 AM FAA

**UNITED STATES OF AMERICA**
U.S. DEPARTMENT OF TRANSPORTATION FEDERAL AVIATION ADMINISTRATION
**AIRCRAFT BILL OF SALE**

FOR AND IN CONSIDERATION OF $ 1ove THE UNDERSIGNED OWNER(S) OF THE FULL
LEGAL AND BENEFICIAL TITLE OF THE AIRCRAFT DESCRIBED AS FOLLOWS:

| UNITED STATES REGISTRATION NUMBER | **N 576CM** |
|---|---|

AIRCRAFT MANUFACTURER & MODEL
Mooney International Corp M20V

AIRCRAFT SERIAL NUMBER
33-0015

DOES THIS 6th DAY OF May, 2019 .
HEREBY SELL, GRANT, TRANSFER AND DELIVER ALL RIGHTS, TITLE, AND
INTERESTS IN AND TO SUCH AIRCRAFT UNTO:

THIS IS TO CERTIFY THAT THIS COPY
HAS BEEN COMPARED WITH THE ORIGINAL
AND IS A TRUE COPY THEREOF
POWELL AIRCRAFT TITLE SERVICE

**PURCHASER**

NAME AND ADDRESS
(IF INDIVIDUAL(S), GIVE LAST NAME, FIRST NAME, AND MIDDLE INITIAL)

**AirAway, LLC**
**123 Juanita Dr.**
**Unit 1-17**
**Incline Village, NV 89451**

DEALER CERTIFICATE NUMBER

AND TO                    EXECUTORS, ADMINISTRATORS, AND ASSIGNS TO HAVE AND TO HOLD
SINGULARLY THE SAID AIRCRAFT FOREVER, AND WARRANTS THE TITLE THEREOF.

IN TESTIMONY WHEREOF    I    HAVE SET my HAND AND SEAL THIS 6th DAY OF May, 2019___

| NAME(S) OF SELLER (TYPED OR PRINTED) | SIGNATURE(S) (IN INK) (IF EXECUTED FOR CO-OWNERSHIP, ALL MUST SIGN.) | TITLE (TYPED OR PRINTED) |
|---|---|---|
| **C & M Aviation, LLC** | *Mark Woods* F5F08C8A4D3248E... | Manager |
| | Mark Woods | |
| | | |
| | | |

**SELLER**

ACKNOWLEDGMENT (NOT REQUIRED FOR PURPOSES OF FAA RECORDING; HOWEVER, MAY BE
REQUIRED BY LOCAL LAW FOR VALIDITY OF THE INSTRUMENT.)        191261443502
                                                              $5.00  05/06/2019
**ORIGINAL: TO FAA**

AC FORM 8050-2 (9/92) (NSN 0052-00-629-0003) SUPERSEDES PREVIOUS EDITION




FILED WITH FAA
AIRCRAFT
REGISTRATION BR

2019 MAY -6 PM 2: 42

OKLAHOMA CITY
OKLAHOMA

CONT000021

DOCUMENT LEVEL ANNOTATIONS

Orig # 1706 ret'd to PATS.

CONT000022

CONT000023

DocuSign Envelope ID: 0ED3559E-FCF0-4485-A7B3-A471C0616B95

**DEPARTMENT OF TRANSPORTATION**
**FEDERAL AVIATION ADMINISTRATION**

| THIS FORM SERVES TWO PURPOSES: |
| --- |
| PART I acknowledges the recording of a security conveyance covering the collateral shown. PART II is a suggested form of release which may be used to release the collateral from the terms of the conveyance. |

**PART I – CONVEYANCE RECORDATION NOTICE**

NAME (last name first) OF DEBTOR
**C & M Aviation LLC**

NAME and ADDRESS OF SECURED PARTY/ASSIGNEE
**Union Bank and Trust Company**
**4243 Pioneer Woods Drive**
**Lincoln, NE 68506**

THIS IS TO CERTIFY THAT THIS COPY HAS BEEN COMPARED WITH THE ORIGINAL AND IS A TRUE COPY THEREOF
POWELL AIRCRAFT TITLE SERVICE

ASSIGNOR (IF APPLICABLE)
AFC Financial Services LLC

| FAA REGISTRATION NUMBER **576CM** | AIRCRAFT SERIAL NUMBER **33-0015** | AIRCRAFT MFR. (BUILDER) and MODEL **Mooney International Corp M20V** |
| --- | --- | --- |
| ENGINE MFR. And MODEL | | ENGINE SERIAL NUMBER (S) |
| PROPELLER MFR. And MODEL | | PROPELLER SERIAL NUMBER (S) |

THE SECURITY CONVEYANCE DATED 2-12-19  COVERING THE ABOVE COLLATERAL
WAS RECORDED 3-30-19 WITH THE FAA CONVEYANCE # OT019420.

**PART II – RELEASE –** (This suggested release form may be executed by the secured party and returned to the FAA Aircraft Registry when the terms of the conveyance have been satisfied. See below for additional information)

THE UNDERSIGNED HEREBY CERTIFIES AND ACKNOWLEDGES THAT HE IS THE TRUE AND LAWFUL HOLDER OF THE NOTE OR OTHER EVIDENCE OF INDEBTEDNESS SECURED BY THE CONVEYANCE REFERRED TO HEREIN ON THE ABOVE-DESCRIBED COLLATERAL AND THAT THE SAME COLLATERAL IS HEREBY RELEASED FROM THE TERMS OF THE CONVEYANCE. ANY TITLE RETAINED IN THE COLLATERAL BY THE CONVEYANCE IS HEREBY SOLD, GRANTED, TRANSFERRED, AND ASSIGNED TO THE PARTY WHO EXECUTED THE CONVEYANCE, OR TO THE ASSIGNEE OF SAID PARTY IF THE CONVEYANCE SHALL HAVE BEEN ASSIGNED: PROVIDED, THAT NO EXPRESS WARRANTY IS GIVEN NOR IMPLIED BY REASON OF EXECUTION OR DELIVERY OF THIS RELEASE.

DATE OF RELEASE: _____5-6-19_____

**Union Bank and Trust Company**          TJ Casady
                                          DocuSigned by:
                                          631E4A9C879343D...

SIGNATURE (in ink) _____

TITLE: TJ Casady, Vice President

A PERSON SIGNING FOR A CORPORATION MUST BE A CORPORATE OFFICER OR HOLD A MANAGERIAL POSITION AND MUST SHOW HIS TITLE. A PERSON SIGNING FOR ANOTHER SHOULD SEE PARTS 47 AND 49 OF THE FEDERAL AVIATION REGULATIONS (14 CFR)

MD004204 Conveyance Recorded Jun/06/2019 08:35 AM FAA



CONT000024

FILED WITH FAA
AIRCRAFT
REGISTRATION BR

2019 MAY -6 PM 2:42

OKLAHOMA CITY
OKLAHOMA

DOCUMENT LEVEL ANNOTATIONS

Orig # 1704 ret'd to PATS.
See recorded conveyance number OT019420 Doc ID 8392.

CONT000027

DocuSign Envelope ID: 75231705-2932-4521-8E02-9DDD6C427ED3

OT019420 Conveyance Recorded Mar/30/2019 06.41 AM FAA

## AIRCRAFT SECURITY AGREEMENT

**THIS AIRCRAFT SECURITY AGREEMENT** ("Agreement") dated **February 12, 2019** is made between the "Borrower" and "Lender", and relates to a security interest granted in certain "Collateral" (as defined below) that includes the "Aircraft", all as indicated below:

| | |
|---|---|
| NAME & ADDRESS OF BORROWER:<br>C & M Aviation, LLC<br>10 Daggett Rim Road<br>Boise, ID 83716-3372 | |
| NAME & ADDRESS OF SECURED PARTY/LENDER:<br>AFC Financial Services, LLC<br>1725 E. Ryan Road, Suite 5<br>Chandler, AZ 85286-1718 | **ABOVE SPACE**<br><br>**FOR FAA USE ONLY** |
| NAME & ADDRESS OF ASSIGNEE:<br>Union Bank and Trust Company<br>4243 Pioneer Woods Drive<br>Lincoln, NE 68506 | |

| Year | Aircraft Manufacturer | Model Number | Serial Number | FAA Registration Number |
|---|---|---|---|---|
| 2019 | Mooney International Corp | M20V | 33-0015 | N576CM |
| Engine Make | Model Number | Serial Number(s) | 550+ hp? | Home Airport: |
| | | | ☐ Yes ☒ No | (BOI) Boise, ID |
| Propeller Make | Model Number | Serial Number(s) | | Commercial Use: |
| | | | | ☐ Permitted ☒ NOT Permitted |

**1. GRANT OF SECURITY INTEREST.** Borrower is receiving a loan from Lender, as evidenced by a certain Promissory Note ("Note") being executed and delivered contemporaneously with this Agreement. To secure repayment of the Note and performance of the other obligations of Borrower under this Agreement, and also to secure all other monetary and non-monetary obligations of Borrower to Lender under any other agreement, whether absolute or contingent, direct or indirect, now existing or hereafter arising (collectively, the "Indebtedness"), Borrower grants to Lender a continuing first-priority perfected security interest in the "Collateral" as defined in the following sentence. "Collateral" means (1) all of Borrower's right, title and interest in and to the Aircraft and Engines noted above, (2) all logs, records and manuals relating to the Aircraft, (3) all present and future attachments, accessories, parts, repairs, additions, accessions, substitutions, exchanges and replacements identified with or relating to the Aircraft, (4) all present and future rights of Borrower relating to the physical condition of the Aircraft, including under any warranties, service or maintenance agreements, storage agreements or insurance policies, (5) all present or future rights of Borrower in connection with the use and/or operation of the Aircraft by any third party under any lease, rental agreement or license, (6) any other assets of Borrower in which Borrower has granted Lender a security interest under any other agreement, (7) all deposit accounts and other property of the Borrower now or hereafter in the possession, custody or control of Lender for any purpose, and (8) proceeds of the Aircraft and any of (1) through (7). Additionally, all associated rights as defined in the Cape Town Convention if applicable.

**2. REPRESENTATIONS, WARRANTIES, AND COVENANTS.** Borrower represents, warrants and covenants to Lender as follows:

**a. Title.** Borrower is the lawful owner of the Collateral and holds good title to the Collateral, free and clear of all encumbrances except the lien of this Agreement. Borrower will maintain a valid US registration as owner of the Aircraft pursuant to a proper registration under the Federal Aviation Act of 1958, as amended.

**b. Authority.** Borrower is **a limited liability company in the State of Idaho** and in good standing in all jurisdictions where qualification is necessary.

**c. Taxes.** Unless disclosed to Lender, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full. Borrower will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, or arising by virtue of any aspect of the transaction relating to this Agreement.

**d. Information.** All financial statements, credit applications, and other information Borrower has provided to Lender are, and all financial statements and other information Borrower delivers or provides to Lender in the future also will be, truthful and accurate. Since the date of the most recent financial statements delivered to Lender, there has been no material adverse change in Borrower's or guarantor's financial condition or prospects.

190531442374

$5.00  02/22/2019

CONT000028

FILED WITH FAA
AIRCRAFT
REGISTRATION BR

2019 FEB 22  PM 2: 27

OKLAHOMA CITY
OKLAHOMA

CONT000029

DocuSign Envelope ID: 75231705-2932-4521-8E02-9DDD6C427ED3

**e. Location of the Collateral.** Borrower will hangar or keep the Collateral and complete logs, manuals, books and records concerning the Collateral at the Home Airport noted above and make them available upon request of the secured party.

**f. Aircraft and Log Books.** Borrower will keep accurate and complete logs, manuals, books, and records relating to the Collateral, and will provide Lender with copies of such reports and information relating to the Collateral as Lender may reasonably require from time to time.

**g. Perfection of Security Interest.** Borrower will take whatever other actions are requested by Lender to perfect and continue Lender's first-priority security interest in the Collateral and shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**h. Notices to Lender.** Borrower will notify Lender prior to any (1) change in Borrower's name or address; (2) (if Borrower is a business) change in the ownership of the Borrower or management of the Borrower; (3) merger of Borrower with or into, transfer by Borrower of all or substantially all of its assets to, or acquisition by Borrower of all or substantially all of the assets of, any other entity; or (4) change in any other aspect of Borrower that directly or indirectly relates to any agreements between Borrower and Lender, including any material adverse change in Borrower's financial status.

**i. Maintenance.** Borrower, through its active oversight and at its sole expense, shall keep the Collateral in as good condition and repair as it is on the date of this Agreement, ordinary wear and tear excepted, and maintain and keep the Aircraft and Engines in good order and repair and in airworthy condition in accordance with the requirements of the FAA and each of the manufacturers' manuals and mandatory service bulletins. Any aircraft and/or engine maintenance programs effective as of the date of the Agreement and any date thereafter are a part of this Agreement and shall be maintained for the duration of the Agreement and Note.

**j. Compliance with Governmental Requirements.** Borrower shall comply promptly with all laws, ordinances and regulations of the FAA and all other governmental authorities applicable to the use, operation, maintenance, overhauling or condition of the Collateral. Borrower shall cause the Aircraft to be operated at all times only by a currently certified pilot having the minimum total pilot hours and pilot-in-command hours required by FAA rules or regulations and applicable insurance policies.

**k. Maintenance of Insurance.** Borrower shall procure and maintain, at all times, the following types of insurance on the Collateral: 1) Aircraft Liability including coverage for claims or allegations of bodily injury and property damage with limits of liability of not less than $1,000,000 per occurrences or such limit as is acceptable to and/or required by Lender and 2) All Risk Physical Damage coverage including without limitation, ground, taxiing and in flight coverage against any loss, destruction, fire, theft or other damage to the Collateral and 3) such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Lender's minimum requirements for insurance, subject to modification at Lender's reasonable discretion, include: (1) Borrower must be either the named insured or additional named insured on the policy; (2) Lender must be named as Additional Insured for liability coverages on the policy as respects their interest in the aircraft (3) the policy must contain a breach of warranty endorsement in favor of Lender; (4) Lender (or its assignee) must be named as lienholder and sole loss payee;  (5) the Collateral must be insured against loss and damage for its full insurable value; (6) the policy must include territorial limits for all anticipated areas of operations; (7) if the Aircraft is to be operated for any purpose other than as set forth in Section 91 of the Federal Aviation Regulations and Lender has consented to such use, the policy must include coverage for such use; (8) the policy must provide for thirty (30) days notification to Lender prior to amendment, termination or non-renewal of coverage. **War risk insurance coverage must be obtained if the Aircraft is to operate outside the United States. Borrower shall not use or permit the Collateral to be used in any manner contrary to the requirements of any insurance policy, or for any purpose excepted or excluded from the insurance policy.**

**l. Application of Insurance Proceeds.** Borrower shall promptly (not to exceed ten (10) days) notify Lender of any loss or damage to the Collateral in excess of two percent (2%) of the principal amount of the Indebtedness. Borrower shall complete a full restoration and repair of the Collateral within 90 days of any partial loss or damage to the Collateral. If an Event of Default has occurred or is continuing, Lender shall be entitled to apply the insurance proceeds to the payment of the Indebtedness at Lender's sole discretion. If no Event of Default has occurred or is continuing, the insurance proceeds shall be disbursed to Borrower if Borrower provides documentation that, in Lender's sole discretion, is satisfactory to evidence the Aircraft is being, or has been, repaired to an acceptable valuation and will be returned to service in airworthy condition. If Lender determines, in its sole discretion, that after making repairs the outstanding Indebtedness will exceed the Aircraft value the Lender in its sole discretion may apply such insurance proceeds to the payment of the Indebtedness.

**m. Notice of Encumbrances.** Borrower shall immediately notify Lender upon the Collateral being seized or the filing of any attachment, lien, judicial process, or claim relating to the Collateral.

**n. Notices of Claims and Litigation.** Borrower will promptly inform Lender of (1) all material adverse changes in Borrower's financial condition, (2) all existing and all threatened litigation, claims, investigations, administrative proceedings

CONT000030

CONT000031

DocuSign Envelope ID: 75231705-2932-4521-8E02-9DDD6C427ED3

or similar actions affecting or concerning in any manner the Collateral, or concerning in any manner the Borrower or any Guarantor.

o. **Inspection.** Borrower shall permit employees or agents of Lender at any reasonable time to inspect any and all Collateral including the aircraft and its logs, books, manuals and any other records comprising or related to the Collateral. Borrower by execution of this Agreement authorizes any third party in possession of these documents to permit Lender free access (either in paper form or on-line via the internet) to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense. Borrower shall not block Lender from access to electronic flight-tracking services relating to the Aircraft's operation.

p. **Additional Assurances.** Borrower will make, execute and deliver to Lender such instruments, documents and other writings as Lender may reasonably request to evidence and secure the Note and/or the Indebtedness.

3. **PROHIBITIONS REGARDING COLLATERAL.** Borrower covenants to Lender as follows:

a. **No Sale, etc. of Collateral.** Without the prior written consent by Lender, (i) Borrower shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral, and (ii) Borrower shall not lease, pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement.

b. **No Commercial Use.** Borrower shall use the Collateral solely for business or personal purposes. Borrower shall not use the Collateral, or permit the Collateral to be used, in Commercial Operations (i.e., Part 135, 121, Flight Training Part 141 or 61 operations) unless permitted as so indicated above.

c. **Removal of the Collateral.** Except for routine use, Borrower shall not change the Home Airport or remove the Collateral from the Home Airport without Lender's prior written consent. Borrower shall, whenever requested, advise Lender of the exact location of the Collateral. Borrower shall not base, or permit the Collateral to be based, outside the continental United States of America.

d. **No Removal of Parts.** Except as permitted or required in the section of this Agreement titled "Maintenance" Borrower shall not remove or permit the removal of any parts, engines, accessories, avionics or equipment from the Aircraft.

e. **Modifications.** Borrower shall not, without the prior written consent of Lender, modify the Aircraft in any material way, including but not limited to, the Aircraft's function or operating capability.

4. **BORROWER'S RIGHT TO POSSESSION.** Until an Event of Default, Borrower shall have the possession and beneficial use of the Collateral and may use it in any lawful manner not inconsistent with this Agreement.

5. **LENDER'S EXPENDITURES.** Borrower shall pay to Lender, or if requested by Lender, directly to the applicable vendor or other third party, any fees, costs, expenses, penalties or interest incurred by Lender in connection with this Agreement, the Note or any of the Collateral, including without limitation, fees, costs or expense of: (i) filing, registering or recording this Agreement and Lender's interests under this Agreement, or any UCC financing, continuation or termination statement or similar official filings or registrations, (ii) any transfer or stamp taxes, (iii) inspection, appraisal or monitoring of the Collateral as Lender may conduct for itself or obtain from a third party in its discretion, (iv) exercising its rights herein or under applicable law to protect its interest in the Collateral by performing obligations of Borrower in the event Borrower fails to timely perform same, (v) taking possession of, holding, preparing for sale or other disposition and selling or otherwise disposing of the Collateral, and (vi) all attorneys' and other professionals retained by Lender in connection with any of the foregoing, or any exercise of other remedies upon occurrence of a default, whether such fees, costs or expenses are incurred before or after commencement of any bankruptcy case or other insolvency proceeding. All of the foregoing fees, costs or expenses thus incurred or expended by Lender, and any other monies paid by Lender to collect Borrower's obligations under the Note or protect its interests in the Collateral shall, at Lender's option, for each instance of fees, cost or expense so incurred or paid by Lender, either be added to the balance of the Note (and be subject to all of the provisions of this Agreement) or be paid immediately by Borrower upon demand by Lender, with interest accruing on the amount so demanded at the applicable Note interest rate.

6. **DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

a. **Note Default.** Borrower fails to make any payment when due under this Agreement, the Note, any addendum, schedule or other separate document that, by its terms, is made a part hereof, or under any other agreement between Borrower and Lender;

b. **Other Debt Default.** Borrower fails to make payment when due or otherwise fails to perform under any agreement for borrowed money, or any obligation of Borrower for borrowed money is declared due and payable before its original maturity date;

c. **Performance Default.** Borrower or any guarantor fails to perform any obligation under this Agreement, any guaranty or any other agreement with Lender, provided, however, that, to the extent any such obligation, other than a

Page 3 of 5

CONT000032

FILED WITH FAA
AIRCRAFT
REGISTRATION BR
2019 FEB 22 PM 2:27
OKLAHOMA CITY
OKLAHOMA

DocuSign Envelope ID: 75231705-2932-4521-8E02-9DDD6C427ED3

payment or insurance obligation, can still be performed, such failure continues for more than ten (10) business days after delivery by Lender of a written demand to perform;

d. **Other Breaches.** Any representation or warranty made by Borrower or any guarantor in this Agreement in any material respect appears to the Lender to be untrue when made, or subsequently becomes no longer true (except for representations and warranties that become untrue solely due to the passage of time);

e. **Insolvency.** Borrower, or any guarantor of Borrower's obligations to Lender, dies, dissolves, merges with another entity, suspends or terminates his/her/its usual business, is unable to pay his/her/its debts as they become due, makes an assignment for the benefit of creditors, applies to any court for the appointment of a trustee or a receiver of all or a substantial part of his/her/its assets or commences any proceeding under any bankruptcy, receivership, insolvency, dissolution or liquidation law of any jurisdiction, or any other individual or entity commences such proceedings against Borrower or any such guarantor and Borrower or such guarantor acquiescence thereto, or denies liability to Lender or seeks to terminate any agreement with Lender;

f. **Insecurity.** Lender, in good faith, believes that the prospect of payment and performance hereunder has substantially diminished or that there is a material adverse change in the financial condition or operations of Borrower or any guarantor;

g. **Change in Control.** Borrower's principals as of the inception of this Agreement no longer control or operate the business of Borrower;

h. **Defective Collateralization.** This Agreement or the Note ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected first position security interest or lien) at any time and for any reason.

7. **RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any of the foregoing Events of Default and at any time thereafter that any Event of Default is continuing, Lender may do any or all of the following, cumulatively: (i) declare all or any part of the remaining unpaid indebtedness of Borrower to Lender to be immediately due and payable, together with all unpaid interest and any other accrued and unpaid monetary obligations of Borrower hereunder; and (ii) exercise all rights and remedies provided in this Agreement, under the Uniform Commercial Code as in effect in all pertinent jurisdictions and under any other applicable law, including without limitation, the right (a) to setoff any property of Borrower in the possession or control of Lender, and (b) in Lender's sole discretion, to undertake payment or other performance of any obligation of Borrower hereunder that Borrower has failed to perform. Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower under this Agreement, after Borrower's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. In connection with any sale or other disposition of the Collateral by Lender, the requirements of reasonable notice shall be met if such notice is given to Borrower and any guarantors at least ten (10) days before the date of any public sale or the date after which any private sale or other disposition of Collateral is to be made.

8. **INDEMNIFICATION OF LENDER.** Borrower agrees to indemnify, to defend and to save and hold Lender harmless from any and all claims, suits, obligations, damages, losses, costs and expenses (including, without limitation, Lender's reasonable attorneys' fees), demands, liabilities, penalties, fines and forfeitures of any nature whatsoever that may be asserted against or incurred by Lender, its officers, directors, employees, and agents arising out of, relating to, or in any manner occasioned by this Agreement and the exercise of the rights and remedies granted Lender under this Agreement.

9. **MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

a. **Amendments.** This Agreement (which includes the Note and all addenda, schedules or other separate documents that, by their terms, are made a part hereof) constitutes the entire agreement between Borrower and Lender. Lender may by written notice to Borrower correct any error or complete any blank space necessary to cause this Agreement to be accurate and effective. Except to the extent provided otherwise herein, this Agreement can be modified or amended only by a written document signed by both Borrower and Lender. Borrower hereby authorizes and ratifies any prior filing of a financing statement by Lender, and appoints Lender as its attorney-in-fact to affix Borrower's signature to any form relating to the Collateral and to any Uniform Commercial Code financing statement(s), to take any other action Lender deems necessary to perfect and maintain perfection of the security interests provided herein or as may be required hereby and to do all other acts and things necessary to carry out the intent of this Agreement. Borrower further appoints Lender as Borrower's attorney-in-fact for Borrower and in its name, place and stead (i) to endorse the name of Borrower to instruments and documents for purposes of collection or expedition, (ii) in obtaining payment, adjusting, canceling or settling any claims upon or under any insurance policies covering the Collateral, and hereby authorizes Lender to endorse the name of Borrower on any checks, drafts or other instruments received or given in payment or liquidation of any claim under any such insurance policy, and (iii) to perform each and every act Lender deems necessary in connection with this power of attorney. Borrower further authorizes Lender to execute a power-of-attorney form in Borrower's name if and to the extent necessary or convenient to confirm the foregoing grant of authority. The foregoing powers of attorney are coupled with interests in the underlying subject

CONT000034

CONT000035

DocuSign Envelope ID: 75231705-2932-4521-8E02-9DDD6C427ED3

matter and are therefore irrevocable. Lender may assign this Agreement at any time. Borrower may not assign its rights or delegate its duties under this Agreement without the express prior written consent of Lender.

b.   **Governing Law and Jurisdiction.** This Aircraft Security Agreement has been delivered to Lender and accepted by Lender in the State of Arizona.  The Note, this Aircraft Security Agreement, and all related documents will be governed by, construed and enforced in accordance with federal laws and the laws of the State of Arizona or as otherwise designated in an assignment to another Lender.   If there is a lawsuit, Borrower consents to the jurisdiction and venue in state and federal courts of the State of Arizona or as otherwise designated in an assignment to another Lender.

c.   **Notices.** Any notice required to be given under the Note, the Related Documents, or this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by fax (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any notice given by Lender to any Borrower is deemed to be notice given to all guarantors and Borrowers.

d.   **Severability.** If any part of this Agreement is determined to be contrary to any law or otherwise defective, then the other provisions of this Agreement shall not be affected thereby, but shall continue in full force and effect.

e.   **No Waiver by Lender.** Borrower's obligation to repay the Note and all other obligations of Borrower hereunder are independent of the obligation of any other individual or entity that has signed this Agreement or other documents as a Borrower or a guarantor ("Signer(s)"). It is not necessary for Lender to exercise its rights and remedies in respect of the Collateral before collecting from a Signer. Lender may extend the time for payment of any installment, reduce the size of monthly payments, release Collateral, release one or more Signers from their obligations, waive any right Lender might have against any Signer, extend, renew or agree to alter this Agreement, all without releasing other Signers from their obligations under this Agreement or any guaranty agreement. Any delay by Lender in exercising any rights or remedies hereunder or under any other instrument executed and delivered by Borrower to Lender in connection herewith shall not operate as a waiver thereof and no single or partial exercise of any right or remedy shall preclude other or further exercise thereof, or the exercise of any other right or remedy. Lender's acceptance of late or partial payments, or waiver of any default, shall not establish a custom or course of conduct and the waiver by Lender of any default shall not constitute a waiver of any subsequent defaults, but shall be restricted to the default so waived.

f.   **Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

g.   **Counterparts.** This Agreement may be executed in several counterparts and delivered via electronic means, and all such executed counterparts shall constitute one agreement. Borrower confirms that if it has received copies of documents for execution from Lender via any means of electronic delivery (including email), that it has made no changes to such documents and the documents are identical in content to the version dispatched by Lender to Borrower.

h.   This Agreement shall be deemed accepted by Lender in Arizona, by the Lender's act of funding the loan made under this Agreement.

**BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS AIRCRAFT SECURITY AGREEMENT AND BORROWER AGREES TO ITS TERMS.**
In witness whereof, the Borrower has executed this Agreement below:

Borrower: **C & M Aviation, LLC**

By:   ⎡DocuSigned by:
      *Mark A. Woods*
      ⎣F5F08C8A4D3248E...

Name:   **Mark A. Woods**

Title:   **Manager**

CONT000036

CONT000037

DocuSign Envelope ID: CD05CA7D-0B27-4199-98E9-E8B477C2E634

## ASSIGNMENT OF SECURITY INTEREST BY LENDER

The Aircraft Security Agreement, Aircraft Promissory Note, Guarantee and any associated documents (together "Loan Agreements") dated February 12, 2019, by and between C & M Aviation, LLC ("Borrower") and AFC Financial Services, LLC ("Lender"), describing the following aircraft:

| | |
|---|---|
| Year/Make/Model: | 2019 Mooney International Corp M20V |
| Registration Number: | N576CM |
| Serial Number: | 33-0015 |

is hereby assigned in its entirety without recourse to the below listed financial institution ("Assignee") and said Assignee will enjoy and have all the same rights described in the Loan Agreements as if said Loan Agreements were executed by and between the Assignee and the Borrower.

<div align="center">

Union Bank and Trust Company
4243 Pioneer Woods Drive
Lincoln NE 68506

</div>

AFC Financial Services, LLC

*Stephen L. Smestad*
—C2B262A110954D2...

2/21/2019

Stephen L. Smestad, President                    Date

FILED WITH FAA
AIRCRAFT
REGISTRATION BR
2019 FEB 22 PM 2:27
OKLAHOMA CITY
OKLAHOMA

DocuSign Envelope ID: 17C26FAA-2EFB-4B3F-8A07-63D2BA82EF09

DEALER OT019419 Conveyance Recorded Mar/30/2019 06:40 AM FAA

<table>
<tr><td colspan="2">

**UNITED STATES OF AMERICA**
U.S. DEPARTMENT OF TRANSPORTATION FEDERAL AVIATION ADMINISTRATION

**AIRCRAFT BILL OF SALE**

</td><td>

FORM APPROVED
OMB NO. 2120-0042
08/31/2008

</td></tr>
</table>

FOR AND IN CONSIDERATION OF $ **1 & OVC** THE
UNDERSIGNED OWNER(S) OF THE FULL LEGAL AND
BENEFICIAL TITLE OF THE AIRCRAFT DESCRIBED AS
FOLLOWS:

UNITED STATES
REGISTRATION NUMBER **N576CM**

AIRCRAFT MANUFACTURER & MODEL
MOONEY INTERNATIONAL CORP M20V

AIRCRAFT SERIAL No.
33-0015

DOES THIS **22nd** DAY OF *February* , 2019
HEREBY SELL, GRANT, TRANSFER AND
DELIVER ALL RIGHTS, TITLE, AND INTERESTS
IN AND TO SUCH AIRCRAFT UNTO:

Do Not Write In This Block
FOR FAA USE ONLY

**PURCHASER**

NAME AND ADDRESS
(IF INDIVIDUAL(S), GIVE LAST NAME, FIRST NAME, AND MIDDLE INITIAL.)

C & M Aviation, LLC
10 Daggett Rim Road
Boise, ID 83716

DEALER CERTIFICATE NUMBER  D006462

AND TO                    EXECUTORS, ADMINISTRATORS, AND ASSIGNS TO HAVE AND TO HOLD
SINGULARLY THE SAID AIRCRAFT FOREVER AND WARRANTS THE TITLE THEREOF:

IN TESTIMONY WHEREOF          HAVE SET          HAND AND SEAL THIS **22nd** DAY OF *February* **2019**

**SELLER**

| NAME(S) OF SELLER (TYPED OR PRINTED) | SIGNATURE(S) (IN INK) (IF EXECUTED FOR CO-OWNERSHIP, ALL MUST SIGN.) | TITLE (TYPED OR PRINTED) |
|---|---|---|
| Mooney International Corporation | DocuSigned by: *Jeffrey Magnus* AEC36390F9514C2... Jeffrey Magnus | Sales Manager |
| | | |
| | | |

ACKNOWLEDGMENT (NOT REQUIRED FOR PURPOSES OF FAA RECORDING: HOWEVER, MAY BE REQUIRED BY LOCAL LAW FOR VALIDITY OF THE INSTRUMENT.)

ORIGINAL: TO FAA:

AC Form 8050-2 (9/92) (NSN 0052-00-629-0003) Supersedes Previous Edition

FILED WITH FAA
AIRCRAFT
REGISTRATION BR

2019 FEB 22 PM 2: 27

OKLAHOMA CITY
OKLAHOMA



U.S. Department
of Transportation
**Federal Aviation
Administration**

Aviation Safety

P.O. Box 25504
Oklahoma City, Oklahoma 73125-0504
(405) 954-3116
Toll Free: 1-866-762-9434
WEB Address:  http://registry.faa.gov

October 29, 2018

MOONEY INTERNATIONAL CORP
165 AL MOONEY RD N
KERRVILLE TX  78028

Dear Sirs:

United States identification mark N576CM has been assigned to MOONEY INTERNATIONAL
CORP M20V, serial number 33-0015, Mode S Transponder Code 51662361 as requested.  This
manufacturer's assignment of special registration number cannot be used as an authorization for a
number change.

If we may be of further assistance, please contact the Aircraft Registration Branch at
(405) 954-3116 or toll free 1-866-762-9434.

Sincerely,

*Joni Kaplan*

Legal Instruments Examiner
Aircraft Registration Branch

REGAR-SUPPORT-5 (12/11)

CONT000043

DocuSign Envelope ID: E80F945A-0353-4E75-A158-BFE944C103BF

Accepted TK Oct/29/2018



**MOONEY**

*Pilot Perfect*

October 26, 2018

FAA Aircraft Registry
Support Section

Re: Cancelation of Assignment Request N54CM

To Whom It May Concern:

On 10-19-18, a Manufacturer Reserve/Assignment request was submitted for N54CM,
however on 10-22-18 we were advised that N54CM was not available.

Please consider this as our request to cancel the Assignment Request for N54CM.
*See attached assignment letter for N 576CM*
Thank you

Lori Collier

Lori A. Collier
Sales. *administrator*
Mooney International Corp.

Mooney International Corp • 165 Al Mooney Road North • Kerrville, TX 78028 • TEL 830.896.6000 •www.mooney.com

CONT000044

FILED WITH FAA
AIRCRAFT
REGISTRATION BR

2018 OCT 26 PM 3: 13

OKLAHOMA CITY
OKLAHOMA

DocuSign Envelope ID: B68B3098-DF89-4C28-AD32-131485893DC9





Accepted TK Oct/29/2018

October 25, 2018

Federal Aviation Administration
Aircraft Registration Branch, AFS-750
6425 S. Denning
Registry building, Room 118
Oklahoma City, OK  73169-6937

To whom it may concern,      

Mooney International Corp would like to reserve and assign the Special Registration Number as follows:

N# - N576CM
Manufacturer – Mooney International Corp
Model – M20V
Serial Number – 33-0015

Thank you for your attention to this matter.

Regards,

Lori Collier

Lori A Collier
Sales & Marketing  *Administrator*
Phone: 830-792-2940
E-Mail: lcollier@mooney.com

Mooney International Corp • 165 Al Mooney Road North • Kerrville, TX 78028 • TEL 830.896.6000 • www.mooney.com

182981331305
$20.00  10/25/2018

CONT000046

FILED WITH FAA
AIRCRAFT
REGISTRATION BR
2018 OCT 25 PM 1:12
OKLAHOMA CITY
OKLAHOMA

DOCUMENT LEVEL ANNOTATIONS

Orig #3135 ret'd

CONT000048

CONT000049

DocuSign Envelope ID: F6A403D4-AE1A-4D6F-A4E6-10A2FF50C0D0

Accepted TK Oct/29/2018



MOONEY

*Pilot Perfect*

October 19, 2018

Federal Aviation Administration
Aircraft Registration Branch, AFS-750
Registry Building Room 118
6425 South Denning
Oklahoma City, OK. 73169-6937

To Whom It May Concern:

Please assign for Mooney International Corporation the following special N-number:

**N54CM**

To: Mooney International Corp        Model: M20V        S/N: 33-0015

The above aircraft is being manufactured and licensed by Mooney International Corp.
Please feel free to contact me should you need any further information or have any
questions during the completion of this process.

Thank you,

*Lori Collier*
084EFE8287D0483...

Lori A Collier
Sales & Marketing *administrator*
(830) 792-2940

182921241304
$10.00  10/19/2018

Mooney International Corp • 165 Al Mooney Road North • Kerrville, TX 78028 • TEL 830.896.6000 • www.mooney.com

CONT000050

FILED WITH FAA
AIRCRAFT REGISTRATION BR
2018 OCT 19 AM 11 57
OKLAHOMA CITY
OKLAHOMA

MEMORANDUM TO THE FILE

| TONI KAPLAN | October 29, 2018 |
|:---:|:---:|
| ID | DATE |

A Prior Record search was performed for <u>MOONEY INTERNATIONAL CORP M20V, 33-0015</u> on <u>October 29, 2018</u>. Search results:

    No Prior Record

    Assigned N<u>576CM</u>

CONT000053

# Exhibit C

| | | MAJOR REPAIR AND ALTERATION | Form Approved OMB No.2120-0020 2/28/2011 | Electronic Tracking Number |
|---|---|---|---|---|

U.S. Department of Transportation
Federal Aviation Administration

**MAJOR REPAIR AND ALTERATION**
(Airframe, Powerplant, Propeller, or Appliance)

Form Approved OMB No.2120-0020 2/28/2011

Electronic Tracking Number

**For FAA Use Only**

INSTRUCTIONS:  Print or type all entries.  See Title CFR §43.9, Part 43 Appendix B, and AC 43.9-1 (or subsequent revision thereof) for instructions and disposition of this form.  This report is required by law (49 U.S.C. §44701).  Failure to report can result in a civil penalty for each such violation (49 U.S.C. §46301(a)).

**1. Aircraft**

| Nationality and Registration Mark | Serial No. | |
|---|---|---|
| N576CM | 33-0015 | |
| **Make** | **Model** | **Series** |
| Mooney | M20V | M20 |

**2. Owner**

| Name (As shown on registration certificate) | Address (As shown on registration certificate) | | |
|---|---|---|---|
| C&M Aviation LLC | Address  10 DAGGETT RIM RD | | |
| | City    BOISE | State   IDAHO | |
| | Zip     83716-3372 | Country  USA | |

**3.  For FAA Use Only**

**4. Type**      **5. Unit Identification**

| Repair | Alteration | Unit | Make | Model | Serial No. |
|---|---|---|---|---|---|
| ☐ | ☒ | AIRFRAME | ———————— | *(As described in item 1 above)* | |
| ☐ | ☐ | POWERPLANT | | | |
| ☐ | ☐ | PROPELLER | | | |
| ☐ | ☐ | APPLIANCE | Type<br>Manufacturer | | |

**6.  Conformity Statement**

| A. Agency's Name and Address | | B.  Kind of Agency | | |
|---|---|---|---|---|
| Name | Don Maxwell Aviation Services, Inc | X | U.S. Certificated Mechanic | Manufacturer |
| Address | 390 Central Road | | Foreign Certificated Mechanic | **C.  Certificate No.** |
| City | Longview      State Texas | | Certificated Repair Station | 1784050 |
| Zip | 75603      Country    USA | | Certificated Maintenance Organization | |

D.  I certify that the repair and/or alteration made to the unit(s) identified in item 5 above and described on the reverse or attachments hereto have been made in accordance with the requirements of Part 43 of the U.S. Federal Aviation Regulations and that the information furnished herein is true and correct to the best of my knowledge.

| Extended range fuel per 14 CFR Part 43 App. B | ☐ | Signature/Date of Authorized Individual | |
|---|---|---|---|
| | | *[signature]* | Don Maxwell /  4-26-2019 |

**7.  Approval for Return To Service**

Pursuant to the authority given persons specified below, the unit identified in item 5 was inspected in  the manner prescribed by the Administrator of the Federal Aviation Administration and is   ☒ APPROVED        ☐ REJECTED

| BY | FAA Flt. Standards Inspector | Manufacturer | Maintenance Organization | Person Appoved by Canadian Department of Transport |
|---|---|---|---|---|
| | FAA Designee | Repair Station | X  Inspection Authorization | Other      *(Specify)* |

| Certificate or Designation No. | Signature/Date of Authorized Individual | |
|---|---|---|
| 1784050 | *[signature]*     Don Maxwell   4-26-2019 | |

FAA Form 337   (10-06)

CONT000054

**NOTICE**

*Weight and balance or operating limitation changes shall be entered in the appropriate aircraft record. An alteration must be compatible with all previous alterations to assure continued conformity with the applicable airworthiness requirements.*

**8. Description of Work Accomplished**

*(If more space is required, attach additional sheets. Identify with aircraft nationality and registration mark and date work completed.)*

| N576CM | 4-26-2019 |
|---|---|
| Nationality and Registration Mark | Date |

1. Installation of STC # SA02483CH BHP Increase from 280 to 310 BHP IAW Master Drawing MO701 Rev B or later approval. Deviations: Installation of JPI Slim Line Tachometer 400000 Series IAW FAA approved installation and operating procedure No 402 Rev A dated 11/95 or later and STC SA00061LA
2. DER Approval on 8130-3 attached for engineering data & finding in support of 337 data approval for STC SA02483CH and the installation of the JPI, Slim Line Tachometer.
3. Installed PMA'd Reiff SL-6 Engine preheat system

☐ Additional Sheets Are Attached

**FAA Form 337** (10-06)

| U.S. DEPARTMENT OF TRANSPORTATION<br>FEDERAL AVIATION ADMINISTRATION<br>**STATEMENT OF COMPLIANCE WITH AIRWORTHINESS STANDARDS** | 1. DATE:<br>**26 April 2019** |
|---|---|

**AIRCRAFT OR AIRCRAFT COMPONENT IDENTIFICATION**

| 2.  MAKE | 3.  MODEL NO. | 4. TYPE *(Airplane, Engine, Propeller, etc.)* | 5. NAME OF APPLICANT |
|---|---|---|---|
| **Mooney Airplane Co Inc.** | **M20V** | **Airplane** | C&M Aviation LLC<br>10 Daggett Rim RD<br>Boise, Idaho 83716-3372 |

**LIST OF DATA**

| 6.  IDENTIFICATION | 7.  TITLE |
|---|---|
| **FAA Form 337**<br>**Dated: 26 April 2019**<br>**(Engineering data only)** | 1.  Installation of STC # SA02483CH BHP increases from 280 to 310 BHP in accordance with Master Drawing M0701 Rev. B or later approve.<br>2.  Deviations: Installation of JPI Slim–Line Tachometer 400000 series in accordance with FAA approved Installation and Operating Procedure No. 402, Rev. A dated 11/95 or later approved and STC SA00061LA.<br>3.  Deviations: Approved for Mooney M20V S/N 33-0005, FAA Registry N242PT.<br><br>Aircraft:<br> Make – Mooney Acclaim<br> Model – M20V<br> N576CM<br> S/N 33-0015<br> Engine Model – Cont. Motors TSIO-550-G<br><br>Data required:<br> 1) Master Drawing M0701-3 Rev. B dated 04/17/2013 or later approved.<br> 2) FAA Approved Aircraft Flight Manual Supplement M0701-8 Rev. A dated 04/17/2013 or later approved<br> 3) Aircraft Instruction for Continued Airworthiness M0701-9 Rev. A dated 04/17/2013 or late approved<br> 4) JPI Instruction for Continued Airworthiness – contained in FAA approved Installation and Operating Procedure No. 402<br> 5) FAA Form 337 dated 26 April 2019<br>Reference:<br> 1)  STC # SA02483CH<br> 2)  STC # SA00061LA<br> 3)  Major Repair and Alteration FAA Form 337 dated 26 April 2019.<br><br>Note: 1)  This FAA DER approval is for engineering data & finding only in support of 337 Data Approval STC # SA02483CH and the installation of a JPI Slim- Line Tachometer in accordance with FAA approved Installation and Operating Procedure No. 402, Rev. A dated 11/95 or later approved and STC SA00061LA with deviations as noted.<br>-------------------------- END ------------------------------- |

| 8.  PURPOSE OF DATA: |
|---|
| Make findings of compliance to applicable FAR's as specified in Part 23 for Data Approval for Mooney Aircraft M20V, S/N 33-0015, N576CM |

| 9.  APPLICABLE REQUIREMENTS (List specific sections) |
|---|
| **CFR 14, Part 23.1301(a) (b) (c) Amdt 23-20,  23.1305(b2) Amdt 23-52, 23.1549(a)(b)Amdt 23-12** |

**10. CERTIFICATION -** Under authority vested by direction of the Administrator and in accordance with conditions and limitations of appointment under Part 183 of the Federal Aviation Regulations, data listed above and on attached sheets numbered 0 have been examined in accordance with established procedures and found to comply with applicable requirements of the Federal Aviation Regulations.

I (We) Therefore  ☐  Recommend approval of these data

☒  Approve these data

| 11.  SIGNATURE(S) OF DESIGNATED ENGINEERING | 12.  DESIGNATION NUMBER(S) | 13.  CLASSIFICATION(S) |
|---|---|---|
| Bobby W Minnis  *Bobby W Minnis* | DERT- 510258-CE | **Propulsion Powerplant & Engines** |

FAA Form 8110-3 (03/10) SUPERSEDES PREVIOUS EDITION

# Exhibit D

DocuSign Envelope ID: 96B92681-2C27-4B8E-9E75-C3B1FD285BFB

MD004205 Conveyance Recorded Jun/06/2019 08:35 AM FAA

**UNITED STATES OF AMERICA**
U.S. DEPARTMENT OF TRANSPORTATION FEDERAL AVIATION ADMINISTRATION
**AIRCRAFT BILL OF SALE**

FOR AND IN CONSIDERATION OF $ 1ove THE UNDERSIGNED OWNER(S) OF THE FULL
LEGAL AND BENEFICIAL TITLE OF THE AIRCRAFT DESCRIBED AS FOLLOWS:

| UNITED STATES REGISTRATION NUMBER | N 576CM |
|---|---|

AIRCRAFT MANUFACTURER & MODEL
Mooney International Corp M20V

AIRCRAFT SERIAL NUMBER
33-0015

DOES THIS     6th     DAY OF  May , 2019   .
HEREBY SELL, GRANT, TRANSFER AND DELIVER ALL RIGHTS, TITLE, AND
INTERESTS IN AND TO SUCH AIRCRAFT UNTO:

THIS IS TO CERTIFY THAT THIS COPY
HAS BEEN COMPARED WITH THE ORIGINAL
AND IS A TRUE COPY THEREOF
POWELL AIRCRAFT TITLE SERVICE

**PURCHASER**

NAME AND ADDRESS
(IF INDIVIDUAL(S), GIVE LAST NAME, FIRST NAME, AND MIDDLE INITIAL)

**AirAway, LLC**
**123 Juanita Dr.**
**Unit 1-17**
**Incline Village, NV 89451**

DEALER CERTIFICATE NUMBER

AND TO                              EXECUTORS, ADMINISTRATORS, AND ASSIGNS TO HAVE AND TO HOLD
SINGULARLY THE SAID AIRCRAFT FOREVER, AND WARRANTS THE TITLE THEREOF.

IN TESTIMONY WHEREOF     I     HAVE SET   my   HAND AND SEAL THIS 6th DAY OF May , 2019___

| NAME(S) OF SELLER (TYPED OR PRINTED) | SIGNATURE(S) (IN INK) (IF EXECUTED FOR CO-OWNERSHIP, ALL MUST SIGN.) | TITLE (TYPED OR PRINTED) |
|---|---|---|
| **C & M Aviation, LLC** | *Mark Woods* ⎯F5F08C8A4D3248E... | Manager |
| | Mark Woods | |
| | | |
| | | |

**SELLER**

ACKNOWLEDGMENT (NOT REQUIRED FOR PURPOSES OF FAA RECORDING: HOWEVER, MAY BE
REQUIRED BY LOCAL LAW FOR VALIDITY OF THE INSTRUMENT.)            191261443502
                                                                  $5.00  05/06/2019
**ORIGINAL: TO FAA**

AC FORM 8050-2 (9/92) (NSN 0052-00-629-0003) SUPERSEDES PREVIOUS EDITION




FILED WITH FAA
AIRCRAFT
REGISTRATION BR

2019 MAY -6 PM 2: 42

OKLAHOMA CITY
OKLAHOMA

CONT000058

# Exhibit E

DocuSign Envelope ID: B5BF99F4-1194-4228-8A90-93F4D62919A4

THIS IS TO CERTIFY THAT THIS COPY
HAS BEEN COMPARED WITH THE ORIGINAL
AND IS A TRUE COPY THEREOF
POWELL AIRCRAFT TITLE SERVICE

**AIRCRAFT SECURITY AGREEMENT**

MD0004206 Conveyance Recorded Jun/06/2019 08:37 AM FAA

**THIS AIRCRAFT SECURITY AGREEMENT** ("Agreement") dated <u>**May 6, 2019**</u> is made between the "Borrower" and "Lender", and relates to a security interest granted in certain "Collateral" (as defined below) that includes the "Aircraft", all as indicated below:

| NAME & ADDRESS OF BORROWER: | |
|---|---|
| **AirAway, LLC**<br>**123 Juanita Drive #1-17**<br>**Incline Village, NV 89451-9533** | |
| NAME & ADDRESS OF SECURED PARTY/LENDER: | |
| **Salem Five Cents Savings Bank**<br>**210 Essex Street**<br>**Salem, MA 01970** | **ABOVE SPACE**<br><br>**FOR FAA USE ONLY** |

| Year | Aircraft Manufacturer | | Model Number | Serial Number | FAA Registration Number |
|---|---|---|---|---|---|
| 2019 | Mooney International Corp | | M20V | 33-0015 | N576CM |
| Engine Make | | Model Number | Serial Number(s) | 550+ hp? | Home Airport: |
| | | | | ☐ Yes ☒ No | (CXP) Carson City, NV |
| Propeller Make | | Model Number | Serial Number(s) | | Commercial Use: |
| | | | | | ☐ Permitted ☒ NOT Permitted |

**1.   GRANT OF SECURITY INTEREST.** Borrower is receiving a loan from Lender, as evidenced by a certain Promissory Note ("Note") being executed and delivered contemporaneously with this Agreement. To secure repayment of the Note and performance of the other obligations of Borrower under this Agreement, and also to secure all other monetary and non-monetary obligations of Borrower to Lender under any other agreement, whether absolute or contingent, direct or indirect, now existing or hereafter arising (collectively, the "Indebtedness"), Borrower grants to Lender a continuing first-priority perfected security interest in the "Collateral" as defined in the following sentence. "Collateral" means (1) all of Borrower's right, title and interest in and to the Aircraft and Engines noted above, (2) all logs, records and manuals relating to the Aircraft, (3) all present and future attachments, accessories, parts, repairs, additions, accessions, substitutions, exchanges and replacements identified with or relating to the Aircraft, (4) all present and future rights of Borrower relating to the physical condition of the Aircraft, including under any warranties, service, airframe, engine or any other maintenance agreements, storage agreements or insurance policies, (5) all present or future rights of Borrower in connection with the use and/or operation of the Aircraft by any third party under any lease, rental agreement or license, (6) any other assets of Borrower in which Borrower has granted Lender a security interest under any other agreement, (7) all deposit accounts and other property of the Borrower now or hereafter in the possession, custody or control of Lender for any purpose, and (8) proceeds of the Aircraft and any of (1) through (7).  Additionally, all associated rights as defined in the Cape Town Convention if applicable.

**2.   REPRESENTATIONS, WARRANTIES, AND COVENANTS.** Borrower represents, warrants and covenants to Lender as follows:

**a.   Title.**  Borrower is the lawful owner of the Collateral and holds good title to the Collateral, free and clear of all encumbrances except the lien of this Agreement. Borrower will maintain a valid US registration as owner of the Aircraft pursuant to a proper registration under the Federal Aviation Act of 1958, as amended.

**b.   Authority.**  Borrower is **a limited liability company organized in the State of <u>Nevada</u>** and in good standing in all jurisdictions where qualification is necessary.

**c.   Taxes.**  Unless disclosed to Lender, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full. Borrower will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, or arising by virtue of any aspect of the transaction relating to this Agreement.

**d.   Information.** All financial statements, credit applications, and other information Borrower has provided to Lender are, and all financial statements and other information Borrower delivers or provides to Lender in the future also will be, truthful and accurate. Since the date of the most recent financial statements delivered to Lender, there has been no material adverse change in Borrower's or guarantor's financial condition or prospects.

1 of 5



CONT000059

FILED WITH FAA
AIRCRAFT
REGISTRATION BR

2019 MAY -6 PM 2:42

OKLAHOMA CITY
OKLAHOMA

DocuSign Envelope ID: B5BF99F4-1194-4228-8A90-93F4D62919A4

**e.  Location of the Collateral.**  Borrower will hangar or keep the Collateral and complete logs, manuals, books and records concerning the Collateral at the Home Airport noted above and make them available upon request of the secured party.

**f.  Aircraft and Log Books.**  Borrower will keep accurate and complete logs, manuals, books, and records relating to the Collateral, and will provide Lender with copies of such reports and information relating to the Collateral as Lender may reasonably require from time to time.

**g.  Perfection of Security Interest.**  Borrower will take whatever other actions are requested by Lender to perfect and continue Lender's first-priority security interest in the Collateral and shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**h.  Notices to Lender.**  Borrower will notify Lender prior to any (1) change in Borrower's name or address; (2) (if Borrower is a business) change in the ownership of the Borrower or management of the Borrower; (3) merger of Borrower with or into, transfer by Borrower of all or substantially all of its assets to, or acquisition by Borrower of all or substantially all of the assets of, any other entity; or (4) change in any other aspect of Borrower that directly or indirectly relates to any agreements between Borrower and Lender, including any material adverse change in Borrower's financial status.

**i.  Maintenance.**  Borrower, through its active oversight and at its sole expense, shall keep the Collateral in as good condition and repair as it is on the date of this Agreement, ordinary wear and tear excepted, and maintain and keep the Aircraft and Engines in good order and repair and in airworthy condition in accordance with the requirements of the FAA and each of the manufacturers' manuals and mandatory service bulletins.  Any aircraft and/or engine maintenance programs effective as of the date of the Agreement and any date thereafter are a part of this Agreement and shall be maintained for the duration of the Agreement and Note

**j.  Compliance with Governmental Requirements.**  Borrower shall comply promptly with all laws, ordinances and regulations of the FAA and all other governmental authorities applicable to the use, operation, maintenance, overhauling or condition of the Collateral.  Borrower shall cause the Aircraft to be operated at all times only by a currently certified pilot having the minimum total pilot hours and pilot-in-command hours required by FAA rules or regulations and applicable insurance policies.

**k.  Maintenance of Insurance.**  Borrower shall procure and maintain, at all times, the following types of insurance on the Collateral: 1) Aircraft Liability including coverage for claims or allegations of bodily injury and property damage with limits of liability of not less than $1,000,000 per occurrences or such limit as is acceptable to and/or required by Lender and 2) All Risk Physical Damage coverage including without limitation, ground, taxiing and in flight coverage against any loss, destruction, fire, theft or other damage to the Collateral and 3) such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender.  Lender's minimum requirements for insurance, subject to modification at Lender's reasonable discretion, include: (1) Borrower must be either the named insured or additional named insured on the policy; (2) Lender must be named as Additional Insured for liability coverages on the policy as respects their interest in the aircraft (3) the policy must contain a breach of warranty endorsement in favor of Lender; (4) Lender (or its assignee) must be named as lienholder and sole loss payee; (5) the Collateral must be insured against loss and damage for its full insurable value; (6) the policy must include territorial limits for all anticipated areas of operations; (7) if the Aircraft is to be operated for any purpose other than as set forth in Section 91 of the Federal Aviation Regulations and Lender has consented to such use, the policy must include coverage for such use; (8) the policy must provide for thirty (30) days notification to Lender prior to amendment, termination or non-renewal of coverage. **War risk insurance coverage** *must be obtained if the Aircraft is to operate outside the United States.  Borrower shall not use or permit the Collateral to be used in any manner contrary to the requirements of any insurance policy, or for any purpose excepted or excluded from the insurance policy.*

**l.  Application of Insurance Proceeds.**  Borrower shall promptly (not to exceed ten (10) days) notify Lender of any loss or damage to the Collateral in excess of two percent (2%) of the principal amount of the Indebtedness. Borrower shall complete a full restoration and repair of the Collateral within 90 days of any partial loss or damage to the Collateral. If an Event of Default has occurred or is continuing, Lender shall be entitled to apply the insurance proceeds to the payment of the Indebtedness at Lender's sole discretion. If no Event of Default has occurred or is continuing, the insurance proceeds shall be disbursed to Borrower if Borrower provides documentation that, in Lender's sole discretion, is satisfactory to evidence the Aircraft is being, or has been, repaired to an acceptable valuation and will be returned to service in airworthy condition. If Lender determines, in its sole discretion, that after making repairs the outstanding Indebtedness will exceed the Aircraft value the Lender in its sole discretion may apply such insurance proceeds to the payment of the Indebtedness.

**m. Notice of Encumbrances.**  Borrower shall immediately notify Lender upon the Collateral being seized or the filing of any attachment, lien, judicial process, or claim relating to the Collateral.

**n. Notices of Claims and Litigation.**  Borrower will promptly inform Lender of (1) all material adverse changes in Borrower's financial condition, (2) all existing and all threatened litigation, claims, investigations, administrative proceedings

CONT000061

CONT000062

DocuSign Envelope ID: B5BF99F4-1194-4228-8A90-93F4D62919A4

or similar actions affecting or concerning in any manner the Collateral, or concerning in any manner the Borrower or any Guarantor.

**o. Inspection.** Borrower shall permit employees or agents of Lender at any reasonable time to inspect any and all Collateral including the aircraft and its logs, books, manuals and any other records comprising or related to the Collateral. Borrower by execution of this Agreement authorizes any third party in possession of these documents to permit Lender free access (either in paper form or on-line via the internet) to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense. Borrower shall not block Lender from access to electronic flight-tracking services relating to the Aircraft's operation.

**p. Additional Assurances.** Borrower will make, execute and deliver to Lender such instruments, documents and other writings as Lender may reasonably request to evidence and secure the Note and/or the Indebtedness.

**3. PROHIBITIONS REGARDING COLLATERAL.** Borrower covenants to Lender as follows:

**a. No Sale, etc. of Collateral.** Without the prior written consent by Lender, (i) Borrower shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral, and (ii) Borrower shall not lease, pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement.

**b. No Commercial Use.** Borrower shall use the Collateral solely for business or personal purposes. Borrower shall not use the Collateral, or permit the Collateral to be used, in Commercial Operations (i.e., Part 135, 121, Flight Training Part 141 or 61 operations) unless permitted as so indicated above.

**c. Removal of the Collateral.** Except for routine use, Borrower shall not change the Home Airport or remove the Collateral from the Home Airport without Lender's prior written consent. Borrower shall, whenever requested, advise Lender of the exact location of the Collateral. Borrower shall not base, or permit the Collateral to be based, outside the continental United States of America.

**d. No Removal of Parts.** Except as permitted or required in the section of this Agreement titled "Maintenance" Borrower shall not remove or permit the removal of any parts, engines, accessories, avionics or equipment from the Aircraft.

**e. Modifications.** Borrower shall not, without the prior written consent of Lender, modify the Aircraft in any material way, including but not limited to, the Aircraft's function or operating capability.

**4. BORROWER'S RIGHT TO POSSESSION.** Until an Event of Default, Borrower shall have the possession and beneficial use of the Collateral and may use it in any lawful manner not inconsistent with this Agreement.

**5. LENDER'S EXPENDITURES.** Borrower shall pay to Lender, or if requested by Lender, directly to the applicable vendor or other third party, any fees, costs, expenses, penalties or interest incurred by Lender in connection with this Agreement, the Note or any of the Collateral, including without limitation, fees, costs or expense of: (i) filing, registering or recording this Agreement and Lender's interests under this Agreement, or any UCC financing, continuation or termination statement or similar official filings or registrations, (ii) any transfer or stamp taxes, (iii) inspection, appraisal or monitoring of the Collateral as Lender may conduct for itself or obtain from a third party in its discretion, (iv) exercising its rights herein or under applicable law to protect its interest in the Collateral by performing obligations of Borrower in the event Borrower fails to timely perform same, (v) taking possession of, holding, preparing for sale or other disposition and selling or otherwise disposing of the Collateral, and (vi) all attorneys' and other professionals retained by Lender in connection with any of the foregoing, or any exercise of other remedies upon occurrence of a default, whether such fees, costs or expenses are incurred before or after commencement of any bankruptcy case or other insolvency proceeding. All of the foregoing fees, costs or expenses thus incurred or expended by Lender, and any other monies paid by Lender to collect Borrower's obligations under the Note or protect its interests in the Collateral shall, at Lender's option, for each instance of fees, cost or expense so incurred or paid by Lender, either be added to the balance of the Note (and be subject to all of the provisions of this Agreement) or be paid immediately by Borrower upon demand by Lender, with interest accruing on the amount so demanded at the applicable Note interest rate.

**6. DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**a. Note Default.** Borrower fails to make any payment when due under this Agreement, the Note, any addendum, schedule or other separate document that, by its terms, is made a part hereof, or under any other agreement between Borrower and Lender;

**b. Other Debt Default.** Borrower fails to make payment when due or otherwise fails to perform under any agreement for borrowed money, or any obligation of Borrower for borrowed money is declared due and payable before its original maturity date;

**c. Performance Default.** Borrower or any guarantor fails to perform any obligation under this Agreement, any guaranty or any other agreement with Lender, provided, however, that, to the extent any such obligation, other than a

CONT000063

CONT000064

DocuSign Envelope ID: B5BF99F4-1194-4228-8A90-93F4D62919A4

payment or insurance obligation, can still be performed, such failure continues for more than ten (10) business days after delivery by Lender of a written demand to perform;

**d.   Other Breaches.**  Any representation or warranty made by Borrower or any guarantor in this Agreement in any material respect appears to the Lender to be untrue when made, or subsequently becomes no longer true (except for representations and warranties that become untrue solely due to the passage of time);

**e.   Insolvency.**  Borrower, or any guarantor of Borrower's obligations to Lender, dies, dissolves, merges with another entity, suspends or terminates his/her/its usual business, is unable to pay his/her/its debts as they become due, makes an assignment for the benefit of creditors, applies to any court for the appointment of a trustee or a receiver of all or a substantial part of his/her/its assets or commences any proceeding under any bankruptcy, receivership, insolvency, dissolution or liquidation law of any jurisdiction, or any other individual or entity commences such proceedings against Borrower or any such guarantor and Borrower or such guarantor acquiescence thereto, or denies liability to Lender or seeks to terminate any agreement with Lender;

**f.   Insecurity.**  Lender, in good faith, believes that the prospect of payment and performance hereunder has substantially diminished or that there is a material adverse change in the financial condition or operations of Borrower or any guarantor;

**g.   Change in Control.**  Borrower's principals as of the inception of this Agreement no longer control or operate the business of Borrower;

**h.   Defective Collateralization.**  This Agreement or the Note ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected first position security interest or lien) at any time and for any reason.

**7.   RIGHTS AND REMEDIES ON DEFAULT.**  Upon the occurrence of any of the foregoing Events of Default and at any time thereafter that any Event of Default is continuing, Lender may do any or all of the following, cumulatively: (i) declare all or any part of the remaining unpaid indebtedness of Borrower to Lender to be immediately due and payable, together with all unpaid interest and any other accrued and unpaid monetary obligations of Borrower hereunder; and (ii) exercise all rights and remedies provided in this Agreement, under the Uniform Commercial Code as in effect in all pertinent jurisdictions and under any other applicable law, including without limitation, the right (a) to setoff any property of Borrower in the possession or control of Lender, and (b) in Lender's sole discretion, to undertake payment or other performance of any obligation of Borrower hereunder that Borrower has failed to perform. Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower under this Agreement, after Borrower's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. In connection with any sale or other disposition of the Collateral by Lender, the requirements of reasonable notice shall be met if such notice is given to Borrower and any guarantors at least ten (10) days before the date of any public sale or the date after which any private sale or other disposition of Collateral is to be made.

**8.   INDEMNIFICATION OF LENDER.**  Borrower agrees to indemnify, to defend and to save and hold Lender harmless from any and all claims, suits, obligations, damages, losses, costs and expenses (including, without limitation, Lender's reasonable attorneys' fees), demands, liabilities, penalties, fines and forfeitures of any nature whatsoever that may be asserted against or incurred by Lender, its officers, directors, employees, and agents arising out of, relating to, or in any manner occasioned by this Agreement and the exercise of the rights and remedies granted Lender under this Agreement.

**9.   MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Agreement:

**a.   Amendments.**  This Agreement (which includes the Note and all addenda, schedules or other separate documents that, by their terms, are made a part hereof) constitutes the entire agreement between Borrower and Lender. Lender may by written notice to Borrower correct any error or complete any blank space necessary to cause this Agreement to be accurate and effective. Except to the extent provided otherwise herein, this Agreement can be modified or amended only by a written document signed by both Borrower and Lender. Borrower hereby authorizes and ratifies any prior filing of a financing statement by Lender, and appoints Lender as its attorney-in-fact to affix Borrower's signature to any form relating to the Collateral and to any Uniform Commercial Code financing statement(s), to take any other action Lender deems necessary to perfect and maintain perfection of the security interests provided herein or as may be required hereby and to do all other acts and things necessary to carry out the intent of this Agreement. Borrower further appoints Lender as Borrower's attorney-in-fact for Borrower and in its name, place and stead (i) to endorse the name of Borrower to instruments and documents for purposes of collection or expedition, (ii) in obtaining payment, adjusting, canceling or settling any claims upon or under any insurance policies covering the Collateral, and hereby authorizes Lender to endorse the name of Borrower on any checks, drafts or other instruments received or given in payment or liquidation of any claim under any such insurance policy, and (iii) to perform each and every act Lender deems necessary in connection with this power of attorney. Borrower further authorizes Lender to execute a power-of-attorney form in Borrower's name if and to the extent necessary or convenient to confirm the foregoing grant of authority. The foregoing powers of attorney are coupled with interests in the underlying subject

CONT000065

CONT000066

DocuSign Envelope ID: B5BF99F4-1194-4228-8A90-93F4D62919A4

matter and are therefore irrevocable. Lender may assign this Agreement at any time. Borrower may not assign its rights or delegate its duties under this Agreement without the express prior written consent of Lender.

**b.   Governing Law and Jurisdiction.** This Aircraft Security Agreement has been delivered to Lender and accepted by Lender in the Commonwealth of Massachusetts. The Note, this Aircraft Security Agreement, and all related documents will be governed by, construed and enforced in accordance with federal laws and the laws of the Commonwealth of Massachusetts.   If there is a lawsuit, Borrower consents to the jurisdiction of Massachusetts-located state and federal courts.

**c.   Notices.** Any notice required to be given under the Note, the Related Documents, or this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by fax (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any notice given by Lender to any Borrower is deemed to be notice given to all guarantors and Borrowers.

**d.   Severability.** If any part of this Agreement is determined to be contrary to any law or otherwise defective, then the other provisions of this Agreement shall not be affected thereby, but shall continue in full force and effect.

**e.   No Waiver by Lender.** Borrower's obligation to repay the Note and all other obligations of Borrower hereunder are independent of the obligation of any other individual or entity that has signed this Agreement or other documents as a Borrower or a guarantor ("Signer(s)"). It is not necessary for Lender to exercise its rights and remedies in respect of the Collateral before collecting from a Signer. Lender may extend the time for payment of any installment, reduce the size of monthly payments, release Collateral, release one or more Signers from their obligations, waive any right Lender might have against any Signer, extend, renew or agree to alter this Agreement, all without releasing other Signers from their obligations under this Agreement or any guaranty agreement. Any delay by Lender in exercising any rights or remedies hereunder or under any other instrument executed and delivered by Borrower to Lender in connection herewith shall not operate as a waiver thereof and no single or partial exercise of any right or remedy shall preclude other or further exercise thereof, or the exercise of any other right or remedy. Lender's acceptance of late or partial payments, or waiver of any default, shall not establish a custom or course of conduct and the waiver by Lender of any default shall not constitute a waiver of any subsequent defaults, but shall be restricted to the default so waived.

**f.   Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**g.   Counterparts.** This Agreement may be executed in several counterparts and delivered via electronic means, and all such executed counterparts shall constitute one agreement. Borrower confirms that if it has received copies of documents for execution from Lender via any means of electronic delivery (including email), that it has made no changes to such documents and the documents are identical in content to the version dispatched by Lender to Borrower.

**h.**   This Agreement shall be deemed accepted by Lender in Massachusetts, by the Lender's act of funding the loan made under this Agreement.

**BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS AIRCRAFT SECURITY AGREEMENT AND BORROWER AGREES TO ITS TERMS.**

In witness whereof, the Borrower has executed this Agreement below:

**BORROWER:**
**AirAway, LLC**

DocuSigned by:

*Mark Brandemuehl*

CC03FC6F684F49C...

By:_____

Name: **Mark Brandemuehl**
Title: **Manager**

DocuSigned by:

*JENNY A. BRANDEMUEHL*

ECCBF28A679F4CC...

By:_____

Name: **Jenny A. Brandemuehl**
Title: **Manager**

CONT000067

FILED WITH FAA
AIRCRAFT
REGISTRATION BR

2019 MAY -6 PM 2:42

OKLAHOMA CITY
OKLAHOMA

# Exhibit F



# National Transportation Safety Board
# Aviation Accident Preliminary Report

| | | | |
|---|---|---|---|
| Location: | Phoenix, AZ | Accident Number: | WPR19LA167 |
| Date & Time: | 06/11/2019, 1451 MST | Registration: | N576CM |
| Aircraft: | MOONEY M20V | Injuries: | 1 Serious |
| Flight Conducted Under: | Part 91: General Aviation - Personal | | |

On June 11, 2019, about 1451 mountain standard time, a Mooney M20V airplane, N576CM, collided with streetlight poles and a concrete Jersey barrier during a forced landing, near Deer Valley Airport (DVT), Phoenix, Arizona. The private pilot was seriously injured. The airplane was substantially damaged. The airplane was registered to and operated by the pilot under the provisions of Title 14 *Code of Federal Regulations Part* 91 as a personal flight. Visual meteorological conditions prevailed and a visual flight rules flight plan was filed for the cross-country flight. The flight departed Scottsdale Airport (SDL), Scottsdale, Arizona about 1437 and was destined for Carson Airport (CXP), Carson City, Nevada.

According to Air Traffic Control (ATC) communications, about 7 minutes after departure, and about 8 miles northwest of DVT, at an altitude of 9,100 ft mean sea level (msl), the pilot reported a "rough running engine" and subsequently declared an emergency. The controller offered the pilot Pleasant Valley Airport (P48), Peoria, Arizona, which was near his position, and Glendale Municipal Airport (GEU), Glendale, Arizona, 12 miles south of his position for possible landing airports. The pilot chose GEU and turned to the south and lined up for the approach to runway 19. A few minutes later, at about 4,700 ft msl, the pilot decided that he was not going to reach GEU and turned eastward towards DVT which was about 8 miles to the east. No other transmissions from the pilot were recorded. The track continued on its eastern track before it ended near the accident site, about 2 miles west of DVT.

According to a witness, he stated that he saw the airplane as it approached the street from the west, avoiding high tension wires on the south side of the street, by banking to its left. The airplane then impacted two light poles, separating the right wing, and somersaulting across the south side of the street, impacting a concrete Jersey barrier and sliding about 50 ft before coming to rest inverted.

The wreckage debris field was about 360 ft long and was contained within the 4-lane street and on the south side sidewalk area. The main wreckage cabin area was mostly consumed by postimpact fire. All flight control surfaces were located, and flight control continuity was established. Engine control continuity was also established from the cabin engine controls to their associated engine components. During the recovery of the wreckage, it was noted that the

This is preliminary information, subject to change, and may contain errors. Any errors in this report will be corrected when the final report has been completed.

CONT000069

left-wing fuel tank had an undetermined quantity of fuel. The wreckage was recovered to a secured facility for further examination.

The airplane was manufactured in 2019 and was equipped with a Continental Motors TSIO-550-G series engine. The airplane was purchased by the pilot on May 6, 2019.

## Aircraft and Owner/Operator Information

| | | | |
|---|---|---|---|
| Aircraft Make: | MOONEY | Registration: | N576CM |
| Model/Series: | M20V | Aircraft Category: | Airplane |
| Amateur Built: | No | | |
| Operator: | On file | Operating Certificate(s) Held: | None |

## Meteorological Information and Flight Plan

| | | | |
|---|---|---|---|
| Conditions at Accident Site: | Visual Conditions | Condition of Light: | Day |
| Observation Facility, Elevation: | KGEU, 1066 ft msl | Observation Time: | 2154 UTC |
| Distance from Accident Site: | 13 Nautical Miles | Temperature/Dew Point: | 42°C / 2°C |
| Lowest Cloud Condition: | Scattered / 20000 ft agl | Wind Speed/Gusts, Direction: | 7 knots / , 200° |
| Lowest Ceiling: | | Visibility: | 10 Miles |
| Altimeter Setting: | 29.91 inches Hg | Type of Flight Plan Filed: | VFR |
| Departure Point: | Scottsdale, AZ (SDL) | Destination: | Carson City, NV (CXP) |

## Wreckage and Impact Information

| | | | |
|---|---|---|---|
| Crew Injuries: | 1 Serious | Aircraft Damage: | Substantial |
| Passenger Injuries: | N/A | Aircraft Fire: | On-Ground |
| Ground Injuries: | N/A | Aircraft Explosion: | On-Ground |
| Total Injuries: | 1 Serious | Latitude, Longitude: | 33.683611, -112.126944 (est) |

## Administrative Information

| | |
|---|---|
| Investigator In Charge (IIC): | Andrew L Swick |
| Additional Participating Persons: | Chris Lang; Continental Motors; Mobile, AL |
| | Thomas Dickerson; FAA-FSDO; Scottsdale, AZ |
| | Robert Collier; Mooney; Kerrville, TX |
| Note: | The NTSB traveled to the scene of this accident. |

This is preliminary information, subject to change, and may contain errors. Any errors in this report will be corrected when the final report has been completed.

CONT000070

Clerk of the Superior Court
*** Electronically Filed ***
M. De La Cruz, Deputy
10/20/2021 3:36:56 PM
Filing ID 13514852

1 Shalem Massey (*pro hac vice* application forthcoming)
 Jennifer Steeve (*pro hac vice* application forthcoming)
2 **RILEY SAFER HOLMES & CANCILA LLP**
 100 Spectrum Center Drive, Ste 440
3 Irvine, CA  92618
 Telephone: (949) 359-5515
4 Facsimile: (949) 359-5501
 smassey@rshc-law.com
5 jsteeve@rshc-law.com

6 Lori A. Zirkle (Bar No. 015365)
 **BOWMAN AND BROOKE LLP**
7 2901 North Central Avenue, Suite 1600
 Phoenix, Arizona  85012-2736
8 Telephone: (602) 643-2300
 Facsimile: (602) 248-0947
9 Lori.Zirkle@bowmanandbrooke.com
 Minute Entries: mme@bowmanandbrooke.com

10

 Attorneys for Specially Appearing Defendant Mooney International Corporation

11

12   **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

13     **IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| 14 JENNY ANGELA BRANDEMUEHL, *et al.*, | )  Case No. CV2021-009395 |
| | ) |
| 15    Plaintiffs, | )  **MOTION TO DISMISS COMPLAINT** |
| | )  **FOR LACK OF PERSONAL** |
| 16 v. | )  **JURISDICTION BY DEFENDANT** |
| | )  **MOONEY INTERNATIONAL** |
| 17 MOONEY INTERNATIONAL | )  **CORPORATION** |
|   CORPORATION, a Delaware corporation, *et* | ) |
| 18 *al.*, | )  (Assigned to the Honorable |
| | )   Katherine Cooper) |
| 19    Defendants. | ) |
| | )  (Oral Argument Requested) |
| 20 | |

21    Defendant Mooney International Corporation ("Mooney") appears specifically for the

22 limited purpose of contesting personal jurisdiction and moves the Court to dismiss all counts

23 of Plaintiffs' Complaint against Mooney for lack of personal jurisdiction pursuant to Arizona

24 Rule of Civil Procedure 12(b)(2).

25    Arizona lacks personal jurisdiction over Mooney, a Delaware corporation with its

26 principal place of business in Texas.  Mooney has only isolated and sporadic contacts with

27 Arizona—and *none* of those contacts are related to this litigation.  Additionally, exercising

28

1    jurisdiction over Mooney in Arizona would unduly burden Mooney and offend traditional

2    notions of substantial justice and fair play.

3         This Motion is based upon the accompanying Memorandum of Points and Authorities,

4    all records, papers, and pleadings on file in this action, such oral argument as the Court may

5    consider at the hearing of this Motion, and any matters of which the Court may or must take

6    judicial notice.

7         DATED this 20th day of October, 2021.

8                                    BOWMAN AND BROOKE LLP

9                                    By:   /s/ Lori A. Zirkle
10                                        Lori A. Zirkle
                                          2901 North Central Avenue, Suite 1600
11                                        Phoenix, Arizona 85012-2736

12                                        Shalem A. Massey (*pro hac vice*)
                                          Jennifer Steeve (*pro hac vice*)
13                                        RILEY SAFER HOLMES & CANCILA LLP
                                          100 Spectrum Center Drive, Suite 440
14                                        Irvine, California 92618

15                                        Attorneys for Specially Appearing Defendant
                                          Mooney International Corporation

16

17                       **MEMORANDUM OF POINTS AND AUTHORITIES**

18   **I.    INTRODUCTION**

19         Plaintiffs cannot establish this Court's personal jurisdiction over defendant Mooney

20   International Corporation ("Mooney").  Mooney is a Delaware corporation, with its principal

21   place of business in Texas, which Plaintiffs concede.  Mooney does not do substantial business

22   in Arizona.  It does not actively market its aircraft to Arizona residents.  It does not

23   systematically serve the Arizona aviation market.  Here, a California resident bought a Mooney

24   aircraft, manufactured in Texas, from an Idaho-based dealer, and had it modified by a Texas

25   service center.  The fact that the California resident then flew the subject aircraft and crashed

26   it in the state of Arizona does not establish personal jurisdiction over Mooney.  As a result,

27   there is no "strong relationship among the defendant, the forum, and the litigation," and the

28

1  "essential foundation of specific jurisdiction" is thus lacking.  *Ford Motor Co. v. Montana*

2  *Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1028 (2021).

3       Mooney should be dismissed.

4  **II.    FACTUAL HISTORY**

5       On May 6, 2019, the decedent Mark Brandemuehl, a California resident, purchased a

6  Mooney 20V Acclaim Ultra aircraft manufactured by Mooney in Kerrville, Texas.  Exh. 1,

7  Declaration of Barry Hodkin ("Hodkin Decl."), ¶ 8.  Mr. Brandemuehl then took the aircraft

8  to Don Maxwell Aviation in Texas to incorporate a Supplemental Type Certificate that

9  increased the airplane's horsepower.  *Id.* ¶ 11. After Mr. Brandemuehl's purchase of the

10 aircraft, Mooney never performed work on the aircraft in Texas—or anywhere else—and

11 otherwise had no further contact with Mr. Brandemuehl.  *Id.* ¶ 10.

12      On June 11, 2019, Mr. Brandemuehl piloted his aircraft through Arizona airspace on

13 his way to Carson City, Nevada, near where he worked as a Senior Vice President for Nevada

14 Nanotech Systems.  Hodkin Decl. ¶ 12, Exh. A.  While in Arizona airspace, Mr. Brandemuehl,

15 for an unknown reason, began to circle back to Deer Valley Airport and ultimately crashed the

16 aircraft onto Deer Valley Road in Phoenix, Arizona.  *Id.*  Plaintiffs, the surviving wife and

17 sons of Mr. Brandemuehl and the aircraft's insurer, allege that Mr. Brandemuehl sustained and

18 ultimately succumbed to severe burns from a post-impact fire.

19      Plaintiffs generally allege that each defendant caused the complained-of events in

20 Arizona, purposefully directed their activities to Arizona, are authorized to do business in

21 Arizona, and have conducted business throughout Arizona on a deliberate, systematic, and

22 continuous basis.  Compl. ¶¶ 28–54.

23      As to Mooney, these factual allegations are thoroughly combatted by the actual

24 evidence, as supported by the concurrently submitted declaration of Barry Hodkin.  Almost

25 none of Plaintiffs' allegations are true.  Mooney is a Delaware corporation with its principal

26 place of business in Texas.  *Compare* Compl. ¶ 30 *with* Hodkin Decl. ¶ 4.  Mooney did

27 manufacture the subject aircraft.  *Compare* Compl. ¶¶ 30, 31 *with* Hodkin Decl. ¶ 8.  And

28 Mooney does allow Idaho-based defendant, C&M Aviation, to broker sales in Arizona *if*

1   *initiated by Arizona residents*—which is irrelevant here since the buyer was a California

2   resident.  *Compare* Compl. ¶¶ 30, 36–54 *with* Hodkin Decl. ¶ 9.  But the rest of Plaintiffs'

3   factual allegations simply have no supporting evidence and are rebutted by the actual evidence.

4   *See* Hodkin Decl. ¶¶ 5–32.

5          Mooney does not actively sell *any* airplanes to Arizona, much less a "substantial"

6   amount or in an "established, systematic, and deliberate" manner.  *Id.* ¶¶ 6–7.  Mooney has

7   not fostered relationships in Arizona so that Arizona residents will continue to buy aircrafts,

8   and does not have sellers, brokers, or dealerships in Arizona.  *Id.* ¶¶ 13–15.  Mooney did not

9   use established distribution channels to sell its aircraft to Arizona.  *Id.* ¶ 16.  Nor does Mooney

10  use Arizona shipping companies or knowingly use Arizona highways.  *Id.* ¶ 17.

11         The number of airplanes registered with the FAA in Arizona does not reflect where

12  those airplanes are actually stored and flown: for example, an airplane could be registered to

13  an Arizona LLC while it is hangered and solely flown in another state.  *Id.* ¶ 18.  But even if

14  there are 207 Mooney aircraft using Arizona airspace, that is only 2-3% of the 6,000 to 7,000

15  Mooney aircraft flying in the remainder of the United States.  *Id.* ¶ 19.

16         Likewise, Mooney does not enjoy the benefits of "numerous aircraft owners in Arizona

17  that need ongoing maintenance, service, repair, etc. that involve and benefit Mooney."

18  *Compare* Compl. ¶ 37 *with* Hodkin Decl. ¶ 20.  Rather, of all the aviation service centers in

19  Arizona, only one is an approved Mooney service center: Chandler Aviation.  Hodkin Decl.

20  ¶ 21.  And even Chandler Aviation orders minimal parts from Mooney, averaging $875 worth

21  of parts in an entire month (with some months as low as $29 in parts), with actual profit to

22  Mooney far lower than that.  *Id.* ¶ 22.  The bulk of Chandler Aviation's work is on Cessnas,

23  Pipers, and other non-Mooney aircraft.  *Id.* ¶ 23.  There is no evidence the subject aircraft ever

24  went to, had parts ordered from, or interacted in any way with Chandler Aviation.  *Id.* ¶ 24.

25  **III.    LEGAL STANDARD**

26         "Arizona courts may exercise personal jurisdiction to the maximum extent allowed by

27  the United States Constitution. Ariz. R. Civ. P. 4.2(a). Therefore, '[t]he jurisdictional issue . . .

28

4

hinges on federal law.'" *Planning Grp. of Scottsdale, L.L.C. v. Lake Mathews Min. Properties, Ltd.*, 226 Ariz. 262, 265 (2011) (citation omitted).

As a threshold matter, it is undisputed that Arizona cannot exercise general jurisdiction over Mooney because it is not an Arizona citizen. *See id.*; Compl. ¶ 30 (conceding Mooney is not an Arizona citizen). Thus, the remainder of this motion will be devoted to establishing Arizona's lack of specific jurisdiction over Mooney.

For specific jurisdiction, Arizona applies the three-prong test of federal law, finding personal jurisdiction only if: "(1) the defendants performed some act or consummated some transaction with Arizona by which they purposefully availed themselves of the privilege of conducting activities in this state; (2) the claim arises out of or results from the defendants' activities related to Arizona; and (3) the exercise of jurisdiction would be reasonable." *In re Consol. Zicam Prod. Liab. Cases*, 127 P.3d 903, 908 (Ariz. Ct. App. 2006) (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 416 (9th Cir. 1997)); *see also Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007). Plaintiffs bear the burden on the first two prongs; only if Plaintiffs can prevail on both does the burden shift to the Defendant on the third prong. *Id.*

The Supreme Court's recent decision in *Ford* does not change the initial "purposeful availment" prong of the federal specific personal jurisdiction test. "The canonical decision in this area remains *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)." *Ford*, 141 S. Ct. at 1024. Based on *International Shoe*, the Supreme Court "has long focused on the nature and extent of 'the defendant's relationship to the forum State.'" *Id.* (quoting *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1779 (2017)); *see also Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U. S. 286, 293 (1980).

*Ford* summarized the interplay between the first two prongs of the test:

The defendant . . . must take some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State. The contacts must be the defendant's own choice and not random, isolated, or fortuitous. They must show that the defendant deliberately reached out beyond its home—by, for example, exploi[ting] a market in the forum State or entering a contractual

1  relationship centered there. Yet even then—because the defendant is not at
2  home—the forum State may exercise jurisdiction in only certain cases. The
   plaintiff's claims . . . must arise out of or relate to the defendant's contacts with
3  the forum. Or put just a bit differently, there must be an affiliation between the
   forum and the underlying controversy, principally, [an] activity or an occurrence
4  that takes place in the forum State and is therefore subject to the State's
   regulation.

5  141 S. Ct. at 1024–25 (citations and internal quotation marks omitted).

6      In *Ford*, the defendant, Ford Motor Company, conceded that it had purposefully availed

7  itself of the relevant states' markets, Montana and Minnesota. *Id.* at 1028. Ford had marketed

8  to Montana and Minnesota residents "[b]y every means imaginable" to buy Ford vehicles,

9  including the subject models involved in the case. Ford had 36 dealerships in Montana and 84

10 in Minnesota. *Id.* Ford had company dealers regularly maintain and repair Ford cars in those

11 states, and it distributed replacement parts to its own dealers and independent auto shops in

12 Montana and Minnesota. *Id.* Thus, the only prong at issue in *Ford* was whether the lawsuit

13 "arose out of" or "related to" Ford's contacts in the forum states. The Supreme Court

14 ultimately held that "Ford had systematically served a market in Montana and Minnesota for

15 the very vehicles that the plaintiffs allege malfunctioned and injured them in those States," and

16 as a result there was a "strong relationship among the defendant, the forum, and the litigation."

17 *Id.* at 1019 (citations and internal quotation marks omitted).

18     Conversely, in *Torres v. Avco Corp.*, No. 1 CA-CV 19-0645, 2020 WL 7024679, at *3

19 (Ariz. Ct. App. Nov. 24, 2020) (mem. decision), the Court held that Arizona lacked personal

20 jurisdiction over Avco Corporation, an aviation company, for litigation arising from Avco's

21 design and manufacture of a turbocharging system that resulted in a crash in Arizona.

22 Plaintiffs "presented no evidence to show that Avco sold or delivered either the turbocharger

23 or the engine in Arizona, whether through a distributor or otherwise." *Torres*, 2020 WL

24 7024679, at *3. In any event, "[a] defendant's relationship with a plaintiff or third party,

25 standing alone, is an insufficient basis for jurisdiction." *Id.* (quoting *Walden v. Fiore*, 571

26 U.S. 277, 284–86 (2014)). And "[t]he contacts required for specific jurisdiction cannot be

27 established through the plaintiff's unilateral activities; the contacts must instead arise from the

28 defendant's purposeful conduct." *Id.* (citing *Planning Grp.*, 226 Ariz. at 266).

1   IV.   **ARGUMENT**

2        This Court does not have general jurisdiction over Mooney because Mooney is a

3   Delaware corporation with its principal place of business in Texas.  This Court lacks specific

4   jurisdiction over Mooney because Mooney has not engaged in purposeful conduct in Arizona

5   for which it reasonably could expect to be haled into Arizona's courts with respect to that

6   conduct.  *Planning Grp.*, 226 Ariz. at 268.  And Mooney's minimal, sporadic contact with

7   Arizona is totally unrelated to the aircraft in question.  But if Plaintiffs somehow could carry

8   their burden as to the first two prongs of the personal jurisdiction test (they cannot), Mooney

9   can establish that Arizona's jurisdiction over Mooney would be burdensome and unreasonable.

10       A.   **Mooney Did Not Engage in Purposeful Conduct in Arizona.**

11        After rejecting the dichotomy between purposeful availment and purposeful direction,

12   the Arizona Supreme Court, sitting *en banc*, summarized U.S. Supreme Court precedent on

13   the first prong of the personal jurisdiction test:

14       In our view, the Supreme Court cases embody a holistic approach, which in the
    end poses a single (although sometimes not easily answered) question:
15       Considering all of the contacts between the defendants and the forum state, did
    those defendants engage in purposeful conduct for which they could reasonably
16       expect to be haled into that state's courts with respect to that conduct?

17   *Planning Grp.*, 226 Ariz. at 268.

18        Here, Mooney does not purposefully sell its aircraft into Arizona in a systematic

19   manner.  It does not advertise to Arizona residents.  It has one authorized service station in

20   Arizona and sends parts to it only sporadically.  Mooney does not knowingly use Arizona

21   highways or use Arizona trucking companies for transportation.  It has no established

22   distribution channels to sell its aircraft into Arizona.  Mooney's contacts with Arizona are

23   "isolated and sporadic," in contrast to Ford's "deep" and "continuous" contacts with Montana

24   and Minnesota.  *See* Hodkin Decl., ¶¶ 5–7, 13–23.

25        At bottom, Mooney has not purposefully availed itself of the Arizona forum such that

26   it could reasonably expect to be haled into court there.  And Mr. Brandemuehl's later decision

27   to take the aircraft *through* Arizona—with his ultimate destination Nevada—cannot give

28   Arizona courts personal jurisdiction over Mooney.  *See Ford*, 141 S. Ct. at 1024–25 ("The

1   contacts must be the defendant's own choice and not random, isolated, or fortuitous"); *Walden*,

2   571 U.S. at 284–86 ("[A] defendant's relationship with a plaintiff or third party, standing

3   alone, is an insufficient basis for jurisdiction); *Planning Grp.*, 226 Ariz. at 266, ¶ 16 (the

4   contacts required for specific jurisdiction cannot be established through the plaintiff's

5   unilateral activities; the contacts instead must arise from the defendant's purposeful conduct).

6   Moreover, since Mr. Brandemuehl was a California resident merely passing through Arizona

7   on his way to Nevada, where he worked, there is no evidence to suggest Mr. Brandemuehl had

8   any substantial connection with Arizona in the first place.

9       **B.    There Is No Causal Connection Between Mooney's Forum-Related
10             Conduct and Plaintiffs' Claim.**

11      Plaintiffs' claim does not arise out of or result from Mooney's minimal contacts with

12  Arizona.  Mr. Brandemuehl, a California resident, purchased a Mooney aircraft.  That aircraft

13  was manufactured in Mooney's Texas manufacturing location.  Mr. Brandemuehl took the

14  aircraft to an authorized Mooney service center *in Texas* for modifications.  The subject aircraft

15  never went to, had parts ordered from, or interacted in any way with Mooney's only authorized

16  service center in Arizona, Chandler Aviation.  *See* Hodkin Decl., ¶¶ 8–12, 24.  The first and

17  only interaction between Arizona and the subject aircraft occurred when Mr. Brandemuehl

18  flew the aircraft—without Mooney's knowledge, consent, or design—through Arizona

19  airspace, where he crashed.  Those facts cannot satisfy the requirement that "[t]he plaintiff's

20  claims . . . must arise out of or relate to the defendant's contacts with the forum." *Ford*, 141

21  S. Ct. at 1024–25.  In other words, there is no "affiliation between the forum and the underlying

22  controversy." *Id.*  Nor can Plaintiffs establish—as it must to satisfy this prong under Arizona

23  law—that but for Mooney's relationship with Chandler Aviation, the accident would not have

24  occurred.  *See Menken*, 503 F.3d at 1057.

25      Moreover, because the plaintiffs are California residents, not Arizona residents,

26  Plaintiffs' choice of an Arizona forum cannot be given substantial weight.  *See Bristol-Myers*

27  *Squibb*, 137 S. Ct. at 1781.

28  . . .

1   Lastly, this Court should be persuaded by the decision in *Torres*, 2020 WL 7024679, at

2   *3 (mem. decision), because in both cases the plaintiffs' action was unrelated to the

3   defendant's minimal contacts with Arizona.  In *Torres*, the plaintiffs failed to produce evidence

4   the defendant sold or delivered to Arizona the aircraft parts that were believed to have caused

5   the aircraft's accident.   Here, Plaintiffs have not—and, indeed, cannot—established that

6   *anything* related to the subject aircraft was sold or delivered to Arizona by Mooney.  Just like

7   the aircraft manufacturer in *Torres*, Mooney should be dismissed here.

8   **C.     Arizona's Exercise of Jurisdiction Over Mooney Would Not Be Reasonable.**

9   Plaintiffs bear the burden of satisfying each of the first two prongs of Arizona's personal

10  jurisdiction test.  *See Menken*, 503 F.3d at 1057.  Only if Plaintiffs carry their burden on both

11  prongs does the burden shift to Mooney "to 'present a compelling case' that the exercise of

12  jurisdiction would not be reasonable." *Menken*, 503 F.3d at 1057 (quoting *Burger King*, 471

13  U.S. at 476–78).  Here, for the reasons stated above, Plaintiffs will not be able to carry their

14  burden under either of the first two prongs.  But if they somehow did, Mooney would be able

15  to carry its burden on the third prong: because Mooney's only contacts with Arizona were

16  minimal, sporadic, and completely unrelated to the subject aircraft or subject crash, Arizona's

17  personal jurisdiction over Mooney would be burdensome and would not "comport with fair

18  play and substantial justice, i.e., it [would not] be reasonable."  *Id.*; *see also In re Consol.*

19  *Zicam Prod. Liab. Cases*, 212 Ariz. at 90.

20  Moreover, the burden on Mooney to defend itself in an Arizona forum would be

21  significant.  *See* Hodkin Decl., ¶ 25.  Mooney is headquartered in Texas and its prior

22  manufacturing facilities (not currently producing new aircraft) are located in Texas.  *Id.* ¶ 26.

23  All witnesses, documents, and other evidence regarding Mooney's design and manufacturing

24  are located in Texas, which is approximately 900 miles from Phoenix, Arizona.  *Id.* ¶ 27.  The

25  purchase and sale of the subject aircraft did not occur in Arizona.  *Id.* ¶¶ 8, 28.   The

26  modification of the aircraft that is in question as contributing to the crash occurred in Texas,

27  not Arizona.  *Id.* ¶¶ 11, 29.   The fact that the wreckage is currently stored in Arizona is

28  irrelevant; the thrust of Plaintiffs' claims against Mooney are about its design and manufacture,

1    which occurred in Texas.  *Id.* ¶ 30.  Moreover, imaging or component inspections of aircraft

2    wreckage frequently proceed by shipping the relevant parts of the aircraft to agreed-upon

3    aviation facilities out of state.  *Id.* ¶ 31.  Thus, the location of the wreckage does not favor an

4    Arizona forum, particularly when the burden on Mooney of sending witnesses and documents

5    to Arizona is greater.

6         For these reasons, Texas is a suitable and efficient forum, and Mooney stipulates it will

7    submit to the jurisdiction of an appropriate Texas court.  Hodkin Decl., ¶ 32.

8    **V.    <u>CONCLUSION</u>**

9         Conferring jurisdiction over Mooney, a Delaware corporation without sufficient or even

10   any relevant ties to Arizona, would violate notions of fair play and substantial justice.  Mooney

11   lacks any significant relationship or minimum contacts with Arizona, making the exercise of

12   specific personal jurisdiction improper.  Mooney similarly is not at home in Arizona, making

13   the exercise of general personal jurisdiction improper.  Given the lack of sufficient contacts

14   with Arizona, Mooney respectfully requests that this Court grant its motion to dismiss for lack

15   of personal jurisdiction and dismiss all claims against Mooney.

16        DATED this 20th day of October, 2021.

17                                         BOWMAN AND BROOKE LLP

18                                         By:   */s/ Lori A. Zirkle*

19                                         Lori A. Zirkle
                                           2901 North Central Avenue, Suite 1600
20                                         Phoenix, Arizona 85012-2736

21                                         Shalem A. Massey (*pro hac vice* application forthcoming)
                                           Jennifer Steeve (*pro hac vice* application forthcoming)
22                                         RILEY SAFER HOLMES & CANCILA LLP
                                           100 Spectrum Center Drive, Suite 440
23                                         Irvine, California 92618

24                                         Attorneys for Specially Appearing Defendant
                                           Mooney International Corporation

25

26   **ORIGINAL** e-filed via TurboCourt
     this 20th day of October, 2021.
27

28   . . .

1   **COPY** of the forgoing mailed
  this 20th day of October, 2021, to:

2

3   John B. Brewer, Esq.
  Dane L. Wood, Esq.
  BREWERWOOD, P.L.L.C.

4   2398 East Camelback Road, Suite 540
  Phoenix, Arizona  85016

5   Attorneys for Plaintiffs

6   Ryan J. McCarthy, Esq.
  Kenneth L. Moskow, Esq.

7   JONES, SKELTON & HOCHULI, P.L.C.
  40 North Central Avenue, Suite 2700

8   Phoenix, Arizona  85004
  Attorneys for Plaintiff Endurance American

9    Insurance Company

10

11   */s/ Jeannette Felix*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

Shalem Massey (*pro hac vice*)
Jennifer Steeve (*pro hac vice*)
**RILEY SAFER HOLMES & CANCILA LLP**
100 Spectrum Center Drive, Ste 440
Irvine, CA  92618
Telephone: (949) 359-5515
Facsimile: (949) 359-5501
smassey@rshc-law.com
jsteeve@rshc-law.com

Lori A. Zirkle (Bar No. 015365)
**BOWMAN AND BROOKE LLP**
2901 North Central Avenue, Suite 1600
Phoenix, Arizona  85012-2736
Telephone: (602) 643-2300
Facsimile: (602) 248-0947
Lori.Zirkle@bowmanandbrooke.com
Minute Entries: mme@bowmanandbrooke.com

Attorneys for Specially Appearing Defendant Mooney International Corporation

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| JENNY ANGELA BRANDEMUEHL, *et al.*, | Case No. CV2021-009395 |
| Plaintiffs, | **DECLARATION OF BARRY HODKIN IN SUPPORT OF MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION BY DEFENDANT MOONEY INTERNATIONAL CORPORATION** |
| v. | |
| MOONEY INTERNATIONAL CORPORATION, a Delaware corporation, *et al.*, | |
| Defendants. | (Assigned to the Honorable Katherine Cooper) |
| | (Oral Argument Requested) |

I, Barry Hodkin, declare:

1.    I am a resident of the State of Texas.  I have personal knowledge of the facts stated herein (except those stated on information and belief, which I believe to be true), and if called as a witness I could and would testify competently to them under oath.

2.    I am the Chief Financial Officer of Mooney International Corporation ("Mooney"), and I have held the same or similar position with Mooney for 17 years.

3.      I am personally familiar with Mooney's practice of creating and maintaining business records.  The exhibits attached to this declaration were records kept in the course of a regularly conducted business activity at Mooney and were prepared as a regular practice and custom.  Each record was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters.

4.      Mooney is registered as a Delaware Corporation, with its principal place of business in Kerrville, Texas.

5.      Mooney's only manufacturing facilities are located in Kerrville, Texas. Mooney currently is not actively manufacturing new aircraft.

6.      Mooney does not do substantial business in Arizona.

7.      Mooney does not actively market its aircraft to Arizona residents.

8.      On May 6, 2019, the decedent, Mark Brandemuehl, through C&M Aviation, bought a Mooney 20V Acclaim Ultra aircraft, FAA Registration No. N576CM ("Aircraft"), that was manufactured by Mooney in Kerrville, Texas.

9.      Mooney allows Idaho-based defendant, C&M Aviation, to broker sales of Mooney aircraft in Arizona if initiated by Arizona residents—which is irrelevant here since I am informed and believe that Mr. Brandemuehl was a California resident.

10.      After Mr. Brandemuehl's purchase of the Aircraft, Mooney never performed work on the Aircraft in Texas—or anywhere else—and otherwise had no further contact with Mr. Brandemuehl.

11.      Upon information and belief, Mr. Brandemuehl took the Aircraft to Don Maxwell Aviation in Texas to incorporate a Supplemental Type Certificate that increased the Aircraft's horsepower.

12.      Upon information and belief, Mr. Brandemuehl was flying the Aircraft through Arizona airspace to Carson City, Nevada, on June 11, 2019, when the Aircraft crashed onto Deer Valley Road in Phoenix, Arizona.  My belief is based upon my review

- 2 -

of the NTSB's Preliminary Report on the accident, which is attached to this declaration as **Exhibit A** and incorporated by reference.

13.   Mooney does not actively sell any airplanes to Arizona.

14.   Mooney has not fostered relationships in Arizona so that Arizona residents will continue to buy aircrafts.

15.   Mooney does not have sellers, brokers, or dealerships located in Arizona.

16.   Mooney does not use established distribution channels to sell its aircraft to Arizona.

17.   Mooney does not use Arizona shipping companies or knowingly use Arizona highways.

18.   The number of airplanes registered with the FAA in Arizona does not reflect where those airplanes are actually stored and flown: for example, an airplane could be registered to an Arizona LLC while it is hangered and solely flown in another state.

19.   Even if there are 207 Mooney aircraft using Arizona airspace, that is only 2-3% of the 6,000 to 7,000 Mooney aircraft flying in the remainder of the United States.

20.   Mooney does not enjoy the benefits of numerous aircraft owners in Arizona that need ongoing maintenance, service, repair, etc. that involve and benefit Mooney.

21.   Of all the aviation service centers in Arizona, only one is an approved Mooney service center: Chandler Aviation.

22.   Chandler Aviation orders minimal parts from Mooney, averaging $875 worth of parts in an entire month (with some months as low as $29 in parts), with actual profit to Mooney far lower than that.

23.   I am informed and believe that the bulk of Chandler Aviation's work is on Cessnas, Pipers, and other non-Mooney aircraft.

24.   To the best of my knowledge, the subject Aircraft never went to, had parts ordered from, or interacted in any way with Chandler Aviation.

25.   The burden on Mooney to defend itself in an Arizona forum would be significant.

- 3 -

26.     Mooney is headquartered in Texas and its prior manufacturing facilities (no longer producing new aircraft) are located in Texas.

27.     All witnesses, documents, and other evidence regarding Mooney's design and manufacturing are located in Texas, which is approximately 900 miles from Phoenix, Arizona.

28.     The purchase and sale of the subject Aircraft did not occur in Arizona.

29.     The modification of the Aircraft that is in question as contributing to the crash occurred in Texas, not Arizona.

30.     The thrust of Plaintiffs' claims against Mooney are about its design and manufacture, which occurred in Texas.

31.     Imaging or component inspections of aircraft wreckage frequently proceed by shipping the relevant parts of the aircraft to agreed-upon aviation facilities out of state.

32.     Mooney stipulates it will submit to the jurisdiction of an appropriate Texas court.

I declare under penalty of perjury under the laws of the State of Arizona that the foregoing is true and correct, and that this declaration was executed on October 20, 2021.

BARRY HODKIN

# EXHIBIT A



# National Transportation Safety Board
# Aviation Accident Preliminary Report

| | | | |
|---|---|---|---|
| **Location:** | Phoenix, AZ | **Accident Number:** | WPR19LA167 |
| **Date & Time:** | June 11, 2019, 14:51 Local | **Registration:** | N576CM |
| **Aircraft:** | Mooney M20V | **Injuries:** | 1 Serious |
| **Flight Conducted Under:** | Part 91: General aviation - Personal | | |

On June 11, 2019, about 1451 mountain standard time, a Mooney M20V airplane, N576CM, collided with streetlight poles and a concrete Jersey barrier during a forced landing, near Deer Valley Airport (DVT), Phoenix, Arizona. The private pilot was seriously injured. The airplane was substantially damaged. The airplane was registered to and operated by the pilot under the provisions of Title 14 *Code of Federal Regulations Part* 91 as a personal flight. Visual meteorological conditions prevailed and a visual flight rules flight plan was filed for the cross-country flight. The flight departed Scottsdale Airport (SDL), Scottsdale, Arizona about 1437 and was destined for Carson Airport (CXP), Carson City, Nevada.

According to Air Traffic Control (ATC) communications, about 7 minutes after departure, and about 8 miles northwest of DVT, at an altitude of 9,100 ft mean sea level (msl), the pilot reported a "rough running engine" and subsequently declared an emergency. The controller offered the pilot Pleasant Valley Airport (P48), Peoria, Arizona, which was near his position, and Glendale Municipal Airport (GEU), Glendale, Arizona, 12 miles south of his position for possible landing airports. The pilot chose GEU and turned to the south and lined up for the approach to runway 19. A few minutes later, at about 4,700 ft msl, the pilot decided that he was not going to reach GEU and turned eastward towards DVT which was about 8 miles to the east. No other transmissions from the pilot were recorded. The track continued on its eastern track before it ended near the accident site, about 2 miles west of DVT.

According to a witness, he stated that he saw the airplane as it approached the street from the west, avoiding high tension wires on the south side of the street, by banking to its left. The airplane then impacted two light poles, separating the right wing, and somersaulting across the south side of the street, impacting a concrete Jersey barrier and sliding about 50 ft before coming to rest inverted.

The wreckage debris field was about 360 ft long and was contained within the 4-lane street and on the south side sidewalk area. The main wreckage cabin area was mostly consumed by postimpact fire. All flight control surfaces were located, and flight control continuity was established. Engine control continuity was also established from the cabin engine controls to their associated engine components. During the recovery of the wreckage, it was noted that the left-wing fuel tank had an undetermined quantity of fuel. The wreckage was recovered to a secured facility for further examination.

This is preliminary information, subject to change, and may contain errors. Any errors in this report will be corrected when the final report has been completed.

The airplane was manufactured in 2019 and was equipped with a Continental Motors TSIO-550-G series engine. The airplane was purchased by the pilot on May 6, 2019.

## Aircraft and Owner/Operator Information

| | | | |
|---|---|---|---|
| Aircraft Make: | Mooney | Registration: | N576CM |
| Model/Series: | M20V | Aircraft Category: | Airplane |
| Amateur Built: | | | |
| Operator: | On file | Operating Certificate(s) Held: | None |
| Operator Designator Code: | | | |

## Meteorological Information and Flight Plan

| | | | |
|---|---|---|---|
| Conditions at Accident Site: | VMC | Condition of Light: | Day |
| Observation Facility, Elevation: | KGEU,1066 ft msl | Observation Time: | 21:54 Local |
| Distance from Accident Site: | 13 Nautical Miles | Temperature/Dew Point: | 42°C /2°C |
| Lowest Cloud Condition: | Scattered / 20000 ft AGL | Wind Speed/Gusts, Direction: | 7 knots / , 200° |
| Lowest Ceiling: | | Visibility: | 10 miles |
| Altimeter Setting: | 29.9 inches Hg | Type of Flight Plan Filed: | VFR |
| Departure Point: | Scottsdale, AZ (SDL ) | Destination: | Carson City, NV (CXP ) |

## Wreckage and Impact Information

| | | | |
|---|---|---|---|
| Crew Injuries: | 1 Serious | Aircraft Damage: | Substantial |
| Passenger Injuries: | | Aircraft Fire: | On-ground |
| Ground Injuries: | N/A | Aircraft Explosion: | On-ground |
| Total Injuries: | 1 Serious | Latitude, Longitude: | 33.683612,-112.126945 (est) |

## Administrative Information

| | |
|---|---|
| Investigator In Charge (IIC): | Swick, Andrew |
| Additional Participating Persons: | Chris Lang; Continental Motors; Mobile, AL<br>Thomas Dickerson; FAA-FSDO; Scottsdale, AZ<br>Robert Collier; Mooney; Kerrville, TX |
| Note: | The NTSB traveled to the scene of this accident. |

This is preliminary information, subject to change, and may contain errors. Any errors in this report will be corrected when the final report has been completed.

Clerk of the Superior Court
*** Electronically Filed ***
T. Hays, Deputy
11/5/2021 2:45:57 PM
Filing ID 13581240

1   **BREWERWOOD, P.L.L.C.**
2   2398 East Camelback Road, Suite 540
    Phoenix, Arizona 85016
3   (602) 254-9813; Fax: (602) 254-5511 Facsimile
    John B. Brewer, #018207, John@brewerwood.com
4   Dane L. Wood, #016098, Dane@brewerwood.com
5   *Attorneys for Plaintiffs Brandemuehl*

6   Ryan J. McCarthy, Bar #020571
    Kenneth L. Moskow, Bar #029839
7   **JONES, SKELTON & HOCHULI, P.L.C.**
8   40 North Central Avenue, Suite 2700
    Phoenix, Arizona  85004
9   Telephone: (602) 263-1789
10  Fax: (602) 200-7878
    rmccarthy@jshfirm.com
11  kmoskow@jshfirm.com
12  minuteentries@jshfirm.com
    *Attorneys for Plaintiff Endurance American Insurance Company*
13

14           **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

15              **IN AND FOR THE COUNTY OF MARICOPA**

16
17  JENNY ANGELA BRANDEMUEHL, a
    widow, on behalf of all surviving statutory      **Case No.CV2021-009395**
18  beneficiaries of Mark Wesley Brandemuehl,
    deceased, including: JENNY ANGELA
19  BRANDEMUEHL, surviving wife; WESLEY           **STIPULATED REQUEST**
20  AUGUSTUS BRANDEMUEHL, surviving          **TO MODIFY BRIEFING SCHEDULE**
    adult son; ADRIAN DAVID                    **RE: MOTIONS TO DISMISS FILED BY**
21  BRANDEMUEHL, surviving adult son;            **MOONEY AND CONTINENTAL**
    JENNY ANGELA BRANDEMUEHL,
22  Special Administrator for and on behalf of the
23  ESTATE OF MARK WESLEY                        (Assigned to the Honorable
    BRANDEMUEHL; and ENDURANCE                     Katherine Cooper)
24  AMERICAN INSURANCE COMPANY, a
25  Delaware corporation,

26              Plaintiffs,

27          v.

28

                              1

| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10 | MOONEY INTERNATIONAL<br>CORPORATION, a Delaware corporation;<br>CONTINENTAL AEROSPACE<br>TECHNOLOGIES, INC., a Delaware<br>corporation; CONTINENTAL MOTORS,<br>INC., a Delaware corporation; C & M<br>AVIATION, LLC., an Idaho limited liability<br>company d/b/a Delta Aviation, Inc.;<br>MORNINGSTAR AVIATION, INC., a<br>Colorado corporation d/b/a Delta Aviation,<br>Inc.; DOES I through X; ABC<br>PARTNERSHIPS I through X, and; BLACK<br>CORPORATIONS I through X,<br><br>                    Defendants. |

This Stipulation is entered into by and between all Plaintiffs named in the caption together with Specially Appearing Defendant Mooney International Corporation ("Mooney") and Specially Appearing Defendants Continental Aerospace Technologies, Inc. and Continental Motors, Inc. (collectively "Continental").

Plaintiffs and Specially Appearing Defendants Mooney and Continental hereby request an Order granting Plaintiffs an enlargement of time within which to respond to the following motions to dismiss:

1.    "Motion to Dismiss Complaint for Lack of Personal Jurisdiction by Defendant Mooney International Corporation," filed on October 20, 2021, and;

2.    "Specially Appearing Defendant Continental Aerospace Technologies, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Arizona Rule of Civil Procedure 12(b)(2)," filed on October 20, 2021.

Presently, the deadline is on Monday, November 8, 2021 for Plaintiffs to respond, or otherwise plead, to the foregoing motions to dismiss.  The parties respectfully submit that good

cause exists to extend the November 8, 2021 deadline to December 13, 2021 for Plaintiffs to respond, or otherwise plead, to the foregoing motions to dismiss.   Furthermore, Specially Appearing Defendants Mooney and Continental are requesting an extension until January 7, 2022 to file their Replies.

Plaintiffs' counsel has requested the extension for the reason that they have been heavily involved in trial preparation in recent weeks and months for a complex product liability action that was scheduled to begin trial on December 1, 2021 in Mohave County.   The matter resolved just days ago.   For reasons of professional courtesy, Specially Appearing Defendants are agreeable to the proposed extension, as Plaintiffs have previously granted Specially Appearing Defendants an extension on responding to the Complaint.   This Stipulation is submitted in good faith and is not interposed for purposes of delay or inactivity.

**WHEREFORE**, with good cause appearing, the parties respectfully request an Order granting Plaintiffs an extension from November 8, 2021 up to and including December 13, 2021 within which to respond, or otherwise plead, to the motions to dismiss filed by Specially Appearing Defendants Mooney and Continental on October 20, 2021.   Furthermore, the parties respectfully request an Order granting Specially Appearing Defendants Mooney and Continental an extension until January 7, 2022 to file their Replies.

. . .

. . .

. . .

. . .

**DATED** this 5th day of November, 2021.

BREWERWOOD, PLLC

By _____/s/ Dane L. Wood_____
        John B. Brewer
        Dane L. Wood
        2398 E. Camelback Rd., Ste. 540
        Phoenix, AZ 85016
        *Attorneys for Plaintiffs*

JONES, SKELTON & HOCHULI, PLC

By_____/s/ Kenneth L. Moskow_____
        Ryan J. McCarthy
        Kenneth L. Moskow
        40 N. Central Ave., Ste. 2700
        Phoenix, Arizona 85004
        *Attorneys for Plaintiff Endurance*
        *American Insurance Co.*

BOWMAN AND BROOKE LLP

By_____/s/ Lori A. Zirkle_____
        Lori A. Zirkle
        2901 N. Central Avenue, Ste. 1600
        Phoenix, AZ  85012
        *Attorneys for Specially Appearing Defendant Mooney*
        *International Corporation*

KLEIN THOMAS & LEE

By_____/s/ C. Megan Fisher_____
        C. Megan Fisher
        340 E. Palm Ln., Ste. A310
        Phoenix, Arizona 85004
        *Attorneys for Specially Appearing Defendants Continental*
        *Aerospace Technologies, Inc. & Continental*
        *Motors, Inc.*

1

**ORIGINAL** efiled and **COPY**
electronically provided* this same date:

2

3    The Honorable Katherine Cooper*
     Maricopa County Superior Court Judge

4

5
     By_____/s/ Marci L. Turner_____
6    #53444

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Granted as Submitted**

***See eSignature page***

Clerk of the Superior Court
*** Electronically Filed ***
C. Ladden, Deputy
11/12/2021 8:00:00 AM
Filing ID 13596640

1

**BREWERWOOD, P.L.L.C.**

2
2398 East Camelback Road, Suite 540

Phoenix, Arizona 85016

3
(602) 254-9813; Fax: (602) 254-5511 Facsimile

John B. Brewer, #018207, John@brewerwood.com

4
Dane L. Wood, #016098, Dane@brewerwood.com

*Attorneys for Plaintiffs Brandemuehl*

5

6
Ryan J. McCarthy, Bar #020571

Kenneth L. Moskow, Bar #029839

7
**JONES, SKELTON & HOCHULI, P.L.C.**

8
40 North Central Avenue, Suite 2700

Phoenix, Arizona  85004

9
Telephone: (602) 263-1789

10
Fax: (602) 200-7878

rmccarthy@jshfirm.com

11
kmoskow@jshfirm.com

12
minuteentries@jshfirm.com

*Attorneys for Plaintiff Endurance American Insurance Company*

13

14
**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

15
**IN AND FOR THE COUNTY OF MARICOPA**

16

17
JENNY ANGELA BRANDEMUEHL, a
widow, on behalf of all surviving statutory
beneficiaries of Mark Wesley Brandemuehl,

18
deceased, including: JENNY ANGELA
BRANDEMUEHL, surviving wife; WESLEY

19
AUGUSTUS BRANDEMUEHL, surviving

20
adult son; ADRIAN DAVID
BRANDEMUEHL, surviving adult son;

21
JENNY ANGELA BRANDEMUEHL,
Special Administrator for and on behalf of the

22
ESTATE OF MARK WESLEY

23
BRANDEMUEHL; and ENDURANCE
AMERICAN INSURANCE COMPANY, a

24
Delaware corporation,

25

26
Plaintiffs,

27
v.

28

**Case No.CV2021-009395**

**ORDER MODIFYING THE BRIEFING
SCHEDULE RE: MOTIONS TO DISMISS
FILED BY MOONEY AND
CONTINENTAL**

(Assigned to the Honorable
Katherine Cooper)

1

MOONEY INTERNATIONAL
CORPORATION, a Delaware corporation;
CONTINENTAL AEROSPACE
TECHNOLOGIES, INC., a Delaware
corporation; CONTINENTAL MOTORS,
INC., a Delaware corporation; C & M
AVIATION, LLC., an Idaho limited liability
company d/b/a Delta Aviation, Inc.;
MORNINGSTAR AVIATION, INC., a
Colorado corporation d/b/a Delta Aviation,
Inc.; DOES I through X; ABC
PARTNERSHIPS I through X, and; BLACK
CORPORATIONS I through X,

                    Defendants.

The Court having considered the "Stipulated Request To Modify the Briefing Schedule Re: The Motions To Dismiss Filed By Mooney And Continental" entered into by and between all Plaintiffs named in the caption together with Specially Appearing Defendant Mooney International Corporation ("Mooney") and Specially Appearing Defendants Continental Aerospace Technologies, Inc. and Continental Motors, Inc. (collectively "Continental"), and good cause appearing therein,

**IT IS HEREBY ORDERED** granting the Stipulation. Therefore, Plaintiffs are granted an extension from November 8, 2021 up to and including **December 13, 2021** within which to respond, or otherwise plead, to the motions to dismiss filed by Mooney and Continental on October 20, 2021.

. . .

. . .

. . .

**IT IS FURTHER ORDERED** granting Specially Appearing Defendants Mooney and Continental an extension until **January 7, 2022** to file their Replies.

DATED this _____ day of _____, 2021.

_____
The Honorable Katherine Cooper

#53516

# eSignature Page 1 of 1

Filing ID: 13596640   Case Number: CV2021-009395
Original Filing ID: 13581240

_____

**Granted as Submitted**



/S/ Katherine Cooper Date: 11/10/2021
_____
Judicial Officer of Superior Court

**ENDORSEMENT PAGE**

CASE NUMBER: CV2021-009395              SIGNATURE DATE: 11/10/2021

E-FILING ID #: 13596640                FILED DATE: 11/12/2021 8:00:00 AM

C MEGAN FISCHER

DANE L WOOD

KENNETH L MOSKOW

LORI A ZIRKLE

Clerk of the Superior Court
*** Electronically Filed ***
T. Hays, Deputy
12/9/2021 12:41:42 PM
Filing ID 13700045

1   C. Megan Fischer (SBN 019828)
    Briana C. Campbell (SBN 034225)
2   **KLEIN THOMAS & LEE**
    340 East Palm Lane, Suite A310
3   Phoenix, Arizona  85004
    Tel:  (602) 935-8300
4   megan.fischer@kleinthomaslaw.com
    briana.campbell@kleinthomaslaw.com
5
    Attorneys for Defendant Continental Aerospace Technologies fka Continental Motors, Inc.
6

7                           **SUPERIOR COURT OF ARIZONA**

8                              **COUNTY OF MARICOPA**

9    JENNY ANGELA BRANDEMUEHL, a
     widow, on behalf of all surviving statutory        Case No. CV2021-009395
10   beneficiaries of Mark Wesley Brandemuehl,
     deceased, including: JENNY ANGELA
11   BRANDEMUEHL, surviving wife;
     WESLEY AUGUSTUS BRANDEMUEHL,                        **MOTION TO ASSOCIATE COUNSEL**
12   surviving adult son; ADRIAN DAVID                   ***PRO HAC VICE***
     BRANDEMUEHL, surviving adult son;
13   JENNY ANGELA BRANDEMUEHL,
     Special Administrator for and on behalf of         (TIER 3)
14   the ESTATE OF MARK WESLEY
     BRANDEMUEHL; and ENDURANCE                          (Assigned to Hon. Katherine Cooper)
15   AMERICA INSURANCE COMPANY, a
     Delaware corporation,
16
                    Plaintiffs,
17
     v.
18
     MOONEY INTERNATIONAL
19   CORPORATION, a Delaware corporation;
     CONTINENTAL AEROSPACE
20   TECHNOLOGIES, INC., a Delaware
     corporation; CONTINENTAL MOTORS,
21   INC., a Delaware corporation; C & M
     AVIATION, LLC., an Idaho limited liability
22   company d/b/a Delta Aviation, Inc.;
     MORNINGSTAR AVIATION, INC., a
23   Colorado corporation d/b/a Delta Aviation,
     Inc.; DOES I through X; ABC
24   PARTNERSHIPS I through X, and;
     BLACK CORPORATIONS I through X,
25
                    Defendants.
26

27

28

C. Megan Fischer, pursuant to Rule 39, Ariz. R. Sup. Ct., moves this Court to associate Eric D. Slechta as counsel *pro hac vice* in this action. In support of this motion and pursuant to Rule 39(c)(1)(A), the following documents are attached as Exhibit 1:

1.      Verified Application to Appear *Pro Hac Vice*;

2.      Certificate of Good Standing; and

3.      State Bar of Arizona Notice of Receipt and Complete Application.

C. Megan Fischer hereby agrees to serve as local counsel in this matter and accepts the responsibilities detailed in Rule 39(b), Ariz. R. Sup. Ct.

Dated this 9th day of December, 2021

KLEIN THOMAS & LEE

By: */s/C. Megan Fischer*
      C. Megan Fischer
      Briana L. Campbell
      Attorneys for Defendant Continental Aerospace Technologies fka Continental Motors, Inc.

COPY of the forgoing efiled this 9th day of December, 2021, and copy electronically delivered to the judge:

**COPY** of the foregoing emailed this 9th day of December, 2021, to:

John B. Brewer
Dane L. Wood
Brewerwood, PLLC
2398 East Camelback Road, Suite 540
Phoenix, AZ  85016
john@brewerwood.com
dane@brewerwood.com
Attorneys for Plaintiffs

Ryan J. McCarthy
Kenneth L. Moskow
Jones, Skelton & Hochuli, PLC
40 North Central Avenue, Suite 2700
Phoenix, AZ  85004
rmccarthy@jshfirm.com
kmoskow@jshfirm.com
Attorneys for Plaintiff Endurance American Insurance Company

/s/ Nicole Dehart

EXHIBIT 1



**STATE BAR OF ARIZONA**

Attn: Pro Hac Vice Dept
P.O. Box 842699
Los Angeles, CA 90084-2699
Phone: 602-340-7239

For Official Use Only.
App# 1013005
Bar Number# P233979

CK#11540          $505.00
Overnight or Hand Delivery:
4201 N. 24th St., Ste 100
Phoenix, AZ 85016-6266

## Application for Appearance Pro Hac Vice

**PART I: Applicant Information**

Name of Applicant: Erik D. Slechta

Firm/Company Name: Skinner Law Group

Office Address: 21600 Oxnard Street, Suite 1760, Woodland Hills, CA 91367

Telephone: 818-710-7700        Fax: 818-710-7701        Email Address: slechta@skinnerlawgroup.com

Residence Address: 983 Calle Collado, Thousand Oaks, CA 91360

Title of cause or case where applicant seeks to appear: Jenny Angela Brandemuehl, et al. v. Mooney International Corp., et al.
Docket Number: CV2021-009395

Court, Board, or Administrative Agency: Superior Court of Maricopa County

Party on whose behalf applicant seeks to appear: Continental Aerospace Technologies, Inc.

**Pursuant to Arizona Supreme Court Rule 39(a)(2), the applicant shall complete the information below:**

Courts to Which Applicant Has Been Admitted:          Date of Admission:          Bar Number:
(Attach additional pages if necessary)
See attachment.

☑ Applicant is a member in good standing in such courts.

☑ Applicant is not currently disbarred or suspended in any court.

Applicant ☐ is / ■ is not **(select one)** currently subject to any pending disciplinary proceeding or investigation by any court, agency or organization authorized to discipline attorneys at law. If yes, specify the jurisdiction, nature of investigation and contact information of the disciplinary authority investigating on an additional page.

In the preceding three (3) years, applicant has filed applications to appear as counsel under Ariz. R. Sup. Ct., Rule 39(a) in the following:

| Title of Matter: | Docket #: | Court or Agency: | App Granted? (Y/N) |
| --- | --- | --- | --- |
| | | | |
| | | | |
| | | | |

This case or cause ☐ is / ■ is not **(select one)** a related or consolidated matter for which applicant has previously applied to appear pro hac vice in Arizona. If this matter is a related or consolidated with any previous application, Applicant certifies that he/she will review and comply with appropriate rules of procedure as required in the underlying cause.
If applicable, please provide related or consolidated matter application or docket#_____

Revised 05/01/20

Page 2

## PART II: Local Counsel Information

Name of Arizona Local Counsel: C. Megan Fischer

State Bar of Arizona Number: 019828

Address: Klein Thomas & Lee, 340 East Palm Lane, Suite A310, Phoenix, AZ 85004

Telephone: 602-935-8300          Fax:                    Email Address: megan.fischer@kleinthomaslaw.com

☒ Local Counsel is a member in good standing.

☒ Local Counsel associating with a nonresident attorney in a particular cause shall accept joint responsibility with the nonresident attorney to the client, to opposing parties and counsel, and to court, board, or administrative agency in that particular cause.

## PART III: Parties and Certification

Name(s) of each party in this cause and name and address of all counsel of record:

| Party: | Counsel of Record: | Address: |
|---|---|---|
| Jenny Angela Brandemuehl | John B. Brewer, Ryan J. McCarthy | Brewerwood, PLLC, 2398 E. Camelback Rd., Ste. 540, Phoenix, AZ 85016 |
| Endurance American Insurance Co. | John B. Brewer, Ryan J. McCarthy | Jones Skelton & Hochuli PLC, 40 N. Central Ave., Ste. 2700, Phoenix, AZ 85004 |
| Mooney International Corp. | Lori A. Zirkle, Shalem Massey | Bowman & Brooke LLP, 2901 N. Central Ave., Suite 1600, Phoenix, AZ 85012 |
| Continental Aerospace Technologies, Inc. | C. Megan Fischer, Will S. Skinner | Klein Thomas & Lee, 340 E. Palm Ln., Ste. A310, Phoenix, AZ 85004 |
| C&M Aviation, LLC | TBD | |
| Morningstar Aviation, Inc. | TBD | |

☒ Applicant is including with this application a nonrefundable application fee, payable to the State Bar of Arizona, in the amount of $505.00. Fifteen percent of the non-refundable application fee paid pursuant to this section shall be deposited into a civil legal services fund to be distributed by the Arizona Foundation for Legal Services and Education entirely to approved legal services organizations, as that term is defined in subparagraph (2)(c) of this rule.

☒ Applicant is furnishing a certificate from the state bar or from the clerk of the highest admitting court of each state, territory, or insular possession of the United States in which the nonresident attorney has been admitted to practice law certifying the nonresident attorney's date of admission to such jurisdiction and the current status of the nonresident attorney's membership or eligibility to practice therein. The certificate furnished shall be no more than forty-five (45) days old.

Applicant certifies the following:

1. Applicant shall be subject to the jurisdiction of the courts and agencies of the State of Arizona and to the State Bar of Arizona with respect to the law of this state governing the conduct of attorneys to the same extent as an active member of the State Bar of Arizona, as provided in Ariz. R. Sup. Ct. Rule 46(b).
2. Applicant will review and comply with appropriate rules of procedure as required in the underlying cause.
3. Applicant understands and shall comply with the standards of conduct required of members of the State Bar of Arizona.

## Verification

STATE OF _____)

County of _____) ss.

I, _____, swear that all statements in the application are true, correct and complete to the best of my knowledge and belief.

Dated: _____    Applicant's Signature: _____

SUBSCRIBED AND SWORN TO before me this _____ day of _____, 20____, by

_____.

Name of Applicant

_____
Notary Public

Revised 10/28/20

## ERIK D. SLECHTA APPLICATION FOR APPEARANCE PRO HAC VICE

## ATTACHMENT 1

1) State Bar of California, SBN: 204516
2) U.S. District Court, Southern District of California
3) U.S. District Court, Central District of California
4) U.S. District Court, Eastern District of California
5) U.S. District Court, Northern District of California

## **COVID-19 Temporary Verification**

This Form is intended to be a required supplement to State Bar of Arizona applications and certifications during the period of pandemic health advisories and the related emergency orders of the federal government, the Governor of Arizona, and the Supreme Court of Arizona. This unsworn declaration, under penalty of perjury, is to be submitted in lieu of a notarized verification pursuant to Arizona Rules of Civil Procedure, Rule 80(c).

State of **California** )
County of **Ventura** ) ss.
                      )

I, **Erik D. Slechta** , a member of the State Bar of **California** , submit this

unsworn verification in support of my:

☐ Resignation of Membership

■ Application for Appearance *Pro Hac Vice*

☐ Application for In-House Counsel certification

☐ Application for transfer to Inactive / Retired status

☐ Application for Reinstatement after Summary Suspension by the Board of Governors

I hereby declare and verify, under the penalty of perjury, that the foregoing information and that on the applicable application form is true and correct.

Dated: **October 29, 2021**

Attorney signature



The State Bar
of California

**OFFICE OF ATTORNEY REGULATION &
CONSUMER RESOURCES**

180 Howard Street, San Francisco, CA 94105

AttorneyRegulation@calbar.ca.gov
888-800-3400

# CERTIFICATE OF STANDING

September 23, 2021

TO WHOM IT MAY CONCERN:

This is to certify that according to the records of the State Bar, ERIK DAVID SLECHTA, #204516 was admitted to the practice of law in this state by the Supreme Court of California on December 6, 1999 and has been since that date, and is at date hereof, an ACTIVE licensee of the State Bar of California; and that no recommendation for discipline for professional or other misconduct has ever been made by the Board of Trustees or a Disciplinary Board to the Supreme Court of the State of California.

THE STATE BAR OF CALIFORNIA

Alex Calderon
Custodian of Records

1 | **Maricopa County Superior Court**

2 | Jenny Angela Brandemuehl, et al.,           )
  |     Plaintiff                               )
3 |                                             )        CASE # **CV2021-009395**
  |                     v.                      )
4 |                                             )           SBA App #1013005
  | Mooney International Corp., et al.,          )
5 |     Defendant.                              )    **NOTICE OF RECEIPT OF COMPLETE**
  |                                             )              **APPLICATION**
6 |

7 | NOTICE IS HEREBY given by THE STATE BAR OF ARIZONA that it has <u>received the</u> <u>verified application and fee from Erik D. Slechta.</u>

8 | In addition to this application, applicant has made the following applications to appear pro hac
9 | vice, pursuant to Rule 39, within the previous three (3) years:

10 |    Title of Matter        Court/Agency       Date       Granted?

11 |

12 | Exhibit A, the original verified application and Exhibit B, the original Certificate(s) of Good Standing are attached hereto.

13 | DATED this 1st day of December 2021

14 |

15 |                                 Wendy Macias

16 |                                 Resource Center Specialist
  |                                 State Bar of Arizona

17 |

18 | Original Mailed on this 1st day of December 2021 to:

19 | C. Megan Fischer
20 | Klein Thomas & Lee
  | 340 E PALM LN STE A310
21 | PHOENIX, AZ 85004-4603

22 |

23 |

24 |

25 |